1 | **KAUFMAN DOLOWICH VOLUCK & GONZO LLP**
Frances M. O'Meara - SBN 140600
2 | fomeara@kdvglaw.com
Hao Nguyen - SBN 222008
3 | hnguyen@kdvglaw.com
11755 Wilshire Boulevard, Suite 2400
4 | Los Angeles, California 90025
Telephone:  (310) 775-6511
5 | Facsimile:   (310) 525-9720

FILED
CLERK, U.S. DISTRICT COURT

AUG 25 2011

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

6 | Attorneys for Defendants LIBERTY MUTUAL INSURANCE COMPANY and
7 | AXIS INSURANCE COMPANY

8 | **UNITED STATES DISTRICT COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10 |

11 |

12 | HEIDE KURTZ, solely in her capacity as Chapter 7 Trustee for the Estate of NAMCO FINANCIAL EXCHANGE CORP.,

Case No.: CV11-07010 ODW (JCx)

(Superior Court of California for the County of Los Angeles Case No. BC463044)

13 |

14 | Plaintiff,

**NOTICE OF REMOVAL OF CIVIL ACTION**

15 | vs.

16 | LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts Corporation; ZURICH AMERICAN INSURANCE COMPANY, a New York Corporation; AXIS INSURANCE COMPANY, an Illinois Corporation; TWIN CITY FIRE INSURANCE COMPANY, a Minnesota Corporation, and DOES 1-100, inclusive,

17 |

18 |

19 |

20 |

21 | Defendants.

22 |

23 |

24 |

25 |

26 | **NOTICE OF REMOVAL**

27 | To the Honorable Judges of the United States District Court for the Central

28 | District of California, Plaintiff Heide Kurtz, as Chapter 7 Trustee for the Estate of

---

1

1   Namco Financial Exchange Corp. and to Plaintiff's Attorneys of Record, and all

2   parties herein:

3        PLEASE TAKE NOTICE that Defendants Liberty Mutual Insurance

4   Company (hereinafter "Liberty Mutual") and AXIS Insurance Company ("AXIS")

5   hereby remove the state court action entitled *Heide Kurtz, solely in her capacity as*

6   *Chapter 7 Trustee for the Estate of Namco Financial Exchange Corp. v. Liberty*

7   *Mutual Insurance Company, a Massachusetts Corporation, et.al.,* Case No. BC

8   463044 to the United States District Court for the Central District of California.

9   This action was filed in the Superior Court of the State of California for the County

10  of Los Angeles on June 7, 2011 and served on Defendants on July 29, 2011.  See

11  Declaration of Frances M. O'Meara ¶ .  This removal is timely because it has been

12  filed no later than 30 days after service of the state court complaint, as required by

13  28 U.S.C. §1446(b).  Pursuant to 28 U.S.C. §1446 (a), a copy of all process,

14  pleading, and orders in the state court action served on Defendant Liberty Mutual

15  is filed with this notice, and attached hereto as Exhibit A and a copy of all process,

16  pleading, and orders in the state court action served on Defendant AXIS is attached

17  hereto as Exhibit B.  In support of removal, Liberty Mutual and AXIS state as

18  follows:

19                      **GROUNDS FOR REMOVAL**

20       1.    Liberty Mutual and AXIS hereby remove to this Court the state court

21  action based on diversity jurisdiction.  Liberty Mutual and AXIS remove to this

22  Court the state court action described below pursuant to 28 U.S.C. §§ 1441 and

23  1446.  For the reasons stated below, removal of this action is proper pursuant to

24  28 U.S.C. § 1332 in that it is a civil action between citizens of different states and

25  the amount in controversy exceeds the sum of $75,000.

26                      **PLAINTIFF'S COMPLAINT**

27       2.    Plaintiff Heide Kurtz, as Chapter 7 Trustee for the Estate of Namco

28

NOTICE OF REMOVAL

Financial Exchange Group filed the Complaint styled *Heide Kurtz, solely in her capacity as Chapter 7 Trustee for the Estate of NAMCO FINANCIAL EXCHANGE CORP. v. Liberty Mutual Insurance Company, a Massachusetts Corporation, Zurich American Insurance Company, a New York Corporation; Axis Insurance Company, an Illinois Corporation; Twin City Fire Insurance Company, a Minnesota Corporation; Does 1-100*, designated as Case No. BC463044 in the Superior Court of the State of California for the County of Los Angeles.

3.      Plaintiff Heide Kurtz, as Chapter 7 trustee for Namco Financial Exchange Corp. ("NFE") brings this action for (1) breach of the implied covenant of good faith and fair dealing; (2) breach of contract; and (3) declaratory judgment against Liberty Mutual; Zurich American Insurance Company ("Zurich"); AXIS; and Twin City Fire Insurance Company ("Twin City"). Plaintiff alleges that defendants breached their contractual obligations and acted in "bad faith" in failing to indemnify Plaintiff for the theft of NFE's clients' money, securities, and other property. (Complaint ("Compl.") ¶ 7)

## DIVERSITY JURISDICTION

4.      This case may be removed pursuant to 28 U.S.C. 1441(a) because there exists complete diversity between Plaintiff and all Defendants and the amount in controversy exceeds $75,000. *See* 28 U.S.C. 1332.

5.      Plaintiff Heide Kurtz alleges that Plaintiff is, and at all relevant times was, a resident of the County of Los Angeles, State of California. (Comp. ¶ 7)

6.      Defendant Liberty Mutual is, and at all relevant times was, incorporated under the laws of the State of Massachusetts with its principal place of business in the State of Massachusetts. *See* 28 U.S.C. §1332(c)(1). ("[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and the State where it has its principal place of business.") (Comp. ¶ 12; Declaration of Juan Trillo ("Trillo Decl.") ¶¶ 2,3.)

7. Defendant AXIS is, and at all relevant times was, incorporated under the laws of the State of Illinois with its principal place of business in the State of Georgia. (Comp. ¶ 14; Declaration of Frederick Zauderer ("Zauderer Decl.") ¶ 2.)

8. Defendant Zurich is, and at all relevant times was, incorporated under the laws of the State of New York with its principal place of business in the State of Illinois. (Comp. ¶ 13.)

9. Defendant Twin City is, and at all relevant times was, incorporated under the laws of the State of Indiana with its principal place of business in the State of Connecticut. (Comp. ¶ 15.)

10. The naming of "DOE" defendants does not impact diversity jurisdiction. *See* 28 U.S.C. § 1441 ("For purposes of removal under this chapter [28 USCS, *et seq.*], the citizenship of defendants sued under fictitious names shall be disregarded.").

11. Counsel for Liberty Mutual and AXIS is informed and believes that as of the date of this filing no other entity has responded to this action as a party defendant. Twin City and Zurich have expressly consented to the removal of this action through their respective counsel. (See Twin City's Joinder to Removal of Action; Zurich's Joinder to Removal of Action filed concurrently herewith.) As noted, all Defendants were served on July 29, 2011. (See Twin City's Joinder to Removal of Action; Zurich's Joinder to Removal of Action filed concurrently herewith.)

12. Thus, this case satisfies the "complete diversity" requirement for diversity-based removal, as the plaintiff and defendants are citizens of different states.

13. This case meets the amount-in-controversy requirement for diversity jurisdiction purposed under 28 U.S.C. § 1332(a). The Complaint alleges that during the policy period, NFE's principal and President Ezri Namvar and NFE's Controller and Vice President Hamid Tabatabai misappropriated and converted

funds in the approximate amount of $35-$45 million. (Comp. ¶ 38). The Complaint pleads that on or about December 19, 2009, a notarized Proof of Loss was submitted to Liberty International Underwriters in the amount of $35-$45 million. (Comp. ¶ 43 and exhibit 9 thereto). In addition to the claimed loss amount, Plaintiff seeks punitive damages, and attorney's fees and costs. (Comp. Prayer for Relief ¶ ¶ 3-4, p. 15). Based on the allegations contained in the Complaint, including the relief being sought, it is clear that the amount in dispute exceeds $75,000.

## VENUE

14. Venue is proper in this District pursuant to 28 U.S.C. § 1441(a) because the Superior Court where the removal case was pending is located within this District. 28 U.S.C. § 1441(a), 1446 (a).

## NOTICE

15. Concurrently with the filing of this Notice, Liberty Mutual and AXIS will file a copy of this Notice of Removal with the Clerk of the Superior Court of the State of California for the County of Los Angeles, Central District.

16. The contents of Exhibit A and B constitute the entire file of the action in the Superior Court of the State of California for the County of Los Angeles, Central District.

DATED: August 2⁴, 2011                    KAUFMAN DOLOWICH VOLUCK &
                                          GONZO, LLP


                            By:  _____
                                 Frances O'Meara, Esq.
                                 Hao Nguyen, Esq.
                                 Attorneys for Defendants LIBERTY
                                 MUTUAL INSURANCE COMPANY and
                                 AXIS INSURANCE COMPANY

ND: 4846-6949-2746, v. 1

NOTICE OF REMOVAL

# EXHIBIT "A"

| Attorney or Party without Attorney: | For Court Use Only |
|---|---|
| Michael J. Bidart, Bar #60582<br>SHERNOFF BIDART ECHEVERRIA, LLP<br>600 S. Indian Hill Blvd.<br>Claremont, CA 91711<br>Telephone No: 909-621-4935    FAX No: 909-625-6915 | **FILED**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES<br><br>AUG 0 4 2011 |

*Attorney for:* **Plaintiff**

*Ref. No. or File No.:*

*Insert name of Court, and Judicial District and Branch Court:*

LOS ANGELES COUNTY SUPERIOR COURT- CENTRAL

John A. Clarke, Executive Officer/Clerk

BY _Reed Amey_, Deputy

Raul Sanchez

*Plaintiff:* Heide Kurtz, Soley In Her Capacity As Ch. 7 Trustee For The Estate Of Namco Financia

*Defendant:* Liberty Mutual Insurance Company, et al.

| PROOF OF SERVICE<br>SUMMONS | Hearing Date: | Time: | Dept/Div:<br>74 | Case Number:<br>BC 463044 |
|---|---|---|---|---|

*1. At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the SUMMONS AND COMPLAINT; CIVIL CASE COVER SHEET; CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION; NOTICE OF CASE ASSIGNMENT; NOTICE OF CASE MANAGEMENT CONFERENCE; ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKET; VOLUNTARY EFFICIENT LITIGATION STIPULATIONS.

3. a. Party served:              Liberty Mutual Insurance Company, a Massachusetts Corporation
   b. Person served:            Bradly Ellison, Authorized to accept on behalf of Corporation Service Company-
                                        Agent for service

4. *Address where the party was served:*      2730 Gateway Oaks Dr., Ste. 100
                                                              Sacramento, CA 95833

5. *I served the party:*
   a. by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of
   process for the party (1) on: Fri., Jul. 29, 2011 (2) at: 1:50PM

6. The *"Notice to the Person Served"* (on the Summons) was completed as follows:
   on behalf of: Liberty Mutual Insurance Company, a Massachusetts Corporation
   Under CCP 416.10 (corporation)

7. *Person Who Served Papers:*                                    Recoverable Cost Per CCP 1033.5(a)(4)(B)
   a. GARI GREENHALGH                              d. *The Fee for Service was:*    $135.00

   **BLS**
   BIDART LEGAL SERVICES, INC.
   9455 Magnolia Avenue    Riverside, CA 92503
   (951) 353-8281 • FAX: (951) 353-8286

   e. I am: (3) registered California process server
      *(i)*   Independent Contractor
      *(ii)*  Registration No.:        92-007
      *(iii)* County:                     Sacramento

8. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   Date: Fri, Jul. 29, 2011

PROOF OF SERVICE
SUMMONS

(GARI GREENHALGH)

bidart.75371

**ORIGINAL**

**FILED BY FAX**

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:** LIBERTY MUTUAL INSURANCE COMPANY, a
*(AVISO AL DEMANDADO):* Massachusetts Corporation; ZURICH AMERICAN
INSURANCE COMPANY, a New York Corporation; AXIS INSURANCE
COMPANY, an Illinois Corporation; TWIN CITY FIRE INSURANCE COMPANY,
Additional Parties Attachment form is attached.

**YOU ARE BEING SUED BY PLAINTIFF:** HEIDE KURTZ, solely in her capacity
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* as Chapter 7 Trustee for the
Estate of NAMCO FINANCIAL EXCHANGE CORP.

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUN 07 2011

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
SHAUNYA WESLEY

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court of California, County of Los Angeles<br>111 North Hill Street<br>Los Angeles, California 90012 | CASE NUMBER:<br>*(Número del caso):* BC 463044 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: Sieve Schuetze, Esq.
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

SHERNOFF BIDART ECHEVERRIA
600 S. Indian Hill Blvd, Claremont, CA 91711                                           (909)-621-4935

| DATE:<br>*(Fecha)* JUN 07 2011 | Clerk, by<br>*(Secretario)* Shaunya Wesley | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [X] on behalf of *(specify):* Liberty Mutual Insurance Company, a Massachusetts corporation

    under: [X] CCP 416.10 (corporation)        [ ] CCP 416.60 (minor)
         [ ] CCP 416.20 (defunct corporation)     [ ] CCP 416.70 (conservatee)
         [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
         [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov
PRODOC

SUM-200(A)

| SHORT TITLE: Heide Kurtz, solely in her capacity as Chapter 7 Trustee for the Estate of Namco Financial Exchange Corp. v. Liberty Mutual Insurance Company, et al. | CASE NUMBER: |
|---|---|

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.):*

[ ] Plaintiff     [X] Defendant     [ ] Cross-Complainant     [ ] Cross-Defendant

a Minnesota Corporation; Does 1-100,

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

ProDoc®

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Steve Schuetze, Esq.    SBN: 143778 | CONFORMED COPY OF ORIGINAL FILED Los Angeles Superior Court |

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Steve Schuetze, Esq.            SBN: 143778
SHERNOFF BIDART ECHEVERRIA          e-mail:
600 S. Indian Hill Blvd, Claremont, CA 91711
TELEPHONE NO.: (909)-621-4935 ·   FAX NO.: (909)-621-2806
ATTORNEY FOR (Name): Heide Kurtz

**FOR COURT USE ONLY**
CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUN 07 2011

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
SHAUNYA WESLEY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME: HEIDE KURTZ, solely in her capacity as Chapter 7 Trustee for the Estate of NAMCO FINANCIAL EXCHANGE v. LIBERTY MUTUAL INSURANCE, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: BC463044 |
|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[X] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [ ] is [X] is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [X] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [X] punitive

4. Number of causes of action (specify): 3

5. This case [ ] is [X] is not    a class action suit.

6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: June 7, 2011

Steve Schuetze, Esq
(TYPE OR PRINT NAME)                         ▶  (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**  ProDoc®

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

| SHORT TITLE: Heide Kurtz, solely in her capacity as Chapter 7 Trustee for the Estate of Namco Financial Exchange Corp. v. Liberty Mutual Insurance Company, et al. | | CASE NUMBER | B C 4 6 3 0 4 4 |
|---|---|---|---|

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUN 07 2011

John A. Clarke, Executive Officer/Clerk
By _____ Deputy
SHAUNYA WESLEY

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to LASC Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

Item I. Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☒ YES   CLASS ACTION? ☐ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL 15 ☐ HOURS/☒ DAYS

Item II. Select the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column A, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column B below which best describes the nature of this case.

**Step 3:** In Column C, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Los Angeles Superior Court Local Rule 2.0.

### Applicable Reasons for Choosing Courthouse Location (see Column C below)

1. Class Actions must be filed in the Stanley Mosk Courthouse, Central District.
2. May be filed in Central (Other county, or no Bodily Injury/Property Damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| Other Personal Injury/ Property Damage/Wrongful Death Tort | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 2. |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1., 2., 4. |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1., 2., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1., 2., 4. |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 2., 4. |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1., 2., 3. |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |

LACIV 109 (Rev. 01/11)
LASC Draft 03-04

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 1 of 4

| SHORT TITLE: Heide Kurtz, solely in her capacity as Chapter 7 Trustee for the Estate of Namco Financial Exchange Corp. v. Liberty Mutual Insurance Company, et al. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 2., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2., 3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☒ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation        Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

LACIV 109 (Rev. 01/11)
LASC Draft 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 2 of 4

| SHORT TITLE: Heide Kurtz, solely in her capacity as Chapter 7 Trustee for the Estate of Namco Financial Exchange Corp. v. Liberty Mutual Insurance Company, et al. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus<br>☐ A6152  Writ - Mandamus on Limited Court Case Matter<br>☐ A6153  Writ - Other Limited Court Case Review | 2., 8.<br>2.<br>2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment<br>☐ A6160  Abstract of Judgment<br>☐ A6107  Confession of Judgment (non-domestic relations)<br>☐ A6140  Administrative Agency Award (not unpaid taxes)<br>☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112  Other Enforcement of Judgment Case | 2., 9.<br>2., 6.<br>2., 9.<br>2., 8.<br>2., 8.<br>2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only<br>☐ A6040  Injunctive Relief Only (not domestic/harassment)<br>☐ A6011  Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8.<br>2., 8.<br>1., 2., 8.<br>1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment<br>☐ A6123  Workplace Harassment<br>☐ A6124  Elder/Dependent Adult Abuse Case<br>☐ A6190  Election Contest<br>☐ A6110  Petition for Change of Name<br>☐ A6170  Petition for Relief from Late Claim Law<br>☐ A6100  Other Civil Petition | 2., 3., 9.<br>2., 3., 9.<br>2., 3., 9.<br>2<br>2., 7.<br>2., 3., 4., 8.<br>2., 9. |

LACIV 109 (Rev. 01/11)
LASC Draft 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 3 of 4

| SHORT TITLE: Heide Kurtz, solely in her capacity as Chapter 7 Trustee for the Estate of Namco Financial Exchange Corp. v. Liberty Mutual Insurance Company, et al. | CASE NUMBER |
|---|---|

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER COLUMN C WHICH APPLIES IN THIS CASE | ADDRESS: |
|---|---|
| ☐1. ☒2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | 12121 Wilshire Boulevard, Suite 1400 |

| CITY: Los Angeles | STATE: CA | ZIP CODE: 90025 | |
|---|---|---|---|

Item IV. *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the Stanley Mosk _____ courthouse in the Central _____ District of the Los Angeles Superior Court [Code Civ. Proc., § 392 et seq., and LASC Local Rule 2.0, subds. (b), (c) and (d)].

Dated: June 7, 2011

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

---

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet form CM-010.

4. Complete Addendum to Civil Case Cover Sheet form LASC Approved CIV 109 (Rev. 01/07).

5. Payment in full of the filing fee, unless fees have been waived.

6. Signed order appointing the Guardian ad Litem, JC form FL-935, if the plaintiff or petitioner is a minor under 18 years of age, or if required by Court.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES
NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE
Case Number _____

BC463044

## THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

Your case is assigned for all purposes to the judicial officer indicated below (Local Rule 7.3©). There is additional information on the reverse side of this form.

| ASSIGNED JUDGE | DEPT | ROOM | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|
| Hon. Carolyn B. Kuhl | 1 | 534 | Hon. Holly E. Kendig | 42 | 416 |
| Hon. J. Stephen Czuleger | 3 | 224 | Hon. Mel Red Recana | 45 | 529 |
| Hon. Luis A. Lavin | 13 | 630 | Hon. Debre Katz Weintraub | 47 | 507 |
| Hon. Terry A. Green | 14 | 300 | Hon. Elizabeth Allen White | 48 | 506 |
| Hon. Richard Fruin | 15 | 307 | Hon. Deirdre Hill | 49 | 509 |
| Hon. Rita Miller | 16 | 306 | Hon. John Shepard Wiley Jr. | 50 | 508 |
| Hon. Richard E. Rico | 17 | 309 | Hon. Abraham Khan | 51 | 511 |
| Hon. Rex Heeseman | 19 | 311 | Hon. Susan Bryant-Deason | 52 | 510 |
| Hon. Kevin C. Brazile | 20 | 310 | Hon. John P. Shook | 53 | 513 |
| Hon. Zaven V. Sinanian | 23 | 315 | Hon. Ernest M. Hiroshige | 54 | 512 |
| Hon. Robert L. Hess | 24 | 314 | Hon. Malcolm H. Mackey | 55 | 515 |
| Hon. Mary Ann Murphy | 25 | 317 | Hon. Michael Johnson | 56 | 514 |
| Hon. James R. Dunn | 26 | 316 | Hon. Ralph W. Dau | 57 | 517 |
| Hon. Yvette M. Palazuelos | 28 | 318 | Hon. Rolf M. Treu | 58 | 516 |
| Pending Assignment | 30 | 400 | Hon. David L. Minning | 61 | 632 |
| Hon. Alan S. Rosenfield | 31 | 407 | Hon. Michael L. Stern | 62 | 600 |
| Hon. Mary H. Strobel | 32 | 406 | Hon. Kenneth R. Freeman | 64 | 601 |
| Hon. Charles F. Palmer | 33 | 409 | Hon. Mark Mooney | 68 | 617 |
| Hon. Amy D. Hogue | 34 | 408 | Hon. Ramona See | 69 | 621 |
| Hon. Daniel Buckley | 35 | 411 | Hon. Soussan G. Bruguera | 71 | 729 |
| Hon. Gregory Alarcon | 36 | 410 | Hon. Ruth Ann Kwan | 72 | 731 |
| Hon. Joanne O'Donnell | 37 | 413 | Hon. Teresa Sanchez-Gordon | 74 | 735 |
| Hon. Maureen Duffy-Lewis | 38 | 412 | Hon. William F. Fahey | 78 | 730 |
| Hon. Michael C. Solner | 39 | 415 | Hon. Emilie H. Elias* | 324 | CCW |
| Hon. Michelle R. Rosenblatt | 40 | 414 | other | | |
| Hon. Ronald M. Sohigian | 41 | 417 | | | |

### *Class Actions

All class actions are initially assigned to Judge Emilie H. Elias in Department 324 of the Central Civil West Courthouse (600 S.Commonwealth Ave., Los Angeles 90005). This assignment is for the purpose of assessing whether or not the case is complex within the meaning of California Rules of Court, rule 3.400. Depending on the outcome of that assessment, the class action case may be reassigned to one of the judges of the Complex Litigation Program or reassigned randomly to a court in the Central District.

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____

JOHN A. CLARKE, Executive Officer/Clerk
By_____, Deputy Clerk

NOTICE OF CASE ASSIGNMENT –
UNLIMITED CIVIL CASE

Page 1 of 2

# INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the Chapter Seven Rules, as applicable in the Central District, are summarized for your assistance.

## APPLICATION

The Chapter Seven Rules were effective January 1, 1994.  They apply to all general civil cases.

## PRIORITY OVER OTHER RULES

The Chapter Seven Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

## CHALLENGE TO ASSIGNED JUDGE

A challenge under Code of Civil Procedure section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

## TIME STANDARDS

Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

**COMPLAINTS:** All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

**CROSS-COMPLAINTS:** Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

## FINAL STATUS CONFERENCE

The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts.  These matters may be heard and resolved at this conference.  At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

## SANCTIONS

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Seven Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Seven Rules.  Such sanctions may be on a party or if appropriate on counsel for the party.

**This is not a complete delineation of the Chapter Seven Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is absolutely imperative.**

ORIGINAL FILED

NOTICE SENT TO:

FILE STAMP

Bidart, Michael J., Esq.
Shernoff Bidart Echeverria, LLP
600 South Indian Hill Boulevard
Claremont,          CA  91711

JUL 15 2011

LOS ANGELES
SUPERIOR COURT

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | CASE NUMBER |
|---|---|---|
| HEIDE KURTZ | Plaintiff(s), | BC463044 |
| VS. | | |
| LIBERTY MUTUAL INSURANCE COMPANY ET AL | Defendant(s). | **NOTICE OF CASE MANAGEMENT CONFERENCE** |

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/ attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled for  October 5, 2011  at  8:30 am  in  Dept. 74 at 111 North Hill Street, Los Angeles, California  90012.

**NOTICE TO DEFENDANT:     THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.**

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least 15 calendar days prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, section 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions pursuant to LASC Local Rule 7.13, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code Section 68608 (b), and California Rules of Court 2.2 et seq.

Date:  July 15, 2011                                                    _____
                                                                                        Judicial Officer

## CERTIFICATE OF SERVICE

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named above:

[ ] by depositing in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed herein in a separate sealed envelope to each address as shown above with postage thereon fully prepaid.

[ ] by personally giving the party notice upon filing the complaint.

Date:  July 15, 2011                                           John A. Clarke, Executive Officer/Clerk
                                                                              **E. MORENO**
                                                          by _____, Deputy Clerk

LACIV 132 (Rev. 09/07)
LASC Approved 10-03

Cal. Rules of Court, rule 3.720-3.730
LASC Local Rules, Chapter Seven

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE
[CRC 3.221 Information about Alternative Dispute Resolution]
For additional ADR information and forms visit the Court ADR web application at www.lasuperiorcourt.org (click on ADR).

The plaintiff shall serve a copy of this Information Package on each defendant along with the complaint (**Civil** only).

**What is ADR:**
Alternative Dispute Resolution (ADR) is the term used to describe all the other options available for settling a dispute which once had to be settled in court. ADR processes, such as arbitration, mediation, neutral evaluation (NE), and settlement conferences, are less formal than a court process and provide opportunities for parties to reach an agreement using a problem-solving approach.

There are many different kinds of ADR. All of them utilize a "neutral", an impartial person, to decide the case or help the parties reach an agreement.

**Mediation:**
In mediation, a neutral person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

**Cases for Which Mediation May Be Appropriate**
Mediation may be particularly useful when parties have a dispute between or among family members, neighbors, or business partners. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

**Cases for Which Mediation May Not Be Appropriate**
Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

**Arbitration:**
In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. *Nonbinding* arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

**Cases for Which Arbitration May Be Appropriate**
Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

**Cases for Which Arbitration May Not Be Appropriate**
If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

**Neutral Evaluation:**
In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

**Cases for Which Neutral Evaluation May Be Appropriate**
Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

**Cases for Which Neutral Evaluation May Not Be Appropriate**
Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

**Settlement Conferences:**
Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

LAADR 005 (Rev. 05/09)
LASC Approved 10-03

# LOS ANGELES SUPERIOR COURT ADR PROGRAMS

**CIVIL:**

- **Civil Action Mediation** (Governed by Code of Civil Procedure (CCP) sections 1775-1775.15, California Rules of Court, rules 3.850-3.868 and 3.870-3.878, Evidence Code sections 1115-1128, and Los Angeles Superior Court Rules, chapter 12.)
- **Retired Judge Settlement Conference**
- **Neutral Evaluation** (Governed by Los Angeles Superior Court Rules, chapter 12.)
- **Judicial Arbitration** (Governed by Code of Civil Procedure sections 1141.10-1141.31, California Rules of Court, rules 3.810-3.830, and Los Angeles Superior Court Rules, chapter 12.)
- **Eminent Domain Mediation** (Governed by Code of Civil Procedure section 1250.420.)
- **Civil Harassment Mediation**
- **Small Claims Mediation**

**FAMILY LAW (non-custody):**

- **Mediation**
- **Forensic Certified Public Accountant (CPA) Settlement Conference**
- **Settlement Conference**
- **Nonbinding Arbitration** (Governed by Family Code section 2554.)

**PROBATE:**

- **Mediation**
- **Settlement Conference**

## NEUTRAL SELECTION

Parties may select a mediator, neutral evaluator, or arbitrator from the Court Party Select Panel or may hire someone privately, at their discretion. If the parties utilize the Random Select Mediation or Arbitration Panel, the parties will be assigned on a random basis the name of one neutral who meets the case criteria entered on the court's website.

## COURT ADR PANELS

| | |
|---|---|
| **Party Select Panel** | The Party Select Panel consists of mediators, neutral evaluators, and arbitrators who have achieved a specified level of experience in court-connected cases. The parties (collectively) may be charged $150.00 per hour for the first three hours of hearing time. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing. |
| **Random Select Panel** | The Random Select Panel consists of trained mediators, neutral evaluators, and arbitrators who have not yet gained the experience to qualify for the Party Select Panel, as well as experienced neutrals who make themselves available pro bono as a way of supporting the judicial system. It is the policy of the Court that all Random Select Panel volunteer mediators, neutral evaluators, and arbitrators provide three hours hearing time per case. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing. |
| **Private Neutral** | The market rate for private neutrals can range from $300-$1,000 per hour. |

## ADR ASSISTANCE

For assistance regarding ADR, please contact the ADR clerk at the courthouse in which your case was filed.

| COURTHOUSE | ADDRESS | ROOM | CITY | PHONE | FAX |
|---|---|---|---|---|---|
| Antonovich | 42011 4th St. West | None | Lancaster, CA 93534 | (661)974-7275 | (661)974-7060 |
| Chatsworth | 9425 Penfield Ave. | 1200 | Chatsworth, CA 91311 | (818)576-8565 | (818)576-8687 |
| Compton | 200 W. Compton Blvd. | 1002 | Compton, CA 90220 | (310)603-3072 | (310)223-0337 |
| Glendale | 600 E. Broadway | 273 | Glendale, CA 91206 | (818)500-3160 | (818)548-5470 |
| Long Beach | 415 W. Ocean Blvd. | 316 | Long Beach, CA 90802 | (562)491-6272 | (562)437-3802 |
| Norwalk | 12720 Norwalk Blvd. | 308 | Norwalk, CA 90650 | (562)807-7243 | (562)462-9019 |
| Pasadena | 300 E. Walnut St. | 109 | Pasadena, CA 91101 | (626)356-5685 | (626)666-1774 |
| Pomona | 400 Civic Center Plaza | 106 | Pomona, CA 91766 | (909)629-3183 | (909)629-6283 |
| San Pedro | 505 S. Centre | 209 | San Pedro, CA 90731 | (310)519-6151 | (310)514-0314 |
| Santa Monica | 1725 Main St. | 203 | Santa Monica, CA 90401 | (310)260-1829 | (310)319-6130 |
| Stanley Mosk | 111 N. Hill St. | 113 | Los Angeles, CA 90012 | (213)974-5425 | (213)633-5115 |
| Torrance | 825 Maple Ave. | 100 | Torrance, CA 90503 | (310)222-1701 | (310)782-7326 |
| Van Nuys | 6230 Sylmar Ave. | 418 | Van Nuys, CA 91401 | (818)374-2337 | (818)902-2440 |

Partially Funded by the Los Angeles County Dispute Resolution Program

A complete list of the County Dispute Resolution Programs is available online and upon request in the Clerk's Office

# VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**

**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**

**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association
Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: | FAX NO. (Optional): | |
| E-MAIL ADDRESS (Optional): | | |
| ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following*:

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

   h.  Computation of damages, including documents not privileged or protected from disclosure, on which such computation is based;

   i.  Whether the case is suitable for the Expedited Jury Trial procedures (see information at **www.lasuperiorcourt.org** under "Civil" and then under "General Information").

2.   The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation.
       (INSERT DATE)           (INSERT DATE)

3.   The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.   References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____     ➤   _____
(TYPE OR PRINT NAME)           (ATTORNEY FOR PLAINTIFF)
Date:

_____     ➤   _____
(TYPE OR PRINT NAME)           (ATTORNEY FOR DEFENDANT)
Date:

_____     ➤   _____
(TYPE OR PRINT NAME)           (ATTORNEY FOR DEFENDANT)
Date:

_____     ➤   _____
(TYPE OR PRINT NAME)           (ATTORNEY FOR DEFENDANT)
Date:

_____     ➤   (ATTORNEY FOR _____)
(TYPE OR PRINT NAME)
Date:

_____     ➤   (ATTORNEY FOR _____)
(TYPE OR PRINT NAME)
Date:

_____     ➤   (ATTORNEY FOR _____)
(TYPE OR PRINT NAME)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):      FAX NO. (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

    iii.   Be filed within two (2) court days of receipt of the Request; and

    iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

   c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

   d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

   e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

   It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

**The following parties stipulate:**

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR PLAINTIFF)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR _____)

➢ _____
(ATTORNEY FOR _____)

➢ _____
(ATTORNEY FOR _____)

LACIV 036 (new)
LASC Approved 04/11

**STIPULATION – DISCOVERY RESOLUTION**

Page 3 of 3

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):   FAX NO. (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

    a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

    b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## The following parties stipulate:

Date: _____

_____     ➤  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR PLAINTIFF)

Date: _____

_____     ➤  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date: _____

_____     ➤  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date: _____

_____     ➤  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date: _____

_____     ➤  (ATTORNEY FOR _____ )
(TYPE OR PRINT NAME)

Date: _____

_____     ➤  (ATTORNEY FOR _____ )
(TYPE OR PRINT NAME)

Date: _____

_____     ➤  (ATTORNEY FOR _____ )
(TYPE OR PRINT NAME)

## THE COURT SO ORDERS.

Date: _____

_____
JUDICIAL OFFICER

NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY:

STATE BAR NUMBER

Reserved for Clerk's File Stamp

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

FAX NO. (Optional):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

### INFORMAL DISCOVERY CONFERENCE
(pursuant to the Discovery Resolution Stipulation of the parties)

CASE NUMBER:

1. This document relates to:
   ☐ Request for Informal Discovery Conference
   ☐ Answer to Request for Informal Discovery Conference
2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).
3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).
4. **For a Request for Informal Discovery Conference, _briefly_ describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, _briefly_ describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUN 07 2011

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
SHAUNYA WESLEY

1   MICHAEL J. BIDART #60582
2   RICARDO ECHEVERRIA #166049
    STEVEN SCHUETZE #143778
3   **SHERNOFF BIDART ECHEVERRIA LLP**
    600 South Indian Hill Boulevard
4   Claremont, CA 91711
    Telephone:   **(909) 621-4935**
5   Facsimile:   **(909) 625-6915**

6

7   Attorneys for Plaintiff HEIDE KURTZ,
    as Chapter 7 Trustee for the Estate
8   of Namco Financial Exchange Corp

9

10              SUPERIOR COURT FOR THE STATE OF CALIFORNIA

11                   FOR THE COUNTY OF LOS ANGELES

12

| | |
|---|---|
| 13  HEIDE KURTZ, solely in her capacity as | Case No.:  **B C 4 6 3 0 4 4** |
| 14  Chapter 7 Trustee for the Estate of | **COMPLAINT AND DEMAND FOR** |
| NAMCO FINANCIAL EXCHANGE | **JURY TRIAL:** |
| 15  CORP. | |
| 16  | 1.  BREACH OF THE IMPLIED |
| Plaintiff, |     COVENANT OF GOOD FAITH AND |
| 17  |     FAIR DEALING |
| 18  vs. | |
| | 2.  BREACH OF CONTRACT |
| 19  LIBERTY MUTUAL INSURANCE | |
| COMPANY, a Massachusetts | 3.  DECLARATORY JUDGMENT |
| 20  Corporation; ZURICH AMERICAN | |
| INSURANCE COMPANY, a New York | |
| 21  Corporation; AXIS INSURANCE | |
| COMPANY, an Illinois Corporation; | |
| 22  TWIN CITY FIRE INSURANCE | |
| COMPANY, a Minnesota Corporation; | |
| 23  Does 1-100, | |
| 24  | |
| 25  Defendants. | |
| 26  | |

27      Plaintiff HEIDE KURTZ, solely in her capacity as Chapter 7 Trustee for the Estate

28   of Namco Financial Exchange Corp., alleges:

- 1 -

# I.

## INTRODUCTION

1.      Namco Financial Exchange Corp. ("NFE") did business for many years as a qualified 1031 exchange. Section 1031 of the Internal Revenue Code permits sellers of investment property to defer capital gains taxes if sales proceeds are used to purchase an identified replacement investment property.

2.      On April 2, 2009, an involuntary chapter 7 petition was filed against NFE by its creditors, and on June 9, 2009 the Court entered the order for relief. Plaintiff HEIDE KURTZ was appointed the Chapter 7 trustee on June 17, 2009.

3.      After the Court entered the order of relief on June 9, 2009 and plaintiff HEIDE KURTZ was appointed the Chapter 7 trustee, it was discovered that NFE's principal and President EZRI NAMVAR aka EZRI NAMVAR MOGHADAM ("NAMVAR") and NFE's Controller and Vice President HAMID TABATABAI ("TABATABAI") had misappropriated and converted exchange client funds totaling approximately $30-$40 million.

4.      On May 19, 2011, NAMVAR and TABATABAI were convicted in Federal Court on four charges of wire fraud for diverting $21 million from four clients without their permission.

5.      NFE had purchased a Commercial Crime Policy from LIBERTY MUTUAL INSURANCE COMPANY ("LIBERTY MUTUAL") for the policy period August 15, 2007 to August 15, 2008. The LIBERTY MUTUAL policy provides $5,000,000 coverage for the loss of clients' funds resulting from a theft by an identified employee acting alone or in collusion with others through coverage added by endorsement identified on the declarations page as FEA Clients' Property ("Endorsement No.5").

6.      Endorsement No. 5 to the LIBERTY MUTUAL policy provides that "We will pay for loss or damage to 'money', 'security' and 'other property' sustained by 'your client' resulting directly from 'theft' committed by an identified 'employee', acting alone or in collusion with other persons and/or 'you', any of 'your' partners or 'members'

SHERNOFF BIDART ECHEVERRIA
LAWYERS FOR INSURANCE POLICYHOLDERS

1   whether acting alone or in collusion with others."   The term "theft" is defined as "the

2   unlawful taking of 'money', 'securities' or other property' to the deprivation of your

3   'client'."

4       7.     ZURICH AMERICAN INSURANCE COMPANY ("ZURICH"), AXIS

5   INSURANCE COMPANY ("AXIS"),  and TWIN CITY FIRE INSURANCE COMPANY

6   ("TWIN CITY") each provided excess coverage in $5 million additional increments for

7   total additional coverage of $15 million under the same terms and conditions set forth in

8   the LIBERTY MUTUAL policy.

9       8.     On July 2, 2009, a claim was made to each insurer by Chapter 7 trustee

10  HEIDE KURTZ for payment pursuant to the terms of the policies.  Thereafter, plaintiff

11  provided the insurers with extensive documentation and financial records supporting the

12  claims made against the insurers.  A notarized Proof of Loss was sent on December 16,

13  2009.

14      9.     Defendant Insurers LIBERTY MUTUAL, ZURICH, AXIS, and TWIN CITY

15  have unreasonably refused to comply with the terms of their policies and pay the claims

16  presented by plaintiff HEIDE KURTZ, as Chapter 7 trustee for NFE.  Plaintiff brings this

17  action against defendants LIBERTY MUTUAL, ZURICH, AXIS, and TWIN CITY for

18  breach of contract and breach of the implied covenant of good faith and fair dealing, for

19  unreasonably refusing to indemnify and pay plaintiff HEIDE KURTZ, as Chapter 7

20  trustee for NFE, for the theft of NFE's clients' money, securities, and other property.

21      10.    Plaintiff HEIDE KURTZ, as Chapter 7 trustee for NFE, also brings a cause

22  of action for declaratory relief against LIBERTY MUTUAL, ZURICH, AXIS, and TWIN

23  CITY.

24

25                              II.

26                           PARTIES

27      11.    Plaintiff HEIDE KURTZ is, and at all relevant times was, a resident of the

28  County of Los Angeles, State of California.  HEIDE Kurtz is the Chapter 7 trustee of





SHERNOFF BIDART ECHEVERRIA®
LAWYERS FOR INSURANCE POLICYHOLDERS



1  NFE's bankruptcy estate.   On April 2, 2009, an Involuntary chapter 7 petition was filed

2  against NFE, and on June 9, 2009 the Court entered the order for relief.  HEIDE KURTZ

3  was appointed the Chapter 7 trustee on June 17, 2009, and has standing to bring this

4  Complaint under 11 U.S.C § 323.

5       12.    Defendant LIBERTY MUTUAL is, and at all relevant times was, a

6  Massachusetts corporation with its principal place of business located at 175 Berkeley

7  St., Boston, Massachusetts, 02116.  LIBERTY MUTUAL is authorized to transact in the

8  business of insurance in the State of California.

9       13.    Defendant ZURICH is, and at all relevant times was a New York

10  corporation, with its principal place of business located at 1400 American Lane,

11  Schaumburg, Illinois  60196.   ZURICH is authorized to transact in the business of

12  insurance in the State of California.

13       14.    Defendant AXIS is, and at all relevant times was, an Illinois corporation

14  with its principal place of business located at 11680 Great Oaks Way, Ste. 500,

15  Alphretta, Georgia 30022.  AXIS is authorized to transact in the business of insurance in

16  the State of California.

17       15.    Defendant TWIN CITY is, and at all relevant times was, a Minnesota

18  corporation, with its principal place of business located at One Hartford Plaza, HO-1-09,

19  Hartford, Connecticut.  TWIN CITY is authorized to transact in the business of Insurance

20  in the State of California.

21       16.    The true names or capacities, whether individual, corporate, associate, or

22  otherwise, of defendants DOES 1 through 100, inclusive, are unknown to plaintiff, who

23  therefore sues said defendants by such fictitious names.  Plaintiff is informed and

24  believes and thereon alleges that each of the defendants sued herein as a DOE is

25  legally responsible in some manner for the events and happenings referred to herein.

26  Plaintiff will ask leave of this court to amend this complaint to insert their true names

27  and capacities in place and instead of the fictitious names when the same become

28  known.

SHERNOFF BIDART
ECHEVERRIA™
LAWYERS FOR INSURANCE POLICYHOLDERS

- 4 -

### III.

### POLICIES

17.    NFE purchased and paid all the premiums for a LIBERTY MUTUAL policy, Policy No. F14N587509001, for policy period August 15, 2007 to August 15, 2008. The policy provides for insuring agreements for Employee Theft coverage at $5,000,000, and also added by endorsement additional coverage for FEA Clients' Property at $5,000,000. A true and correct copy of the LIBERTY MUTUAL policy is attached as **Exhibit 1 [Declarations Page, Page 1 of 2]**.

18.    The Insuring Agreement for "Employee Theft" provides "We will pay for loss of or damage to 'money', 'securities' and 'other property' resulting directly from 'theft' committed by an 'employee', whether identified or not, acting alone or in collusion with other persons." **[Exhibit 1, Liberty Mutual Policy, Page 1 of 20, ¶ A.1]** "Theft" for purposes of "employee theft coverage" is defined in the policy as "the unlawful taking of property to the deprivation of the Insured." **[Exhibit 1, Liberty Mutual Policy, Page 20 of 20, ¶ F.20]**

19.    The LIBERTY MUTUAL policy also added Endorsement No. 5 to the policy. Endorsement No. 5 is titled "Federation of Exchange Accommodators – Fidelity Bond Clients' Property Insuring Agreement." Endorsement 5 adds the following as an additional Section A Insuring Agreement regarding Clients' Property.

> We will pay for loss or damage to "money", "security" and "other property" sustained by "your" "client" resulting directly from 'theft' committed by an identified "employee", acting alone or in collusion with other persons and/or "you", any or "your" partners or "members" whether acting alone or in collusion with others.

20.    Endorsement No. 5 further sets forth that "[t]he property covered under this Insuring Agreement is: a. Limited to property which is held in a financial institution account in a transaction involving 'you' as a qualified intermediary for a tax-deferred

SHERNOFF BIDART ECHEVERRIA™ LAWYERS FOR INSURANCE POLICYHOLDERS

1    exchange of property intended to qualify under Internal Revenue Code 1031." **[Exhibit**

2    **1, Liberty Mutual Policy, Endorsement 5, Page 1 of 2, ¶ C.2.a.]**

3       21.   Endorsement No. 5 also contains the following definitions applicable to the

4    Insuring Agreement, FEA Clients' Property:

5            a.   "Client" means any party for whom you perform services under a

6            written contract.

7            b.   "Theft" means the unlawful taking of "money", "securities" or "other

8            property" to the deprivation of your "client".

9            c.   "You" and "your" refers to the Named Insured shown in the

10           Declarations and/or any natural person who is an owner of the Named

11           Insured.

SHERNOFF BIDART
ECHEVERRIA<sup>LLP</sup>
LAWYERS FOR INSURANCE POLICYHOLDERS



12    **[Exhibit 1, Liberty Mutual Policy, Endorsement 5, ¶ D]**

13       22.   While the "employee theft" endorsement provides coverage for the

14    unlawful taking of property to the deprivation of the **Insured**, Endorsement No. 5

15    provides coverage for the unlawful taking of property to the deprivation of **clients**.

16       23.   The LIBERTY MUTUAL policy also contains Endorsement 4 titled

17    Federation of Exchange Accommodators-Fidelity Bond Conditions Precedent to

18    Liability. It states "6.   As respect to Insuring Agreement 1 and Clients' Property, there

19    will be no 'employee theft' coverage involving a transaction intended to qualify as a tax

20    deferred exchange of property under Internal Revenue Code 1031 unless the following

21    internal control requirements were complied with at the time the 'employee theft'

22    occurred . . ." **[Exhibit 1, Liberty Mutual Policy, Endorsement 4, ¶ 6]**

23       24.   "Employee theft coverage" is specifically enumerated as a separate

24    coverage under the insuring agreements of the policy from the Client Funds coverage

25    provided for Clients Funds under Endorsement No. 5. By its express terms,

26    Endorsement No. 4 expressly states there is "<u>no 'employee theft' coverage</u>", which is

27    the distinct coverage identified as Insuring Agreement 1 on the Declarations Page and

28    provided under Insuring Agreement A.1 in the Policy. "Employee theft coverage" is a

1  distinct coverage from the "Clients' Property" coverage provided by Endorsement No. 5.

2  Endorsement 4 by its terms does not limit and state there would be no "FEA Clients'

3  Property" coverage as outlined in Endorsement No. 5 if all the conditions in

4  Endorsement 4 were not met.

5      25.     Endorsement 4 sets forth the following internal control requirements to be

6  complied with as a condition of coverage for "employee theft":

7          "a.     A written contract was in effect between you and each

8          exchange/client stipulating the manner in which relinquished 'money',

9          'securities', and 'other property' will be held and subsequently released by

10         you for use in acquiring replacement property.

11         b.     The relinquished 'money', 'securities' and 'other property' of each

12         related exchange transaction were held in a financial institution account

13         segregated from your operating funds.

14         c.     Each related exchange transaction was identified by a unique file

15         number or similar identifier.

16         d.     Countersignature was required to authorize release of all 'money',

17         'securities' and 'other property' or a monthly reconciliation of all accounts

18         involving exchange transaction proceeds was performed within two weeks

19         of receipt of the account statement.  Additionally, reconciliations were

20         performed by an 'employee' not authorized to deposit, withdraw or transfer

21         funds from the account, or were reviewed by an outside bookkeeper or an

22         outside CPA."

23      **[Exhibit 1, Liberty Mutual Policy, Endorsement 4, ¶ 6, a-d]**

24      26.     ZURICH issued an Excess Policy of $5,000,000 to NFE, Policy Number

25  FID 9158508 for the policy term period of August 15, 2007 to August 15, 2008.  The

26  ZURICH Policy is in excess of the LIBERTY MUTUAL policy.  The ZURICH Excess

27  Policy is a so called "following form" policy, and as such, provides the same coverage

28  terms and conditions as the underlying LIBERTY MUTUAL Policies.  Upon exhaustion



SHERNOFF BIDART
ECHEVERRIA
LAWYERS FOR INSURANCE POLICYHOLDERS

1    of the Underlying Limits of the LIBERTY MUTUAL policy, ZURICH'S coverage is subject

2    to the same warranties, limitations, conditions, provisions, and other terms of the

3    LIBERTY MUTUAL policy.  A true and correct copy of the ZURICH policy is attached as

4    **Exhibit 2**.

5        27.    AXIS issued an Excess Policy of $5,000,000 to NFE, Policy Number MNN

6    734622/01/2007 for the policy term period of August 15, 2007 to August 15, 2008.  The

7    AXIS Policy is in excess of the LIBERTY MUTUAL policy and the ZURICH excess

8    policy.  Upon exhaustion of the Underlying Limits of the LIBERTY MUTUAL policy and

9    ZURICH's policy, AXIS' coverage is subject to the same warranties, limitations,

10    conditions, provisions, and other terms of the LIBERTY MUTUAL policy.  A true and

11    correct copy of the AXIS policy is attached as **Exhibit 3**.

12        28.    TWIN CITY issued an Excess Policy of $5,000,000 to NFE, Policy Number

13    00 FA 0245357-07 for the policy term period of August 15, 2007 to August 15, 2008.

14    The TWIN CITY Policy is in excess of the LIBERTY MUTUAL policy and the ZURICH

15    excess policy and the AXIS excess policy.  Upon exhaustion of the Underlying Limits of

16    the LIBERTY MUTUAL policy and ZURICH's policy and the AXIS policy, TWIN CITY'S

17    coverage is subject to the same warranties, limitations, conditions, provisions, and other

18    terms of the LIBERTY MUTUAL policy.  A true and correct copy of the TWIN CITY

19    policy is attached as **Exhibit 4**.

20

21                **IV.**

22            **FACTUAL ALLEGATIONS**

23        29.    Section 1031 of the Internal Revenue Code permits owners of investment

24    property to defer the capital gains tax that would otherwise be due and owing upon the

25    sale of the investment property by applying, within a set time frame, the sale proceeds

26    to the purchase of an identified replacement investment property or properties.  These

27    transactions are known as a 1031 exchange.

28

SHERNOFF BIDART
ECHEVERRIA
LAWYERS FOR INSURANCE POLICYHOLDERS

- 8 -

1    30.    In a typical 1031 exchange, the owner of an investment property would

2    assign the owner's interest in the investment property to a "qualified intermediary"

3    before the planned sale of the investment property.  The qualified intermediary would

4    convey the investment property to the buyer, who would deposit the sale proceeds into

5    a bank account of the qualified intermediary.  The owner of the investment property

6    would have 45 days to identify for the qualified intermediary a like-kind replacement,

7    and 180 days to close on the purchase of the replacement property.  The funds

8    deposited into the bank account of the qualified intermediary would be used to fund the

9    purchase of replacement property, returning any unused funds to the owner.

10    31.    NFE held itself as a qualified intermediary, and pursuant to written

11    exchange agreements received it would hold clients' funds in accounts where the funds

12    were supposed to be available to the clients for purchase of replacement properties, or

13    return to the client.

14    32.    Each exchange client was assigned a unique file number.

15    33.    During the policy periods of the LIBERTY MUTUAL policy and the excess

16    policies, numerous clients entered into 1031 transactions with NFE and exchange funds

17    were deposited in NFE accounts to be held until replacement properties were identified.

18    34.    During the policy period, the relinquished moneys of each related

19    exchange transaction were held in separate accounts from NFE's operating funds.  It is

20    unclear whether or not this was done on a consistent basis for all funds.

21    35.    Bank signature cards demonstrate that EZRI NAMVAR and other persons

22    were authorized signatories.  Based on information and belief, countersignatures were

23    required on written instruments to authorize release of money, securities and other

24    property.

25    36.    Monthly reconciliations were performed by employee HAMID TABATABAI,

26    who was not authorized to deposit, withdraw or transfer funds from the account.

27    37.    During the policy periods, EZRI NAMVAR, in collusion with HAMID

28    TABATABAI, used, misappropriated and converted the clients' funds for purposes other

SHERNOFF BIDART
ECHEVERRIA"
LAWYERS FOR INSURANCE POLICYHOLDERS



1   than the intended use of a 1031 exchange to purchase replacement properties. In

2   some instances clients' funds were used to purchase other real property or assets not

3   on behalf of the particular client whose funds were used, or transferred to persons or

4   employees other than client.

5       38.   As a result of the misappropriation and theft by NAMVAR and

6   TABATABAI, approximately $35-$45 million in clients' funds have been identified as

7   lost.

8       39.   On July 2, 2009, plaintiff HEIDE KURTZ, Chapter 7 Trustee, submitted a

9   claim to defendants LIBERTY MUTUAL, ZURICH, AXIS, and TWIN FALL (sent to

10  Hartford) under the applicable policies. Attached as **Exhibit 5** are true and correct

11  copies of the claims that were submitted on July 2, 2009.

12      40.   Beginning in September 2009, the insurers began investigating the claim

13  and communicating through Dee Studler ("Studler") of Studler, Doyle & Company, LLC.

14  Attached as **Exhibit 6** is a true and correct copy of a September 11, 2009 letter

15  requesting certain information.

16      41.   On November 4, 2009, four flash drives were sent to Studler by Weiss &

17  Spees, attorneys for the Chapter 7 Trustee, containing all the records of NFE, including

18  the records pertaining to the 1031 transactions on which NFE's claim was based.

19  Attached as **Exhibit 7** is a true and correct copy of the November 4, 2009 letter.

20      42.   LIBERTY MUTUAL, through its agent Studler, granted an extension to the

21  Trustee to file a Proof of Loss on or before March 3, 2010. Attached as **Exhibit 8** is a

22  true and correct copy of the letter dated December 17, 2009 confirming the extension to

23  file a Proof of Loss.

24      43.   On or about December 16, 2009 a notarized Proof of Loss was submitted

25  to Liberty International Underwriters submitting a loss in the amount of $35-$45 million.

26  Attached as **Exhibit 9** is a true and correct copy of the Proof of Loss.

27      44.   There were some communications with the insurers' investigator Studler

28  by Weiss & Spees in January, 2010.



45.     On May 10, 2010, Kevin Mattessich, Esq. contacted by phone Jonathan Balfus of Weiss & Spees advising he would be handling the investigation of the misappropriation of NFE on behalf of Liberty Mutual.

46.     On May 26, 2010, correspondence was sent to Studler by Jonathan Balfus memorializing the conversation with Mr. Mattessich, and inquiring who would be handling the claim for purposes of future communications and investigation. Attached as **Exhibit 10** is a true and correct copy of the May 26, 2010 letter.

47.     The carriers and its investigators have failed to have any communications with Plaintiff Chapter 7 Trustee and her representatives since May, 2010 when it was stated that the insurers were continuing to investigate the claims.

48.     To date, no coverage position has ever been stated by or on behalf of the carriers either accepting or denying the claim.

49.     NFE is defunct and no longer has any employees.

50.     On May 19, 2011, EZRI NAMVAR and HAMID TABATABAI were convicted of four wire fraud charges for diverting clients' funds without their permission.



## FIRST CAUSE OF ACTION
## (BREACH OF CONTRACT)

PLAINTIFF HEIDE KURTZ, CHAPTER 7 TRUSTEE, FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT, LIBERTY MUTUAL INSURANCE COMPANY, ZURICH AMERICAN INSURANCE COMPANY ("ZURICH"), AXIS INSURANCE COMPANY ("AXIS"), and TWIN CITY FIRE INSURANCE COMPANY AND DOES 1 THROUGH 100, FOR BREACH OF CONTRACT, ALLEGES:

51.     Plaintiff HEIDE Kurtz, Chapter 7 Trustee, refers to each and every preceding paragraph and incorporates those paragraphs as though set forth in full in this cause of action.

52.     Defendants LIBERTY MUTUAL, ZURICH, AXIS, and TWIN CITY, and Does 1-100 owed duties and obligations to plaintiff under the policy. Specifically,

1   Endorsement No. 5 stated payment would be made for loss or damage sustained by

2   "'your' 'client' resulting directly from 'theft' committed by an identified 'employee', acting

3   alone or in collusions with other persons and/or 'you', any of 'your' partners or

4   'members' whether acting alone or in collusion with others."

5       53.     The conduct of NAMVAR and TABATABAI constituted a "theft" of client's

6   property as defined by Endorsement No. 5 and constitute a covered claim for which

7   payment pursuant to the policies is required to be made to plaintiff

8       54.     The total amount of client funds covered by Endorsement No. 5 exceeds

9   the limits of the LIBERTY MUTUAL policy and the excess policies of ZURICH, AXIS,

10  and TWIN CITY.

11      55.     Defendant breached the terms and provisions of the insurance policy by

12  failing to indemnify plaintiff from the theft losses incurred and covered under the Policy.

13      56.     Plaintiff has complied with all of the terms and conditions of the LIBERTY

14  MUTUAL policy, including payment of all premiums due and any other costs and all

15  conditions associated with the LIBERTY MUTUAL policy.

16      57.     Plaintiff has complied with all of the terms and conditions of the ZURICH,

17  AXIS, and TWIN CITY policies, including payment of all premiums due and any other

18  costs and all conditions associated with the excess policies.

19      58.     As a direct and proximate result of defendant's conduct and breach of its

20  contractual obligations, plaintiff has suffered damages under the policies in an amount

21  to be determined according to proof at the time of trial.

22

23                      **SECOND CAUSE OF ACTION**

24      **(BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)**

25      PLAINTIFF, HEIDE KURTZ, CHAPTER 7 TRUSTEE, FOR A SECOND CAUSE

26  OF ACTION AGAINST DEFENDANT, LIBERTY MUTUAL INSURANCE COMPANY, ,

27  ZURICH AMERICAN INSURANCE COMPANY ("ZURICH"), AXIS INSURANCE

28  COMPANY ("AXIS"), and TWIN CITY FIRE INSURANCE COMPANY AND DOES 1




SHERNOFF BIDART
ECHEVERRIA™
LAWYERS FOR INSURANCE POLICYHOLDERS

- 12 -

1    THROUGH 100, FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND

2    FAIR DEALING, ALLEGES:

3         59.    Plaintiff HEIDE Kurtz, Chapter 7 Trustee, refers to each and every

4    preceding paragraph and incorporates those paragraphs as though set forth in full in

5    this cause of action.

6         60.    Defendants, and each of them, have breached their duty of good faith and

7    fair dealing owed to plaintiff in the following respects:

8              (a)    Unreasonably failing to give at least as much consideration to the

9                    interests of Plaintiff as they gave to their own interests;

10             (b)    Unreasonably failing to conduct a full, fair, and thorough

11                   investigation of all of the bases of Plaintiff's submitted claims;

12             (c)    Unreasonably delaying payment of benefits under the Policies

13                   issued to NFE, at a time when defendants knew that the Plaintiff

14                   was entitled to such benefits under the terms of the Policies;

15             (d)    Unreasonably withholding benefits from the Plaintiff, knowing that

16                   Plaintiff's claims for benefits under the Policies to be valid;

17             (e)    Unreasonably refusing to communicate with plaintiff, and failing to

18                   advise plaintiff of any coverage position;

19             (f)    Unreasonably failing to affirmatively search for evidence which

20                   would support coverage; and

21             (g)    Unreasonably requiring Plaintiffs to file suit to obtain the Policies'

22                   benefits owed; and

23        61.    As a proximate result of the unreasonable and bad faith conduct of

24    defendants, Plaintiffs were compelled to retain legal counsel to obtain the benefits due

25    under the Policies. Therefore, defendants are liable to Plaintiffs for those attorneys'

26    fees reasonably necessary, incurred and/or paid by Plaintiffs in order to obtain benefits

27    under the Policies in a sum to be determined at the time of trial.

28

COMPLAINT AND DEMAND FOR JURY

1    62.   As a further proximate cause of the unreasonable and bad faith conduct of

2    defendants, Plaintiffs have suffered other consequential economic damages in a sum to

3    be determined at the time of trial.

4    63.   Defendants' conduct described herein was carried out with a conscious

5    disregard of Plaintiffs' rights and interests under the policies.  Defendants acted willfully

6    to deprive Plaintiffs of policy benefits in favor of defendants' own financial interests.

7    64.   Defendants' conduct described herein was undertaken by the corporate

8    officers or managing agents of defendants, who were responsible for claims supervision

9    and operation, underwriting, communications and/or decisions.  The aforementioned

10   conduct of these managing agents and individuals was therefore undertaken on behalf

11   of defendants.   Plaintiffs allege on information and belief that defendants had advance

12   knowledge of the actions and conduct of these individuals, and that their actions and

13   conduct were ratified, authorized, and approved by managing agents whose precise

14   identities are unknown to Plaintiffs at this time.  Defendants' unreasonable and bad faith

15   conduct is the legal cause of the substantial harm and damages suffered by Plaintiffs.

16

17                    **THIRD CAUSE OF ACTION**

18                      **(DECLARATORY RELIEF)**

19        PLAINTIFF, HEIDE KURTZ, CHAPTER 7 TRUSTEE, FOR A SECOND CAUSE

20   OF ACTION AGAINST DEFENDANT, LIBERTY MUTUAL INSURANCE COMPANY,

21   ZURICH AMERICAN INSURANCE COMPANY ("ZURICH"), AXIS INSURANCE

22   COMPANY ("AXIS"),  and TWIN CITY FIRE INSURANCE COMPANY AND DOES 1

23   THROUGH 100, FOR DECLARATORY RELIEF, ALLEGES:

24   65.   Plaintiff HEIDE Kurtz, Chapter 7 Trustee, refers to each and every

25   preceding paragraph and incorporates those paragraphs as though set forth in full in

26   this cause of action.

27   66.   A present and actual controversy between plaintiff and defendants exists

28   in that defendants' refusal to indemnify plaintiff for the loss of client funds pursuant to



SHERNOFF BIDART
ECHEVERRIA™
LAWYERS FOR INSURANCE POLICYHOLDERS

1  the terms of Endorsement No. 5 and each of the policies described herein compelled

2  plaintiff to obtain counsel to represent it to obtain the benefits due under the Policy.

3       67.    Plaintiff requests a declaration from this Court that the defendants have an

4  obligation to reimburse plaintiff for clients' funds which were lost for the period of the

5  policy pursuant to the terms of Endorsement No. 5 occasioned by the thefts described

6  herein in addition to attorney fees incurred and/or paid by plaintiff in order to obtain

7  benefits under the policies.

8

9                        **PRAYER FOR RELIEF**

10       **WHEREFORE,** Plaintiff HEIDE Kurtz, Chapter 7 Trustee For The Estate of

11  Namco Financial Exchange Corp., prays for judgment against defendants as follows:

12       1.    Damages under the LIBERTY MUTUAL, ZURICH, AXIS, and TWIN CITY

13  Polices for failure to indemnify for the losses suffered by the plaintiff;

14       2.    For all economic damages proximately caused by defendant's conduct;

15       3.    For reasonable attorney's fees, witness fees, and costs of litigation

16  incurred and/or paid by the plaintiff to obtain the Policy benefits in an amount to be

17  determined at trial;

18       4.    Punitive and exemplary damages in an amount appropriate to punish or

19  set an example of defendants;

20       5.    For costs of suit incurred herein;

21       6.    For a declaration of rights and obligations of the parties under the Policies;

22  and

23       7.    For such other and further relief as the Court deems just and proper.

24  Date: June 7, 2011          SHERNOFF BIDART ECHEVERRIA LLP

25

26                   By

27                   MICHAEL J. BIDART

                     RICARDO ECHEVERRIA

28                   STEVEN SCHUETZE

                     Attorneys for Plaintiff



SHERNOFF BIDART ECHEVERRIA
LAWYERS FOR INSURANCE POLICYHOLDERS

1

2 **DEMAND FOR JURY TRIAL**

3 Plaintiff hereby demands a trial by jury.

4

5 Date: June 7, 2011      SHERNOFF BIDART ECHÉVERRIA LLP

6

7 By

8 MICHAEL J. BIDART

9 RICARDO ECHEVERRIA
STEVEN SCHUETZE

10 Attorneys for Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 1

# LIBERTY INTERNATIONAL UNDERWRITERS

# COMMERCIAL CRIME POLICY





**Liberty**
**International**
**Underwriters**™
Member of Liberty Mutual Group

# Commercial Crime Policy

## LIBERTY MUTUAL INSURANCE COMPANY
(A Mutual Insurance Company, hereinafter called the Company)

### DECLARATIONS

In Return For The Payment Of The Premium, And Subject To All The Terms And Conditions Of This Policy, We Agree With You To Provide The Insurance As Stated In This Policy.

| COMPANY NAME AREA | PRODUCERS NAME AREA |
|---|---|
| Liberty Mutual Insurance Company | Lockton Companies LLC |

NAMED INSURED:     NAMCO Financial Exchange Corp.
                   (Also list any Employee Benefit Plan(s) included as Insureds)
MAILING ADDRESS:   12121 Wilshire Boulevard, Suite 1400
                   Los Angeles, CA  90025

POLICY PERIOD:     August 15, 2007     to     August 15, 2008
                   (12:01 A.M. at your Mailing Address shown above)

POLICY NUMBER:     PI4N587509001

### INSURING AGREEMENTS, LIMITS OF INSURANCE AND DEDUCTIBLE

| INSURING AGREEMENTS | LIMIT OF INSURANCE Per Occurrence | DEDUCTIBLE AMOUNT Per Occurrence |
|---|---|---|
| 1. Employee Theft | $5,000,000 | $25,000 |
| 2. Forgery Or Alteration | Not Covered | Nil |
| 3. Inside The Premises – Theft Of Money And Securities | Not Covered | Nil |
| 4. Inside The Premises – Robbery Or Safe Burglary Of Other Property | Not Covered | Nil |
| 5. Outside The Premises | Not Covered | Nil |
| 6. Computer Fraud | Not Covered | Nil |
| 7. Funds Transfer Fraud | Not Covered | Nil |
| 8. Money Orders And Counterfeit Paper Currency | Not Covered | Nil |
| If Added by Endorsement, Insuring Agreement(s): | | |
| FEA Clients' Property | $5,000,000 | $25,000 |

CR DS 02 07 02

© ISO Properties, Inc., 2001



# Commercial Crime Policy

If "Not Covered" is inserted above opposite any specified Insuring Agreement, such Insuring Agreement and any other reference thereto in this policy is deleted.

**ENDORSEMENTS FORMING PART OF THIS POLICY WHEN ISSUED:**

Notice Endorsement, Notice of Membership in Liberty Mutual Holding Company Inc. and Notice of Annual Meeting, California Changes CR 02 49 11 04,Loss Payable CR 20 14 03 00,Federation Of Exchange Accommodators Amend Consolidation-Merger Or Acquisition,Federation Of Exchange Accommodators Conditions Precedent To Liability, Federation Of Exchange Accommodators Clients' Property, Federation Of Exchange AccommodatorsOmnibus Named Insured

**CANCELLATION OF PRIOR INSURANCE ISSUED BY US:**

By acceptance of this Policy you give us notice cancelling prior policy Nos.     N/A     ;
the cancellation to be effective at the time this Policy becomes effective.

9/28/2007

Countersigned Date:

By Authorized Representative

CR DS 02 07 02

© ISO Properties, Inc., 2001



# Commercial Crime Policy

## LIBERTY MUTUAL INSURANCE COMPANY

(A Mutual Insurance Company, hereinafter called the Company)

### LOSS SUSTAINED FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is or is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section F. Definitions.

### A. Insuring Agreements

Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the Declarations and applies to loss that you sustain resulting directly from an "occurrence" taking place during the Policy Period shown in the Declarations, except as provided in Condition E.1.o. or E.1.p., which is "discovered" by you during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period To Discover Loss Condition E.1.j.:

**1. Employee Theft**

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

For the purposes of this Insuring Agreement, "theft" shall also include forgery.

**2. Forgery Or Alteration**

a. We will pay for loss resulting directly from "forgery" or alteration of checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in "money" that are:

(1) Made or drawn by or drawn upon you; or

(2) Made or drawn by one acting as your agent;

or that are purported to have been so made or drawn.

For the purposes of this Insuring Agreement, a substitute check as defined in the Check Clearing for the 21st Century Act shall be treated the same as the original it replaced.

b. If you are sued for refusing to pay any instrument covered in Paragraph 2.a., on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in that defense. The amount that we will pay is in addition to the Limit of Insurance applicable to this Insuring Agreement.

**3. Inside The Premises -- Theft Of Money And Securities**

a. We will pay for loss of "money" and "securities" inside the "premises" or "banking premises":

(1) Resulting directly from "theft" committed by a person present inside such "premises" or "banking premises"; or

(2) Resulting directly from disappearance or destruction.

**1    20**

CR 00 23 05 06

© ISO Properties, Inc., 2005



# Commercial Crime Policy

    b.   We will pay for loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "theft" of "money" and "securities", if you are the owner of the "premises" or are liable for damage to it.

    c.   We will pay for loss of or damage to a locked safe, vault, cash register, cash box or cash drawer located inside the "premises" resulting directly from an actual or attempted "theft" of or unlawful entry into those containers.

**4.   Inside The Premises – Robbery Or Safe Burglary Of Other Property**

    a.   We will pay for loss of or damage to "other property":

       (1)  Inside the "premises" resulting directly from an actual or attempted "robbery" of a "custodian"; or

       (2)  Inside the "premises" in a safe or vault resulting directly from an actual or attempted "safe burglary".

    b.   We will pay for loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "robbery" or "safe burglary" of "other property", if you are the owner of the "premises" or are liable for damage to it.

    c.   We will pay for loss of or damage to a locked safe or vault located inside the "premises" resulting directly from an actual or attempted "robbery" or "safe burglary".

**5.   Outside The Premises**

    a.   We will pay for loss of "money" and "securities" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from "theft", disappearance or destruction.

    b.   We will pay for loss of or damage to "other property" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from an actual or attempted "robbery".

**6.   Computer Fraud**

    We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from the use of any computer to fraudulently cause a transfer of that property from inside the "premises" or "banking premises":

    a.   To a person (other than a "messenger") outside those "premises"; or

    b.   To a place outside those "premises".

**7.   Funds Transfer Fraud**

    We will pay for loss of "funds" resulting directly from a "fraudulent instruction" directing a financial institution to transfer, pay or deliver "funds" from your "transfer account".

**8.   Money Orders And Counterfeit Money**

    We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

    a.   Money orders issued by any post office, express company or bank that are not paid upon presentation; or

    b.   "Counterfeit money" that is acquired during the regular course of business.

© ISO Properties, Inc., 2005



# Commercial Crime Policy

**B. Limit Of Insurance**

The most we will pay for all loss resulting directly from an "occurrence" is the applicable Limit of Insurance shown in the Declarations.

If any loss is covered under more than one Insuring Agreement or Coverage, the most we will pay for such loss shall not exceed the largest Limit of Insurance available under any one of those Insuring Agreements or Coverages.

**C. Deductible**

We will not pay for loss resulting directly from an "occurrence" unless the amount of loss exceeds the Deductible Amount shown in the Declarations. We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance.

**D. Exclusions**

1.  This policy does not cover:

    a.  **Acts Committed By You, Your Partners Or Your Members**

    Loss resulting from "theft" or any other dishonest act committed by:

    (1) You; or

    (2) Any of your partners or "members";

    whether acting alone or in collusion with other persons.

    b.  **Acts Of Employees Learned Of By You Prior To The Policy Period**

    Loss caused by an "employee" if the "employee" had also committed "theft" or any other dishonest act prior to the effective date of this policy and you or any of your partners, "members", "managers", officers, directors or trustees, not in collusion with the "employee", learned of that "theft" or dishonest act prior to the Policy Period shown in the Declarations.

    c.  **Acts Of Employees, Managers, Directors, Trustees Or Representatives**

    Loss resulting from "theft" or any other dishonest act committed by any of your "employees", "managers", directors, trustees or authorized representatives:

    (1) Whether acting alone or in collusion with other persons; or

    (2) While performing services for you or otherwise;

    except when covered under Insuring Agreement A.1.

    d.  **Confidential Information**

    Loss resulting from:

    (1) The unauthorized disclosure of your confidential information including, but not limited to, patents, trade secrets, processing methods or customer lists; or

    (2) The unauthorized use or disclosure of confidential information of another person or entity which is held by you including, but not limited to, financial information, personal information, credit card information or similar non-public information.

    e.  **Governmental Action**

    Loss resulting from seizure or destruction of property by order of governmental authority.

CR 00 23 05 06

© ISO Properties, Inc., 2005



## Commercial Crime Policy

    f.   **Indirect Loss**

Loss that is an indirect result of an "occurrence" covered by this policy including, but not limited to, loss resulting from:

    (1)  Your inability to realize income that you would have realized had there been no loss of or damage to "money", "securities" or "other property".

    (2)  Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this policy.

    (3)  Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this policy.

    g.   **Legal Fees, Costs And Expenses**

Fees, costs and expenses incurred by you which are related to any legal action, except when covered under Insuring Agreement A.2.

    h.   **Nuclear Hazard**

Loss or damage resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

    i.   **Pollution**

Loss or damage caused by or resulting from pollution. Pollution means the discharge, dispersal, seepage, migration, release or escape of any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

    j.   **War And Military Action**

Loss or damage resulting from:

    (1)  War, including undeclared or civil war;

    (2)  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    (3)  Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

2.  Insuring Agreement A.1. does not cover:

    a.   **Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

    (1)  An inventory computation; or

    (2)  A profit and loss computation.

However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

CR 00 23 05 06             © ISO Properties, Inc., 2005



# Commercial Crime Policy

**b. Trading**

Loss resulting from trading, whether in your name or in a genuine or fictitious account.

**c. Warehouse Receipts**

Loss resulting from the fraudulent or dishonest signing, issuing, cancelling or failing to cancel, a warehouse receipt or any papers connected with it.

**3. Insuring Agreements A.3., A.4. and A.5. do not cover:**

**a. Accounting Or Arithmetical Errors Or Omissions**

Loss resulting from accounting or arithmetical errors or omissions.

**b. Exchanges Or Purchases**

Loss resulting from the giving or surrendering of property in any exchange or purchase.

**c. Fire**

Loss or damage resulting from fire, however caused, except:

(1) Loss of or damage to "money" and "securities"; and

(2) Loss from damage to a safe or vault.

**d. Money Operated Devices**

Loss of property contained in any money operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

**e. Motor Vehicles Or Equipment And Accessories**

Loss of or damage to motor vehicles, trailers or semi-trailers or equipment and accessories attached to them.

**f. Transfer Or Surrender Of Property**

(1) Loss of or damage to property after it has been transferred or surrendered to a person or place outside the "premises" or "banking premises":

(a) On the basis of unauthorized instructions;

(b) As a result of a threat to do bodily harm to any person;

(c) As a result of a threat to do damage to any property;

(d) As a result of a threat to introduce a denial of service attack into your computer system;

(e) As a result of a threat to introduce a virus or other malicious instruction into your computer system which is designed to damage, destroy or corrupt data or computer programs stored within your computer system;

(f) As a result of a threat to contaminate, pollute or render substandard your products or goods; or

(g) As a result of a threat to disseminate, divulge or utilize:

(i) Your confidential information; or

(ii) Weaknesses in the source code within your computer system.

© ISO Properties, Inc., 2005



# Commercial Crime Policy

    (2) But, this Exclusion does not apply under Insuring Agreement A.5. to loss of "money", "securities" or "other property" while outside the "premises" in the care and custody of a "messenger" if you:

        (a) Had no knowledge of any threat at the time the conveyance began; or

        (b) Had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

**g.**   **Vandalism**

Loss from damage to the "premises" or its exterior, or to any safe, vault, cash register, cash box, cash drawer or "other property" by vandalism or malicious mischief.

**h.**   **Voluntary Parting Of Title To Or Possession Of Property**

Loss resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

**4.**   Insuring Agreement A.6. does not cover:

    **a.**   **Credit Card Transactions**

Loss resulting from the use or purported use of credit, debit, charge, access, convenience, identification, stored-value or other cards or the information contained on such cards.

    **b.**   **Funds Transfer Fraud**

Loss resulting from a "fraudulent instruction" directing a financial institution to transfer, pay or deliver "funds" from your "transfer account".

    **c.**   **Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

        (1) An inventory computation; or

        (2) A profit and loss computation.

**5.**   Insuring Agreement A.7. does not cover:

    **COMPUTER FRAUD**

Loss resulting from the use of any computer to fraudulently cause a transfer of "money", "securities" or "other property".

**E. Conditions**

  **1.**   **Conditions Applicable To All Insuring Agreements**

    **a.**   **Additional Premises Or Employees**

If, while this policy is in force, you establish any additional "premises" or hire additional "employees", other than through consolidation or merger with, or purchase or acquisition of assets or liabilities of, another entity, such "premises" and "employees" shall automatically be covered under this policy. Notice to us of an increase in the number of "premises" or "employees" need not be given and no additional premium need be paid for the remainder of the Policy Period shown in the Declarations.

© ISO Properties, Inc., 2005



# Commercial Crime Policy

  b.  **Cancellation Of Policy**

     (1)  The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

     (2)  We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

        (a)  10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

        (b)  30 days before the effective date of cancellation if we cancel for any other reason.

     (3)  We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

     (4)  Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

     (5)  If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

     (6)  If notice is mailed, proof of mailing will be sufficient proof of notice.

  c.  **Changes**

     This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

  d.  **Concealment, Misrepresentation Or Fraud**

     This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other Insured, at any time, intentionally conceal or misrepresent a material fact concerning:

     (1)  This policy;

     (2)  The property covered under this policy;

     (3)  Your interest in the property covered under this policy; or

     (4)  A claim under this policy.

  e.  **Consolidation – Merger Or Acquisition**

     If you consolidate or merge with, or purchase or acquire the assets or liabilities of, another entity:

     (1)  You must give us written notice as soon as possible and obtain our written consent to extend the coverage provided by this policy to such consolidated or merged entity or such purchased or acquired assets or liabilities. We may condition our consent by requiring payment of an additional premium; but

     (2)  For the first 90 days after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities, the coverage provided by this policy shall apply to such consolidated or merged entity or such purchased or acquired assets or liabilities, provided that all "occurrences" causing or contributing to a loss involving such consolidation, merger or purchase or acquisition of assets or liabilities, must take place after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities.

© ISO Properties, Inc., 2005



**Liberty International Underwriters™**
Member of Liberty Mutual Group

# Commercial Crime Policy

**f.** **Cooperation**

You must cooperate with us in all matters pertaining to this policy as stated in its terms and conditions.

**g.** **Duties In The Event Of Loss**

After you "discover" a loss or a situation that may result in loss of or damage to "money", "securities" or "other property" you must:

(1) Notify us as soon as possible. If you have reason to believe that any loss (except for loss covered under Insuring Agreement A.1. or A.2.) involves a violation of law, you must also notify the local law enforcement authorities.

(2) Submit to examination under oath at our request and give us a signed statement of your answers.

(3) Produce for our examination all pertinent records.

(4) Give us a detailed, sworn proof of loss within 120 days.

(5) Cooperate with us in the investigation and settlement of any claim.

**h.** **Employee Benefit Plans**

(1) The "employee benefit plans" shown in the Declarations (hereafter referred to as Plan) are included as Insureds under Insuring Agreement A.1.

(2) If any Plan is insured jointly with any other entity under this policy, you or the Plan Administrator must select a Limit of Insurance for Insuring Agreement A.1. that is sufficient to provide a Limit of Insurance for each Plan that is at least equal to that required if each Plan were separately insured.

(3) With respect to loss sustained or "discovered" by any such Plan, Insuring Agreement A.1. is replaced by the following:

We will pay for loss of or damage to "funds" and "other property" resulting directly from fraudulent or dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

(4) If the first Named Insured is an entity other than a Plan, any payment we make for loss sustained by any Plan will be made to the Plan sustaining the loss.

(5) If two or more Plans are insured under this policy, any payment we make for loss:

(a) Sustained by two or more Plans; or

(b) Of commingled "funds" or "other property" of two or more Plans;

resulting directly from an "occurrence" will be made to each Plan sustaining loss in the proportion that the Limit of Insurance required for each Plan bears to the total Limit of Insurance of all Plans sustaining loss.

(6) The Deductible Amount applicable to Insuring Agreement A.1. does not apply to loss sustained by any Plan.

**i.** **Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the Policy Period shown in the Declarations and up to 3 years afterward.

© ISO Properties, Inc., 2005



**Liberty International Underwriters™**
Member of Liberty Mutual Group

# Commercial Crime Policy

  **j.**  **Extended Period To Discover Loss**

    We will pay for loss that you sustained prior to the effective date of cancellation of this policy, which is "discovered" by you:

    **(1)** No later than 1 year from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you, whether from us or another insurer, replacing in whole or in part the coverage afforded under this policy, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

    **(2)** No later than 1 year from the date of that cancellation with regard to any "employee benefit plans".

  **k.**  **Inspections And Surveys**

    **(1)** We have the right to:

      **(a)** Make inspections and surveys at any time;

      **(b)** Give you reports on the conditions we find; and

      **(c)** Recommend changes.

    **(2)** We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

      **(a)** Are safe or healthful; or

      **(b)** Comply with laws, regulations, codes or standards.

    **(3)** Paragraphs k.(1) and k.(2) apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

  **l.**  **Joint Insured**

    **(1)** If more than one Insured is named in the Declarations, the first Named Insured will act for itself and for every other Insured for all purposes of this policy. If the first Named Insured ceases to be covered, then the next Named Insured will become the first Named Insured.

    **(2)** If any Insured, or partner, "member" or officer of that Insured has knowledge of any information relevant to this policy, that knowledge is considered knowledge of every Insured.

    **(3)** An "employee" of any Insured is considered to be an "employee" of every Insured.

    **(4)** If this policy or any of its coverages is cancelled as to any Insured, loss sustained by that Insured is covered only if it is "discovered" by you:

      **(a)** No later than 1 year from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by that Insured, whether from us or another insurer, replacing in whole or in part the coverage afforded under this policy, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

      **(b)** No later than 1 year from the date of that cancellation with regard to any "employee benefit plans".

---

| 9 | 20 |
|---|---|

CR 00 23 05 06

© ISO Properties, Inc., 2005



# Commercial Crime Policy

    (5) We will not pay more for loss sustained by more than one Insured than all such loss had been sustained by one Insured.

    (6) Payment by us to the first Named Insured for loss sustained by any Ins benefit plan", shall fully release us on account of such loss.

**m. Legal Action Against Us**

You may not bring any legal action against us involving loss:

    (1) Unless you have complied with all the terms of this policy;

    (2) Until 90 days after you have filed proof of loss with us; and

    (3) Unless brought within 2 years from the date you "discovered" the loss.

If any limitation in this Condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**n. Liberalization**

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the Policy Period shown in the Declarations, the broadened coverage will immediately apply to this policy.

**o. Loss Sustained During Prior Insurance Issued By Us Or Any Affiliate**

    **(1) Loss Sustained Partly During This Policy And Partly During Prior Insurance**

If you "discover" loss during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place:

        (a) Partly during the Policy Period shown in the Declarations; and

        (b) Partly during the Policy Period(s) of any prior cancelled insurance that we or any affiliate issued to you or any predecessor in interest;

and this policy became effective at the time of cancellation of the prior insurance, we will first settle the amount of loss that you sustained during this Policy Period. We will then settle the remaining amount of loss that you sustained during the Policy Period(s) of the prior insurance.

    **(2) Loss Sustained Entirely During Prior Insurance**

If you "discover" loss during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place entirely during the Policy Period(s) of any prior cancelled insurance that we or any affiliate issued to you or any predecessor in interest, we will pay for the loss, provided:

        (a) This policy became effective at the time of cancellation of the prior insurance; and

        (b) The loss would have been covered under this policy had it been in effect at the time of the "occurrence".

We will first settle the amount of loss that you sustained during the most recent prior insurance. We will then settle any remaining amount of loss that you sustained during the Policy Period(s) of any other prior insurance.

    (3) In settling loss subject to this Condition:

CR 00 23 05 06

© ISO Properties, Inc., 2005



# Commercial Crime Policy

(a) The most we will pay for the entire loss is the highest single Limit of Insurance applicable during the period of loss, whether such limit was written under this policy or was written under the prior insurance issued by us.

(b) We will apply the applicable Deductible Amount shown in the Declarations to the amount of loss sustained under this policy. If no loss was sustained under this policy, we will apply the Deductible Amount shown in the Declarations to the amount of loss sustained under the most recent prior insurance.

If the Deductible Amount is larger than the amount of loss sustained under this policy, or the most recent prior insurance, we will apply the remaining Deductible Amount to the remaining amount of loss sustained during the prior insurance.

We will not apply any other Deductible Amount that may have been applicable to the loss.

(4) The following examples demonstrate how we will settle losses subject to this Condition E.1.o.:

**EXAMPLE NO. 1:**

The insured sustained a covered loss of $10,000 resulting directly from an "occurrence" taking place during the terms of Policy A and Policy B.

### POLICY A

The current policy. Written at a Limit of Insurance of $50,000 and a Deductible Amount of $5,000.

### POLICY B

Issued prior to Policy A. Written at a Limit of Insurance of $50,000 and a Deductible Amount of $5,000.

The amount of loss sustained under Policy A is $2,500 and under Policy B is $7,500.

The highest single Limit of Insurance applicable to this entire loss is $50,000 written under Policy A. The Policy A Deductible Amount of $5,000 applies. The loss is settled as follows:

1. The amount of loss sustained under Policy A ($2,500) is settled first. The amount we will pay is nil ($0.00) because the amount of loss is less than the Deductible Amount (i.e., $2,500 loss - $5,000 deductible = $0.00).

2. The remaining amount of loss sustained under Policy B ($7,500) is settled next. The amount recoverable is $5,000 after the remaining Deductible Amount from Policy A of $2,500 is applied to the loss (i.e., $7,500 loss - $2,500 deductible = $5,000).

The most we will pay for this loss is $5,000.

**EXAMPLE NO. 2:**

The insured sustained a covered loss of $250,000 resulting directly from an "occurrence" taking place during the terms of Policy A and Policy B.

### POLICY A

The current policy. Written at a Limit of Insurance of $125,000 and a Deductible Amount of $10,000.

### POLICY B

Issued prior to Policy A. Written at a Limit of Insurance of $150,000 and a Deductible Amount of $25,000.

**11 21**

CR 00 23 05 06

© ISO Properties, Inc., 2005



# Commercial Crime Policy

The amount of loss sustained under Policy A is $175,000 and under Policy B is $75,000.

The highest single Limit of Insurance applicable to this entire loss is $150,000 written under Policy B. The Policy A Deductible Amount of $10,000 applies. The loss is settled as follows:

1.  The amount of loss sustained under Policy A ($175,000) is settled first. The amount we will pay is the Policy A Limit of $125,000 because $175,000 loss - $10,000 deductible = $165,000 which is greater than the $125,000 policy limit.

2.  The remaining amount of loss sustained under Policy B ($75,000) is settled next. The amount we will pay is $25,000 (i.e., $150,000 Policy B limit - $125,000 paid under Policy A = $25,000).

The most we will pay for this loss is $150,000.

**EXAMPLE NO. 3:**

The insured sustained a covered loss of $2,000,000 resulting directly from an "occurrence" taking place during the terms of Policies A, B, C and D.

## POLICY A

The current policy. Written at a Limit of Insurance of $1,000,000 and a Deductible Amount of $100,000.

## POLICY B

Issued prior to Policy A. Written at a Limit of Insurance of $750,000 and a Deductible Amount of $75,000.

## POLICY C

Issued prior to Policy B. Written at a Limit of Insurance of $500,000 and a Deductible Amount of $50,000.

## POLICY D

Issued prior to Policy C. Written at a Limit of Insurance of $500,000 and a Deductible Amount of $50,000.

The amount of loss sustained under Policy A is $350,000, under Policy B is $250,000, under Policy C is $600,000 and under Policy D is $800,000.

The highest single Limit of Insurance applicable to this entire loss is $1,000,000 written under Policy A. The Policy A Deductible Amount of $100,000 applies. The loss is settled as follows:

1.  The amount of loss sustained under Policy A ($350,000) is settled first. The amount we will pay is $250,000 (i.e., $350,000 loss - $100,000 deductible = $250,000).

2.  The amount of loss sustained under Policy B ($250,000) is settled next. The amount we will pay is $250,000 (no deductible is applied).

3.  The amount of loss sustained under Policy C ($600,000) is settled next. The amount we will pay is $500,000, the policy limit (no deductible is applied).

4.  We will not make any further payment under Policy D as the maximum amount payable under the highest single Limit of Insurance applying to the loss of $1,000,000 under Policy A has been satisfied.

The most we will pay for this loss is $1,000,000.

© ISO Properties, Inc., 2005



**Liberty International Underwriters**
Member of Liberty Mutual Group

# Commercial Crime Policy

p.   **Loss Sustained During Prior Insurance Not Issued By Us Or Any Affiliate**

(1)   If you "discover" loss during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place during the Policy Period of any prior cancelled insurance that was issued to you or a predecessor in interest by another company, and the period of time to discover loss under that insurance had expired, we will pay for the loss under this policy, provided:

(a)   This policy became effective at the time of cancellation of the prior insurance; and

(b)   The loss would have been covered under this policy had it been in effect at the time of the "occurrence".

(2)   In settling loss subject to this Condition:

(a)   The most we will pay for the entire loss is the lesser of the Limits of Insurance applicable during the period of loss, whether such limit was written under this policy or was written under the prior cancelled insurance.

(b)   We will apply the applicable Deductible Amount shown in the Declarations to the amount of loss sustained under the prior cancelled insurance.

(3)   The insurance provided under this Condition is subject to the following:

(a)   If loss covered under this Condition is also partially covered under Condition E.1.o., the amount recoverable under this Condition is part of, not in addition to, the amount recoverable under Condition E.1.o.

(b)   For loss covered under this Condition that is not subject to Paragraph (3)(a), the amount recoverable under this Condition is part of, not in addition to, the Limit of Insurance applicable to the loss covered under this policy and is limited to the lesser of the amount recoverable under:

(i)   This policy as of its effective date; or

(ii)   The prior cancelled insurance had it remained in effect.

q.   **Other Insurance**

If other valid and collectible insurance is available to you for loss covered under this policy, our obligations are limited as follows:

(1)   **Primary Insurance**

When this policy is written as primary insurance, and:

(a)   You have other insurance subject to the same terms and conditions as this policy, we will pay our share of the covered loss. Our share is the proportion that the applicable Limit of Insurance shown in the Declarations bears to the total limit of all insurance covering the same loss.

(b)   You have other insurance covering the same loss other than that described in Paragraph (1)(a), we will only pay for the amount of loss that exceeds:

(i)   The Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not; or

(ii)   The Deductible Amount shown in the Declarations;

whichever is greater. Our payment for loss is subject to the terms and conditions of this policy.

(2)   **Excess Insurance**

CR 00 23 05 06

© ISO Properties, Inc., 2005



# Commercial Crime Policy

    (a) When this policy is written excess over other insurance, we will only pay for the amount of loss that exceeds the Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not. Our payment for loss is subject to the terms and conditions of this policy.

    (b) However, if loss covered under this policy is subject to a Deductible, we will reduce the Deductible Amount shown in the Declarations by the sum total of all such other insurance plus any Deductible Amount applicable to that other insurance.

**r. Ownership Of Property; Interests Covered**

The property covered under this policy is limited to property:

    (1) That you own or lease; or

    (2) That you hold for others whether or not you are legally liable for the loss of such property.

However, this policy is for your benefit only. It provides no rights or benefits to any other person or organization. Any claim for loss that is covered under this policy must be presented by you.

**s. Premiums**

The first Named Insured shown in the Declarations:

    (1) Is responsible for the payment of all premiums; and

    (2) Will be the payee for any return premiums we pay.

**t. Records**

You must keep records of all property covered under this policy so we can verify the amount of any loss.

**u. Recoveries**

    (1) Any recoveries, whether effected before or after any payment under this policy, whether made by us or you, shall be applied net of the expense of such recovery:

        (a) First, to you in satisfaction of your covered loss in excess of the amount paid under this policy;

        (b) Second, to us in satisfaction of amounts paid in settlement of your claim;

        (c) Third, to you in satisfaction of any Deductible Amount; and

        (d) Fourth, to you in satisfaction of any loss not covered under this policy.

    (2) Recoveries do not include any recovery:

        (a) From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

        (b) Of original "securities" after duplicates of them have been issued.

**v. Territory**

This policy covers loss that you sustain resulting directly from an "occurrence" taking place within the United States of America (including its territories and possessions), Puerto Rico and Canada.

**w. Transfer Of Your Rights And Duties Under This Policy**

    (1) Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

CR 00 23 05 06

© ISO Properties, Inc., 2005



# Commercial Crime Policy

(2) If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having temporary custody of your property will have your rights and duties but only with respect to that property.

x.   **Transfer Of Your Rights Of Recovery Against Others To Us**

You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

y.   **Valuation – Settlement**

(1) The value of any loss for purposes of coverage under this policy shall be determined as follows:

(a) Loss of "money" but only up to and including its face value. We will, at your option, pay for loss of "money" issued by any country other than the United States of America:

(i)   At face value in the "money" issued by that country; or

(ii)  In the United States of America dollar equivalent determined by the rate of exchange published in *The Wall Street Journal* on the day the loss was "discovered".

(b) Loss of "securities" but only up to and including their value at the close of business on the day the loss was "discovered". We may, at our option:

(i)   Pay the market value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "securities"; or

(ii)  Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities". However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

   i.   Market value of the "securities" at the close of business on the day the loss was "discovered"; or

   ii.  The Limit of Insurance applicable to the "securities".

(c) Loss of or damage to "other property" or loss from damage to the "premises" or its exterior for the replacement cost of the property without deduction for depreciation. However, we will not pay more than the least of the following:

(i)   The cost to replace the lost or damaged property with property of comparable material and quality and used for the same purpose;

(ii)  The amount you actually spend that is necessary to repair or replace the lost or damaged property; or

(iii) The Limit of Insurance applicable to the lost or damaged property.

With regard to Paragraphs y.(1)(c)(i) through y.(1)(c)(iii), we will not pay on a replacement cost basis for any loss or damage:

   i.   Until the lost or damaged property is actually repaired or replaced; and

   ii.  Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

CR 00 23 05 06

© ISO Properties, Inc., 2005



# Commercial Crime Policy

If the lost or damaged property is not repaired or replaced, we will pay on an actual cash value basis.

(2) We will, at your option, settle loss or damage to property other than "money":

    (a) In the "money" of the country in which the loss or damage occurred; or

    (b) In the United States of America dollar equivalent of the "money" of the country in which the loss or damage occurred determined by the rate of exchange published in *The Wall Street Journal* on the day the loss was "discovered".

(3) Any property that we pay for or replace becomes our property.

2. **Conditions Applicable To Insuring Agreement A.1.**

    a. **Termination As To Any Employee**

    This Insuring Agreement terminates as to any "employee":

    (1) As soon as:

        (a) You; or

        (b) Any of your partners, "members", "managers", officers, directors, or trustees not in collusion with the "employee";

    learn of "theft" or any other dishonest act committed by the "employee" whether before or after becoming employed by you.

    (2) On the date specified in a notice mailed to the first Named Insured. That date will be at least 30 days after the date of mailing.

    We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

    b. **Territory**

    We will pay for loss caused by any "employee" while temporarily outside the territory specified in the Territory Condition B.1.v. for a period of not more than 90 consecutive days.

3. **Conditions Applicable To Insuring Agreement A.2.**

    a. **Deductible Amount**

    The Deductible Amount does not apply to legal expenses paid under Insuring Agreement A.2.

    b. **Electronic And Mechanical Signatures**

    We will treat signatures that are produced or reproduced electronically, mechanically or by other means the same as handwritten signatures.

    c. **Proof Of Loss**

    You must include with your proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss.

    d. **Territory**

    We will cover loss that you sustain resulting directly from an "occurrence" taking place anywhere in the world. Territory Condition B.1.v. does not apply to Insuring Agreement A.2.

CR 00 23 05 06                                   © ISO Properties, Inc., 2005



**Liberty**
**International**
**Underwriters**
Member of Liberty Mutual Group

# Commercial Crime Policy

4. **Conditions Applicable To Insuring Agreements A.4. And A.5.**

   a. **Armored Motor Vehicle Companies**

   Under Insuring Agreement A.5., we will only pay for the amount of loss you cannot recover:

   (1) Under your contract with the armored motor vehicle company; and

   (2) From any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

   b. **Special Limit Of Insurance For Specified Property**

   We will only pay up to $5,000 for any one "occurrence" of loss of or damage to:

   (1) Precious metals, precious or semi-precious stones, pearls, furs, or completed or partially completed articles made of or containing such materials that constitute the principal value of such articles; or

   (2) Manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

5. **Conditions Applicable To Insuring Agreement A.6.**

   a. **Special Limit Of Insurance For Specified Property**

   We will only pay up to $5,000 for any one "occurrence" of loss of or damage to manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

   b. **Territory**

   We will cover loss that you sustain resulting directly from an "occurrence" taking place anywhere in the world. Territory Condition E.1.v. does not apply to Insuring Agreement A.6.

F. **Definitions**

1. "Banking premises" means the interior of that portion of any building occupied by a banking institution or similar safe depository.

2. "Counterfeit money" means an imitation of "money" that is intended to deceive and to be taken as genuine.

3. "Custodian" means you, or any of your partners or "members", or any "employee" while having care and custody of property inside the "premises", excluding any person while acting as a "watchperson" or janitor.

4. "Discover" or "discovered" means the time when you first become aware of facts which would cause a reasonable person to assume that a loss of a type covered by this policy has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

   "Discover" or "discovered" also means the time when you first receive notice of an actual or potential claim in which it is alleged that you are liable to a third party under circumstances which, if true, would constitute a loss under this policy.

5. "Employee":

   a. "Employee" means:

   (1) Any natural person:

   (a) While in your service and for the first 30 days immediately after termination of service, unless such termination is due to "theft" or any other dishonest act committed by the "employee";

| 17 | 20 |
|----|----|

© ISO Properties, Inc., 2005



## Commercial Crime Policy

    (b)  Who you compensate directly by salary, wages or commissions; and

    (c)  Who you have the right to direct and control while performing services for you;

  (2)  Any natural person who is furnished temporarily to you:

    (a)  To substitute for a permanent "employee" as defined in Paragraph a.(1), who is on leave; or

    (b)  To meet seasonal or short-term workload conditions;

    while that person is subject to your direction and control and performing services for you, excluding, however, any such person while having care and custody of property outside the "premises";

  (3)  Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph a.(2);

  (4)  Any natural person who is:

    (a)  A trustee, officer, employee, administrator or manager, except an administrator or manager who is an independent contractor, of any "employee benefit plan"; and

    (b)  A director or trustee of yours while that person is engaged in handling "funds" or "other property" of any "employee benefit plan";

  (5)  Any natural person who is a former "employee", partner, "member", "manager", director or trustee retained as a consultant while performing services for you;

  (6)  Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside the "premises";

  (7)  Any "employee" of an entity merged or consolidated with you prior to the effective date of this policy; or

  (8)  Any of your "managers", directors or trustees while:

    (a)  Performing acts within the scope of the usual duties of an "employee"; or

    (b)  Acting as a member of any committee duly elected or appointed by resolution of your board of directors or board of trustees to perform specific, as distinguished from general, directorial acts on your behalf.

b.  "Employee" does not mean any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character not specified in Paragraph 5.a.

6.  "Employee benefit plan" means any welfare or pension benefit plan shown in the Declarations that you sponsor and which is subject to the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto.

7.  "Forgery" means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

8.  "Fraudulent instruction" means:

a.  An electronic, telegraphic, cable, teletype, telefacsimile or telephone instruction which purports to have been transmitted by you, but which was in fact fraudulently transmitted by someone else without your knowledge or consent;



© ISO Properties, Inc., 2005


**Liberty International Underwriters.**
Member of Liberty Mutual Group

# Commercial Crime Policy

   **b.** A written instruction (other than those described in Insuring Agreement A.2.) issued by you, which was forged or altered by someone other than you without your knowledge or consent, or which purports to have been issued by you, but was in fact fraudulently issued without your knowledge or consent; or

   **c.** An electronic, telegraphic, cable, teletype, telefacsimile, telephone or written instruction initially received by you which purports to have been transmitted by an "employee" but which was in fact fraudulently transmitted by someone else without your or the "employee's" knowledge or consent.

**9.** "Funds" means "money" and "securities".

**10.** "Manager" means a person serving in a directorial capacity for a limited liability company.

**11.** "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

**12.** "Messenger" means you, or a relative of yours, or any of your partners or "members", or any "employee" while having care and custody of property outside the "premises".

**13.** "Money" means:

   **a.** Currency, coins and bank notes in current use and having a face value; and

   **b.** Travelers checks, register checks and money orders held for sale to the public.

**14.** "Occurrence" means:

   **a.** Under Insuring Agreement A.1.:

     **(1)** An individual act;

     **(2)** The combined total of all separate acts whether or not related; or

     **(3)** A series of acts whether or not related;

   committed by an "employee" acting alone or in collusion with other persons, during the Policy Period shown in the Declarations, except as provided under Condition E.1.o. or E.1.p.

   **b.** Under Insuring Agreement A.2.:

     **(1)** An individual act;

     **(2)** The combined total of all separate acts whether or not related; or

     **(3)** A series of acts whether or not related;

   committed by a person acting alone or in collusion with other persons, involving one or more instruments, during the Policy Period shown in the Declarations, except as provided under Condition E.1.o. or E.1.p.

   **c.** Under All Other Insuring Agreements:

     **(1)** An individual act or event;

     **(2)** The combined total of all separate acts or events whether or not related; or

     **(3)** A series of acts or events whether or not related;

   committed by a person acting alone or in collusion with other persons, or not committed by any person, during the Policy Period shown in the Declarations, except as provided under Condition E.1.o. or E.1.p.

© ISO Properties, Inc., 2005



# Commercial Crime Policy

15. "Other property" means any tangible property other than "money" and "securities" that has intrinsic value. "Other property" does not include computer programs, electronic data or any property specifically excluded under this policy.

16. "Premises" means the interior of that portion of any building you occupy in conducting your business.

17. "Robbery" means the unlawful taking of property from the care and custody of a person by one who has:

    a. Caused or threatened to cause that person bodily harm; or

    b. Committed an obviously unlawful act witnessed by that person.

18. "Safe burglary" means the unlawful taking of:

    a. Property from within a locked safe or vault by a person unlawfully entering the safe or vault as evidenced by marks of forcible entry upon its exterior; or

    b. A safe or vault from inside the "premises".

19. "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or property and includes:

    a. Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

    b. Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

    but does not include "money".

20. "Theft" means the unlawful taking of property to the deprivation of the Insured.

21. "Transfer account" means an account maintained by you at a financial institution from which you can initiate the transfer, payment or delivery of "funds":

    a. By means of electronic, telegraphic, cable, teletype, telefacsimile or telephone instructions communicated directly through an electronic funds transfer system; or

    b. By means of written instructions (other than those described in Insuring Agreement A.2.) establishing the conditions under which such transfers are to be initiated by such financial institution through an electronic funds transfer system.

22. "Watchperson" means any person you retain specifically to have care and custody of property inside the "premises" and who has no other duties.

In witness whereof, the company has caused this policy to be signed by its President and its Secretary at Boston, Massachusetts, and countersigned by a duly authorized representative of the company.

SECRETARY                    PRESIDENT

© ISO Properties, Inc., 2005



## Commercial Crime Policy

### LIBERTY MUTUAL INSURANCE COMPANY
(A Mutual Insurance Company, hereinafter called the Company)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

NOTICE ENDORSEMENT

Notice of Membership in Liberty Mutual Holding Company Inc.

While this policy is in effect, the named insured first named in the Declarations is a member of Liberty Mutual Holding Company Inc. and is entitled to vote either in person or by proxy at any and all meetings of the members of said company. The Annual Meeting of Liberty Mutual Holding Company Inc. is in Boston, Massachusetts, on the second Wednesday in April each year at ten o'clock in the morning.

The named insured first named in the Declarations shall participate in the distribution of any dividends declared by us for this Policy. The amount of such Named Insured's participation is determined by the decision of Liberty Mutual Holding Company Board of Directors in compliance with any laws that apply.

SECRETARY                    PRESIDENT

1   1



## Commercial Crime Policy

### LIBERTY MUTUAL INSURANCE COMPANY
(A Mutual Insurance Company, hereinafter called the Company)

### NOTICE OF MEMBERSHIP IN LIBERTY MUTUAL HOLDING COMPANY INC.
### AND NOTICE OF ANNUAL MEETING

Your policy includes a statement regarding membership rights in Liberty Mutual Holding Company Inc. Liberty Mutual Insurance Company is a Massachusetts stock insurance company subsidiary of Liberty Mutual Holding Company Inc., a Massachusetts mutual holding company. Insurance is provided by Liberty Mutual Insurance Company. The named insured first named in the declarations is a member of Liberty Mutual Holding Company Inc.

As a member of Liberty Mutual Holding Company Inc., the named insured first named is entitled, among other things, to vote either in person or by proxy at the annual meeting or special meetings of said company. The Annual Meeting of Liberty Mutual Holding Company Inc. is at its offices located at 175 Berkeley Street, Boston, Massachusetts, on the second Wednesday in April each year at ten o'clock in the morning.

Members of Liberty Mutual Holding Company Inc. may request a copy of the company's annual financial statements, which are posted on Liberty Mutual's website at www.libertymutual.com, by writing to Liberty Mutual Holding Company Inc., 175 Berkeley Street, Boston, Massachusetts, 02117, Attention: Corporate Secretary.

1   1

# Commercial Crime Policy



**Liberty International Underwriters**™
Member of Liberty Mutual Group

## LIBERTY MUTUAL INSURANCE COMPANY
(A Mutual Insurance Company, hereinafter called the Company)

### Endorsement NO. 1

| | |
|---|---|
| **Effective Date:** | August 15, 2007 |
| **Policy Number:** | FI4N587509001 |
| **Issued To:** | NAMCO Financial Exchange Corp. |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### CALIFORNIA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME POLICY
EMPLOYEE THEFT AND FORGERY POLICY
GOVERNMENT CRIME POLICY
KIDNAP/RANSOM AND EXTORTION POLICY

Paragraphs A. and B. below apply only to the Commercial Crime Policy and Government Crime Policy.

A. Paragraphs (2) and (3) of the Cancellation Of Policy Condition are replaced by the following:

(2) **All Policies In Effect For 60 Days Or Less**

If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured at the mailing address shown in the policy and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

(a) 10 days before the effective date of cancellation if we cancel for:

(i) Nonpayment of premium; or

(ii) Discovery of fraud by:

i. Any insured or his or her representative in obtaining this policy; or

ii. You or your representative in pursuing a claim under this policy.

(b) 30 days before the effective date of cancellation if we cancel for any other reason.

(3) **All Policies In Effect For More Than 60 Days**

(a) If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

(i) Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

(ii) Discovery of fraud or material misrepresentation by:

| 1 | 3 |
|---|---|

CR 02 49 11 04

© ISO Properties, Inc., 2004

## Commercial Crime Policy



Liberty
**International
Underwriters**™
Member of Liberty Mutual Group

    **i.** Any insured or his or her representative in obtaining this policy; or

    **ii.** You or your representative in pursuing a claim under this policy.

  **(iii)** A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

  **(iv)** Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

  **(v)** Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

  **(vi)** A determination by the Commissioner of Insurance that the:

    **i.** Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

    **ii.** Continuation of the policy coverage would:

      **(i)** Place us in violation of California law or the laws of the state where we are domiciled; or

      **(ii)** Threaten our solvency.

    **(vii)** A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

 **(b)** We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

  **(i)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium or discovery of fraud; or

  **(ii)** 30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph (3)(a).

**B.** The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

**1.** Subject to the provisions of Paragraph B.2. below, if we elect not to renew this policy, we will mail or deliver written notice stating the reason for nonrenewal to the first Named Insured shown in the Declarations and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

  We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

**2.** We are not required to send notice of nonrenewal in the following situations:

  **a.** If the transfer or renewal of a policy, without any changes in terms, conditions, or rates, is between us and a member of our insurance group.

  **b.** If the policy has been extended for 90 days or less, provided that notice has been given in accordance with Paragraph B.1.

**2**   **3**

© ISO Properties, Inc., 2004



## Commercial Crime Policy

     c.   If you have obtained replacement coverage, or if the first Named Insured has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

     d.   If the policy is for a period of no more than 60 days and you are notified at the time of issuance that it will not be renewed.

     e.   If the first Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

     f.   If we have made a written offer to the first Named Insured, in accordance with the time frames shown in Paragraph B.1., to renew the policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

**C.** Under the Commercial Crime Policy, Government Crime Policy and Employee Theft And Forgery Policy, the following is added to the Valuation – Settlement Condition:

Actual cash value is calculated as the amount it would cost to repair or replace covered property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. Actual cash value applies to valuation of covered property regardless of whether that property has sustained partial or total loss or damage.

The actual cash value of the lost or damaged property may be significantly less than its replacement cost.

CR 02 49 11 04

© ISO Properties, Inc., 2004



## Commercial Crime Policy

**Liberty International Underwriters**
Member of Liberty Mutual Group

### LIBERTY MUTUAL INSURANCE COMPANY
(A Mutual Insurance Company, hereinafter called the Company)

#### Endorsement NO. 2

| | |
|---|---|
| **Effective Date:** | August 15, 2007 |
| **Policy Number:** | FI4N587509001 |
| **Issued To:** | NAMCO Financial Exchange Corp. |

#### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

#### LOSS PAYABLE

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME COVERAGE FORM
COMMERCIAL CRIME POLICY
EMPLOYEE THEFT AND FORGERY POLICY
GOVERNMENT CRIME COVERAGE FORM
GOVERNMENT CRIME POLICY

**A.  Schedule\***

| Name And Address Of Loss Payee |
|---|
| Client/Exchangers up to and including the amount that each has deposited with you in trust, to whom you provide Section 1031 exchange services while acting as a qualified intermediary in a tax-deferred exchange of property intended to qualify under Internal Revenue Code 1031. |
| \* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations. |

**B.  Provisions**

1.  You agree that any loss payable under this insurance shall be paid to the Loss Payee shown in the Schedule as its interests may appear and any such payment shall constitute payment to you. We agree that we will make all such payments to the Loss Payee, and we will not make any payment solely to you unless we receive a request in writing from the Loss Payee to make such payment to you.

2.  This insurance is for your benefit only. It provides no rights or benefits to any other person or organization including the Loss Payee, other than payment of loss as set forth in this endorsement.

    Any claim for loss that is covered under this insurance must be presented by you.

3.  Our liability under this insurance as extended by this endorsement shall not be cumulative.

| 1 | 1 |
|---|---|

CR 20 14 03 00

FI4N587509001 IN 2007 000 9_25_2007

© ISO Properties, Inc., 1998

## Commercial Crime Policy



**Liberty International Underwriters**
Member of Liberty Mutual Group

## LIBERTY MUTUAL INSURANCE COMPANY
(A Mutual Insurance Company, hereinafter called the Company)

### Endorsement NO. 3

| | |
|---|---|
| Effective Date: | August 15, 2007 |
| Policy Number: | FI4N587509001 |
| Issued To: | NAMCO Financial Exchange Corp. |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### FEDERATION OF EXCHANGE ACCOMMODATORS FIDELITY BOND AMEND CONSOLIDATION-MERGER OR ACQUISITION

Section E. Conditions, Conditions Applicable to all Insuring Agreements, sub-section e. Consolidation -- Merger or Acquisition, is deleted and replaced with the following:

e.   **Consolidation -- Merger Or Acquisition**

If you consolidate or merge with, or purchase or acquire the assets or liabilities of, another entity:

(1)   You must give us written notice and obtain our written consent to extend the coverage provided by this policy to such consolidated or merged entity or such purchased or acquired assets or liabilities. We may condition our consent by requiring payment of an additional premium; but

(2)   For the first 90 days after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities, the coverage provided by this policy shall apply to such consolidated or merged entity or such purchased or acquired assets or liabilities, provided that all "occurrences" causing or contributing to a loss involving such consolidation, merger or purchase or acquisition of assets or liabilities, must take place after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities.

(3)   In the event of a change of control which will represent more than 50% of the ownership interest in the Named Insured, you must give us written notice anytime prior to or within thirty (30) days of the change of control. Upon completion of the transaction, coverage will be suspended until such time as we have completed an underwriting review. If we are satisfied, the coverage suspension will be lifted retroactively to the date it was first suspended. If we are not satisfied, the policy will terminate effective as of the initial date the coverage was suspended.

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

1   1



# Commercial Crime Policy

## LIBERTY MUTUAL INSURANCE COMPANY
### (A Mutual Insurance Company, hereinafter called the Company)

### Endorsement NO. 4

| | |
|---|---|
| **Effective Date:** | August 15, 2007 |
| **Policy Number:** | FI4N587509001 |
| **Issued To:** | NAMCO Financial Exchange Corp. |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### FEDERATION OF EXCHANGE ACCOMMODATORS – FIDELITY BOND
### CONDITIONS PRECEDENT TO LIABILITY

The following additional exclusion is added to Section D. EXCLUSIONS of the attached policy "Additional Exclusions applicable to Insuring Agreements "Employee Theft" and "Clients Property":

6.  As respect to Insuring Agreement 1 and Clients' Property, there will be no "employee theft" coverage involving a transaction intended to qualify as a tax-deferred exchange of property under Internal Revenue Code 1031 unless the following internal control requirements were complied with at the time the "employee theft" occurred:

    a.  A written contract was in effect between you and each exchanger/client stipulating the manner in which relinquished "money", "securities", and "other property" will be held and subsequently released by you for use in acquiring replacement property.

    b.  The relinquished "money", "securities" and "other property" of each related exchange transaction were held in a financial institution account segregated from your operating funds.

    c.  Each related exchange transaction was identified by a unique file number or similar identifier.

    d.  Countersignature was required to authorize release of all "money", "securities" and "other property" or a monthly reconciliation of all accounts involving exchange transaction proceeds was performed within two weeks of receipt of the account statement. Additionally, reconciliations were performed by an "employee" not authorized to deposit, withdraw or transfer funds from the account, or were reviewed by an outside bookkeeper or an outside CPA.

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

| 1 |
|---|



## Commercial Crime Policy

**Liberty**
**International**
**Underwriters**™
Member of Liberty Mutual Group

## LIBERTY MUTUAL INSURANCE COMPANY
(A Mutual Insurance Company, hereinafter called the Company)

### Endorsement NO. 5

| | |
|---|---|
| **Effective Date:** | August 15, 2007 |
| **Policy Number:** | FI4N587509001 |
| **Issued To:** | NAMCO Financial Exchange Corp. |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### FEDERATION OF EXCHANGE ACCOMMODATORS – FIDELITY BOND CLIENTS' PROPERTY INSURING AGREEMENT

**A.** The following insuring agreement is added to Section A. Insuring Agreements:
**Clients' Property**

We will pay for loss of or damage to "money", "securities" and "other property" sustained by "your" "client" resulting directly from "theft" committed by an identified "employee", acting alone or in collusion with other persons and/or "you", any of "your" partners or "members" whether acting alone or in collusion with others.

**B.** For the purposes of this Insuring Agreement, Clients' Property, under section D. Exclusions:

1. Exclusion a. Acts Committed By You, Your Partners Or Your Members is hereby deleted in its entirety.

Notwithstanding, this Exclusion is applicable to all other Insuring Agreements in the policy.

**C.** Under Section E. Conditions:
1. Paragraph (1) of the Duties in the Event of Loss Condition is replaced by the following:

Notify us as soon as possible.

2. The Ownership of Property; Interests Covered Condition is replaced by the following:

The property covered under this Insuring Agreement is:

a. Limited to property which is held in a financial institution account in a transaction involving "you" as a qualified intermediary for a tax-deferred exchange of property intended to qualify under Internal Revenue Code 1031.

However, this insurance is for "your" benefit only. It provides no rights or benefits to any other person or organization, including your "client". Any claim for loss that is covered under this Insuring Agreement must be presented by "you".

**D.** Under Section F. Definitions:

1. For the purposes of this Insuring Agreement, Clients' Property, the following definitions are either added or replaced by the following:

a. "Client" means any party for whom you perform services under a written contract.

2

FI4N587509001 IN 2007 000 9_25_2007

## Commercial Crime Policy



**Liberty**
**International**
**Underwriters**™
Member of Liberty Mutual Group

b.   "Theft" means the unlawful taking of "money", "securities" or "other property" to the deprivation of your "client".

c.   "You" and "your" refers to the Named Insured shown in the Declarations and/or any natural person who is an owner of the Named Insured.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**

2   2



# Commercial Crime Policy

## LIBERTY MUTUAL INSURANCE COMPANY

(A Mutual Insurance Company, hereinafter called the Company)

### Endorsement NO. 6

| | |
|---|---|
| **Effective Date:** | August 15, 2007 |
| **Policy Number:** | FI4N587509001 |
| **Issued To:** | NAMCO Financial Exchange Corp. |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### FEDERATION OF EXCHANGE ACCOMMODATORS – FIDELITY BOND OMNIBUS NAMED INSURED SCHEDULE

**PROVISIONS**

1. The Named Insured Section on the Declarations Page is amended to read:

   **NAMCO Financial Exchange Corp.**

   and any entity acting as a qualified intermediary in a tax-deferred exchange of property intended to qualify under Internal Revenue Code 1031 in which you own more than 50% of the ownership interest, any entity acting as a qualified intermediary in a tax-deferred exchange of property intended to qualify under Internal Revenue Code 1031 you manage pursuant to a written agreement including a partnership agreement, and any entity acting as a qualified intermediary in a tax-deferred exchange of property intended to qualify under Internal Revenue Code 1031 in which you own 50% or less of the ownership interest, up to your ownership interest in that entity.

### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

FI4N587509001 IN 2007 000 9_25_2007

# EXHIBIT 2




CRIME INSURANCE EXCESS POLICY

**ZURICH**

DECLARATIONS

Insurance is provided by the following company:

# Zurich American Insurance Company

Policy Number:  FID 9158508 00

Item 1. Parent Company and Address:   NAMCO FINANCIAL EXCHANGE CORP.
1212 WILSHIRE BOULEVARD, SUITE 1400
LOS ANGELES, CA 90025

Item 2. Limit of Liability:   $5,000,000

Item 3. Underlying Insurance:

   (A) Primary Policy:
      Insurer:   LIBERTY MUTUAL INSURANCE COMPANY
      Policy Number:   F14N587509001
      Limit of Liability:   $5,000,000

   (B) Other Policy(ies):
      Insurer:
      Policy Number:
      Limit of Liability:

Item 4. Policy Period:   From 12:01 A.M. on  08/15/2007
To 12:01 A.M. on  08/15/2008
Local time at the address shown in Item 1.

Item 5. Endorsement(s) Effective at Inception:  1

Item 6.  Cancellation of Prior Insurance: By acceptance of this policy, you give us notice cancelling prior policy number
    the cancellation to be effective at time this policy becomes effective.

In witness whereof, the Underwriter issuing this policy has caused this policy to be signed by its authorized officers, but it shall not
be valid unless also signed by the duly authorized representative of the Underwriter.

ZURICH AMERICAN INSURANCE COMPANY

Authorized Representative
Donna M. Mazzella

10-22-07
Date

President
Zurich America Insurance Company

Corporate Secretary
Zurich America Insurance Company

U-CR-D-200-A (CW) (9/93)



**ZURICH**

**CRIME INSURANCE EXCESS POLICY**

consideration of payment of the premium and in reliance upon all statements made and information furnished to the Zurich Insurance Company ( herein called the Underwriter ) and to the Insurers of the Underlying Insurance, including the statements made in the application and its attachments and any material submitted therewith, all of which are made a part hereof, and subject to the Declarations and the limitations, conditions, provisions, and other terms of this policy (including any endorsements hereto), the Underwriter, the Parent Company and the Insureds agree as follows:

## I. INSURING CLAUSE

The Underwriter shall provide the Insureds with insurance coverage during the Policy Period excess of the Underlying Insurance. Coverage under this policy shall attach only after all of the Limit(s) of Liability of Underlying Insurance has been exhausted by the actual payment of loss(es). Except as otherwise provided herein, coverage under this policy shall then apply in conformance with and subject to the warranties, limitations, conditions, provisions, and other terms of the Primary Policy as in effect the first day of the Policy Period, together with the warranties and limitations of any other Underlying Insurance. In no event shall coverage under this policy be broader than coverage under any Underlying Insurance.

## II. DEFINITIONS

When used in this policy:

A. **Insured**, either in the singular or plural, means those organizations designated as insureds under the Primary Policy.

B. **Parent Company** means the organization designated in Item 1 of the Declarations of this policy.

C. **Policy Period** means the period of time specified in Item 4 of the Declarations of this policy, subject to prior termination in accordance with Subsection III.H. of this policy.

D. **Primary Policy** means the policy designated in Item 3(A) of the Declarations of this policy.

**Underlying Insurance** means all of those policy(ies) designated in Item 3 of the Declarations of this policy.

## III. GENERAL CONDITIONS AND LIMITATIONS

### A.   MAINTENANCE OF UNDERLYING INSURANCE

The Limit(s) of Liability of the Underlying Insurance scheduled in Item 3 of the Declarations of this policy shall be maintained during the Policy Period in full effect with solvent insurers except for any reduction or exhaustion of the aggregate Limit(s) of Liability available under the Underlying Insurance solely by reason of actual payment of loss(es) thereunder. Failure to comply with the foregoing shall not invalidate this policy but the Underwriter shall not be liable to a greater extent than if this condition had been complied with. To the extent that any Underlying Insurance is not so maintained, then the Insureds shall be deemed to be self-insured for the amount of the Limit(s) of Liability of any such Underlying Insurance.

In the event of a change to any Underlying Insurance by rewrite, endorsement or otherwise, coverage under this policy shall become subject to such change only if and to the extent the Underwriter's consent to such change is endorsed in writing to this policy. If such consent is not endorsed in writing on to this policy, the Underwriter shall not be liable to a greater extent than it would have been in the absence of such change to the Underlying Insurance.

B.   REDUCTION/EXHAUSTION OF UNDERLYING LIMITS

In the event and only in the event of the reduction or exhaustion of the Limit(s) of Liability of the Underlying Insurance solely as the result of actual payment of loss covered thereunder, this policy shall: (i) in the event of reduction, pay excess of the reduced Limit(s) of Liability of the Underlying Insurance, and (ii) in the event of exhaustion, continue in force as primary insurance excess of the retention applicable in the Primary Policy, which retention shall be applied to any subsequent loss as specified in the Primary Policy.

Notwithstanding any of the terms of this policy which might be construed otherwise, this policy shall drop down only in the event of reduction or exhaustion of the Underlying Insurance by the actual payment of loss and shall not drop down for any other reason including, but not limited to, uncollectibility (in whole or in part) of any Underlying Insurance. The risk of uncollectibility of such Underlying Insurance (in whole or in part) whether because of financial impairment or insolvency of the underlying insurer or for any other reason, is expressly retained by the Insureds and is not in any way or under any circumstances insured or assumed by the Underwriter.

C.   LIMIT OF LIABILITY

The amount set forth in Item 2 of the Declarations is the maximum liability of the Underwriter under this policy for any one loss with respect to all loss covered by the Underlying Insurance in effect during the Policy Period.

D.   INVESTIGATION

The Underwriter may, at its sole discretion, elect to participate in the investigation of any matter covered by this policy even if the Underlying Insurance has not been exhausted and the Insureds shall give the Underwriter such information and cooperation as it may reasonably require.

E.   SUBROGATION

In that this policy is "Excess Coverage," the Insureds' right of recovery against any person or entity may not be exclusively subrogated to the Underwriter. Therefore, in the event of any payment under this policy, the Underwriter will act in concert with all other interests (including the Insureds') concerned in the exercise of such rights of recovery. The apportioning of amounts which may be so recovered shall follow the principle that any interests (including the Insureds') that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them; the Underwriter is then to be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly the interests (including the Insureds') of which this coverage is in excess are entitled to claim the residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the interests (including the Insureds') concerned, in the ratio of their respective recoveries as finally settled.

F.   NOTICE AND PROOF OF LOSS

The Insureds shall, as a condition precedent to exercising their rights under this policy, give to the Underwriter written notice of loss or of an occurrence which may become a loss and proof of loss in the same manner required by the terms and conditions of the Primary Policy.

The Underwriter shall be given notice in writing as soon as practicable in the event of (a) the termination of any Underlying Insurance, (b) any additional or return premiums charged or allowed in connection with any Underlying Insurance, or (c) any change to the Underlying Insurance by rewrite, endorsement or otherwise. Written notice to the Underwriter shall be given to Zurich Insurance Company, One Liberty Plaza, 53rd Floor, New York, New York 10006, Attention: Executive Assurance Department.

G.   ALTERATION

No change in, modification of, or assignment of interest under this policy shall be effective except when made by a written endorsement to this policy which is signed by an authorized representative of the Underwriter.

H.    POLICY TERMINATION

This policy shall terminate at the earliest of the following times:

1.  the effective date of termination specified in written prior notice by the **Parent Company** to the Underwriter,

2.  ninety (90) days after receipt by the **Parent Company** of a written notice of termination from the Underwriter.

3.  upon expiration of the **Policy Period** as set forth in Item 4 of the Declarations,

4.  ten (10) days after receipt by the **Parent Company** of a written notice of termination from the Underwriter for failure to pay a premium when due,

5.  at such time as may be agreed upon by the Underwriter and the **Parent Company.**

The Underwriter shall refund the unearned premium computed at customary short rates if the policy is terminated by the **Parent Company.** Under any other circumstances the refund shall be computed pro rata.

Zurich American Insurance Company ("Insurer")



# ZURICH

## CRIME INSURANCE EXCESS POLICY

### RELIANCE UPON OTHER CARRIER'S APPLICATION

Named Insured: NAMCO FINANCIAL EXCHANGE CORP.

To be attached to and form
a part of Policy Number:  FID  91585808 00

Endorsement Number:  1
Effective:  08/15/2007

It is agreed that:

In granting coverage under this policy, it is agreed that the Underwriter has relied upon the statements and representations contained in the below referenced application (including materials submitted thereto and, if such application is a renewal application, all such previous policy applications, and their attachments and materials, for which this policy is a renewal or succeeds in time) as being accurate and complete. It is further understood and agreed that the Parent Company and the Insureds warrant and represent to the Underwriter that the statements and representations made in such application were accurate on the date such representations and statement were so given and that in connection therewith the Insureds hereby reaffirm each and every statement made in the FIDELITY BOND APPLICATION, signed by Hamid Taba, as accurate as of 07/02/2007 as if it was made to the Underwriter on such date. All such statements and representations shall be deemed to be material to the risk assumed by the Underwriter, are the basis of this policy and are to be considered as incorporated into this policy.

<u>TYPE OF POLICY APPLICATION</u>

<u>DATE SIGNED</u>

Fidelity Bond Application

07/02/2007

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.



Zurich American Insurance Company ("Insurer")



**ZURICH**

## CRIME INSURANCE EXCESS POLICY

### RELIANCE UPON OTHER CARRIER'S APPLICATION

PARENT COMPANY: NAMCO FINANCIAL EXCHANGE CORP.     Endorsement Number:1

To be attached to and form
a part of Policy Number: FID 9158508 00     Effective: 8/15/2007

It is agreed that:

In granting coverage under this policy, it is agreed that the Underwriter has relied upon the statements and representations contained in the below referenced application (including materials submitted thereto and, if such application is a renewal application, all such previous policy applications, and their attachments and materials, for which this policy is a renewal or succeeds in time) as being accurate and complete. It is further understood and agreed that the Parent Company and the Insureds warrant and represent to the Underwriter that the statements and representations made in such application were accurate on the date such representations and statement were so given and that in connection therewith the Insureds hereby reaffirm each and every statement made in the FIDELITY BOND APPLICATION, signed by Hamid Taba, as accurate as of 07/02/2007 as if it was made to the Underwriter on such date. All such statements and representations shall be deemed to be material to the risk assumed by the Underwriter, are the basis of this policy and are to be considered as incorporated into this policy.

TYPE OF POLICY APPLICATION          DATE SIGNED

Fidelity Bond Application          07/02/2007

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

# Disclosure Statement



**ZURICH**

NAMCO Financial Exchange Corp.
Crime Policy #: FID 9158508 00

### ZURICH AGENT/BROKER COMPENSATION DISCLOSURE

Dear Policyholder:

On behalf of Zurich, we are glad you have chosen us as your insurance company. We look forward to meeting your insurance needs and want you to understand clearly our business relationship with the agent or broker you chose to represent your company's interests in the placement of insurance coverages.

As is the case with many insurance companies in the United States, Zurich distributes many of its insurance products through agents or brokers. This means that your agent or broker is not employed by Zurich and, in fact, may represent many insurance companies. Because we do not employ your agent or broker, the way they are compensated may vary. We recommend you discuss these arrangements with your agent or broker.

For an explanation of the nature and range of compensation Zurich may pay to your agent or broker in connection with your business, please go to http://www.zurichna.com. Click on the information link located on the Agent/Broker Compensation Disclosure section. Where appropriate, insert the Access Code provided below, and you will be able to view this information. Alternatively, you may call (877) 347-6465 to obtain this type of information.

Thank you.

Access Code: 0112952711

# EXHIBIT 3



## SECUREXCESS DECLARATIONS

**SUBJECT TO THE PROVISIONS OF THE UNDERLYING INSURANCE, THIS POLICY MAY ONLY APPLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD. THE LIMITS OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENT AMOUNTS SHALL BE REDUCED AND MAY BE TOTALLY EXHAUSTED BY PAYMENT OF DEFENSE COSTS. PLEASE READ THIS POLICY CAREFULLY.**

| COMPANY: Axis Insurance Company | POLICY NUMBER:  MNN 734622/01/2007 |
|---|---|

| Item 1.  Policyholder:<br>NAMCO Financial Exchange Corp.<br>12121 Wilshire Boulevard<br>Los Angeles, CA 90025 | Item 2.  Policy Period:<br>a.  Inception Date:  August 15, 2007<br>b.  Expiration Date:  August 15, 2008<br>Both dates at 12:01 a.m. at the<br>address listed in Item 1. |
|---|---|

Item 3.   Limits of Liability (inclusive of defense costs):
a.  Each Claim                                                                            $ 5,000,000
b.  Maximum aggregate Limit of Liability for all Claim(s)
    during the Policy Period of all Insurance Products       $ 5,000,000

Item 4.  Underlying Insurance and Insurance Products:  See Endorsement No. 1

Item 5.  Endorsements Attached at Inception: SE1000, MU1032, SE0501, MU7046

Item 6.  Notices to Insurer:

| Notice of Claim(s) To Be Sent To:<br>Axis Financial Insurance Solutions Claims<br>Address: Connell Corporate Park<br>300 Connell Drive<br>P.O. Box 357<br>Berkeley Heights, NJ 07922-0357 | All Other Notices To Be Sent To:<br>Axis Financial Insurance Solutions<br>Address: Connell Corporate Park<br>300 Connell Drive<br>P.O. Box 357<br>Berkeley Heights, NJ 07922-0357 |
|---|---|

| Item 7.  Pending or Prior Claim Date: N/A | Item 8.  Terrorism Coverage Premium: N/A |
|---|---|

The Insurer has caused this Policy to be signed and attested by its authorized officers, but it shall not be valid unless also signed by another duly authorized representative of the Insurer.

_____                          JAN 2 2 2008
Authorized Representative                                            Date

Fred Marshall Turner II
**Fred Marshall Turner II**
**President**

**Andrew Weissert**
**Secretary**

# SECUREXCESS POLICY

In consideration of the payment of the premium, and in reliance on all statements made in the application(s) for this Policy and the **Underlying Insurance** and all information provided to the **Insurer** and any or all of the **Underlying Insurers**, and subject to the provisions of this Policy, the **Insurer** and the **Policyholder**, on its own behalf and on behalf of all **Insureds**, agree as follows.

## I.  INSURING AGREEMENT

With respect to each **Insurance Product**, the **Insurer** shall provide the **Insureds** with insurance during the **Policy Period** excess of all applicable **Underlying Insurance**. Except as specifically set forth in the provisions of this Policy, the insurance afforded hereunder shall apply in conformance with the provisions of the applicable **Primary Policy** and, to the extent coverage is further limited or restricted thereby, to any other applicable **Underlying Insurance**.  In no event shall this Policy grant broader coverage than would be provided by the most restrictive policy constituting part of the applicable **Underlying Insurance**.

The insurance afforded under this Policy shall apply only after all applicable **Underlying Insurance** with respect to an **Insurance Product** has been exhausted by actual payment under such **Underlying Insurance**, and shall only pay excess of any retention or deductible amounts provided in the **Primary Policy** and other exhausted **Underlying Insurance**.

## II.  DEFINITIONS

**A.**  **Claim(s)** means the event(s) which take place during the **Policy Period** and which trigger(s) coverage under the insuring agreement(s) of the **Underlying Insurance**.

**B.**  **Insurance Product** means each separate type of insurance identified as an "**Insurance Product**" in Endorsement No. 1 to this Policy.

**C.**  **Insured(s)** means any person(s) or entity(ies) that may be entitled to coverage under the **Primary Policy** at its inception.

**D.**  **Insurer** means the company identified as "**Insurer**" in the Declarations.

**E.**  **Policy Period** means the period from the inception date to the expiration date of this Policy stated in Item 2. in the Declarations, or its earlier cancellation or termination date, if any.

**F.**  **Policyholder** means the person(s) or entity(ies) identified in Item 1. in the Declarations.

**G.**  **Primary Policy** means the specific policy identified as the "**Primary Policy**" under the applicable **Insurance Product** listed in Endorsement No. 1 to this Policy.

**H.**  **Sublimit** means any **Underlying Limits** which:

  1.   applies only to a particular grant of coverage under such **Underlying Insurance**; and
  2.   reduces and is part of the otherwise applicable limits of liability of such **Underlying Insurance** set forth in Item 4 of the Declarations.

**I.**  **Underlying Insurance** means each insurance policy which constitutes all or part of an **Insurance Product**, as scheduled in Endorsement No. 1 to this Policy.

**J.**  **Underlying Insurers** means any or all of the companies who issued the policies of **Underlying Insurance**.

**K.**  **Underlying Limits** means, with respect to each **Insurance Product**, an amount equal to the aggregate of all limits of liability for each **Insurance Product** stated in Endorsement No. 1 to this Policy, plus the



uninsured retention or deductible, if any, applicable to the **Primary Policy** under such **Insurance Product**.

### III. CONDITIONS OF COVERAGE

A. For purposes of determining when Insurance under this Policy shall attach and the limitations under which such Insurance shall apply:

1. All of the **Underlying Insurance** in effect as of the inception date of the **Policy Period** shall be maintained in full effect with solvent insurers throughout the **Policy Period** except for any reduction or exhaustion of the **Underlying Limits** as provided in Section IV. below; and

2. All **Insureds** shall comply fully with all of the provisions of this Policy.

B. As a condition precedent to coverage under this Policy, the **Insured** shall give to the **Insurer** as soon as practicable, but in no event later than thirty (30) days thereafter, written notice and the full particulars of i) the exhaustion of the aggregate limit of liability of any **Underlying Insurance**, ii) any **Underlying Insurance** not being maintained in full effect during the **Policy Period**, or iii) an **Underlying Insurer** becoming subject to a receivership, liquidation, dissolution, rehabilitation or similar proceeding or being taken over by any regulatory authority.

C. If during the **Policy Period** the provisions of the **Primary Policy** are changed in any manner, as a condition precedent to coverage under this Policy, the **Insured** shall give written notice to the **Insurer** of the full particulars of such change as soon as practicable but in no event later than thirty (30) days following the effective date of such change. No amendment to any **Primary Policy** or **Underlying Insurance** during the **Policy Period** shall be effective in broadening or extending the coverage afforded by this Policy or extending or increasing the limits of liability afforded by this Policy unless the **Insurer** so agrees in writing. The **Insurer** may, in its sole discretion, condition its agreement to follow any changes to the **Primary Policy** or the **Underlying Insurance** on the **Insured** paying any additional premium required by the **Insurer** for such change.

As soon as practicable, but in no event later than thirty (30) days thereafter, the **Policyholder** must give the **Insurer** written notice of any additional or return premiums charged or allowed in connection with any **Underlying Insurance**.

### IV. REDUCTION OR EXHAUSTION OF UNDERLYING LIMITS

A. If the **Underlying Limits** are partially reduced solely due to actual payment under the **Underlying Insurance**, this Policy shall continue to apply as excess insurance over the remaining **Underlying Limits**.

B. If the **Underlying Limits** are wholly exhausted solely due to actual payment under the **Underlying Insurance**, this Policy shall continue to apply as primary insurance with respect to the applicable **Insurance Product(s)** and the retention or deductible, if any, applicable under the **Primary Policy(ies)** shall apply under this Policy.

C. If any **Underlying Limits** are subject to a **Sublimit** then coverage hereunder shall not apply to any **Claim** which is subject to such **Sublimit**, provided however, that the **Underlying Limit** shall be recognized hereunder as depleted to the extent of any payment of such **Claim** subject to such **Sublimit**.

### V. LIMITS OF LIABILITY

A. The amount stated in Item 3.a. in the Declarations shall be the maximum limit of the **Insurer's** liability for each **Claim** under the applicable **Primary Policy**, and shall be the maximum amount payable by the **Insurer** under this Policy for a single **Claim**, which amount shall be part of, and not in addition to, the amount stated in Item 3.b. in the Declarations.

B.   The amount stated in Item 3.b. in the Declarations shall be the maximum aggregate amount payable by the **Insurer** under this Policy with respect to all **Claims** during the **Policy Period** for all Insurance **Products**.

C.   This Policy does not provide coverage for any **Claim** not covered by the **Underlying Insurance**, and shall drop down only to the extent that payment is not made under the **Underlying Insurance** solely by reason of exhaustion of the **Underlying Insurance** through payments thereunder, and shall not drop down for any other reason. If any **Underlying Insurer** fails to make payments under such **Underlying Insurance** for any reason whatsoever, including without limitation the insolvency of such **Underlying Insurer**, then the **Insureds** shall be deemed to have retained any such amounts which are not so paid. If the **Underlying Insurance** is not so maintained, the **Insurer** shall not be liable under this Policy to a greater extent than it would have been had such **Underlying Insurance** been so maintained.

D.   Payment by the **Insurer** of any amount, including but not limited to defense costs, shall reduce the limits of liability available under this Policy.

## VI.   SETTLEMENTS AND DEFENSE

A.   No **Insured** under this Policy may, without the **Insurer's** prior written consent, which consent shall not be unreasonably withheld, admit liability for or settle any matter for which insurance may be sought under this Policy.

B.   The **Insurer** may, at its sole discretion, elect to participate in the investigation, defense and/or settlement of any claim under this Policy, regardless of whether the applicable **Underlying Insurance** has been exhausted.

C.   The **Insured**, and not the **Insurer**, has the duty to defend all **Claims** under this Policy.

## VII.   SUBROGATION

A.   In the event of payment under this Policy, the **Insurer** shall be subrogated to all rights of recovery of each and all **Insureds** against any person or organization, and the **Insureds** shall do whatever is necessary to secure those rights to the satisfaction of the **Insurer**, including the execution of such documents necessary to enable the **Insurer** effectively to bring suit in the name of such **Insureds**.

B.   Any amount recovered after payment under this Policy and any **Underlying Insurance** policies shall be apportioned among the **Insurer** and the **Underlying Insurers** net of the expense of such recovery in the reverse order of actual payment. The expenses attendant to such recovery shall be apportioned among those benefiting from the recovery in proportion to the amount of benefit to each party.

## VIII. AUTHORIZATION

Except as stated in paragraph IX.A. below, the **Policyholder** shall be the sole agent of all **Insureds** with respect to all matters, including but not limited to giving and receiving notices and other communications, effecting or accepting any endorsements to or notices of cancellation of this Policy, the payment of premium and the receipt of any return premiums.

## IX.   NOTICE

A.   With respect to any **Claim**, situation that could give rise to a **Claim**, or other matter as to which insurance may be sought under this Policy, the **Policyholder** or any **Insured** must give the **Insurer** written notice contemporaneously with and in the identical manner required by the applicable Primary **Policy**.

B.   All notices under this Policy shall be sent to the **Insurer** at the address set forth in Item 6. In the Declarations.

## X. MODIFICATION, CANCELLATION AND NONRENEWAL

**A.** No modification of this Policy shall be effective unless made by endorsement signed by an authorized representative of the **Insurer**.

**B.** The **Policyholder** may cancel this Policy at any time by written notice stating when thereafter such cancellation is to be effective.

**C.** The **Insurer** may cancel this Policy only for nonpayment of premium, and only by delivering or mailing to the **Policyholder** written notice stating when, not less than ten (10) days thereafter, such cancellation shall become effective. The delivery or mailing of such notice shall be sufficient proof thereof and this Policy and the **Policy Period** shall terminate at the date and hour specified in the notice.

**D.** The **Insurer** shall refund the unearned premium, computed at the customary short rate, if the Policy is cancelled by the **Policyholder**.

**E.** The **Insurer** shall have no obligation to renew this Policy upon its expiration. If the **Insurer** decides not to renew this Policy, the **Insurer** shall provide written notice to the **Policyholder** by messenger, express delivery or first class mail at least sixty (60) days prior to the expiration of the Policy.

## XI. EXCLUSIONS

The **Insurer** shall not be liable for any amount in any **Claim** taking place during the **Policy Period** and arising under any **Insurance Product**, which is based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving:

**A.** Any demand, suit or other proceeding pending, or order, decree or judgment entered, against any **Insured** on or prior to the Pending or Prior Claim Date set forth in Item 7 of the Declarations or any wrongful act, fact, circumstance or situation underlying or alleged therein; or

**B.** Any other wrongful act, fact, circumstance or situation whenever occurring, which together with a wrongful act, fact, circumstance or situation described in (a) above are causally or logically interrelated by a common nexus.

Endorsement No. 1

Effective date of this endorsement:  12:01 a.m. on: August 15, 2007
To be attached to and form part of Policy Number: MNN 734622/01/2007
Issued to: NAMCO Financial Exchange Corp.
By: Axis Insurance Company

# SCHEDULE OF UNDERLYING INSURANCE AND INSURANCE PRODUCTS

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**SECUREXCESS POLICY**

The Schedule of Underlying Insurance and Insurance Products is as follows:

A.  **Insurance Product:   Commercial Crime**

1.  **Primary Policy**

| Insurer | Policy Number | Limits | Policy Period |
|---------|--------------|--------|---------------|
| Liberty Mutual Insurance Company | FI4N587509001 | $5,000,000 | August 15, 2007- August 15, 2008 |

2.  **Other Underlying Policies**

| Insurer | Policy Number | Limits | Policy Period |
|---------|--------------|--------|---------------|
| Zurich American Insurance Company | FID 915850800 | $5,000,000 | August 15, 2007- August 15, 2008 |

All other provisions remain unchanged.

_____
Authorized Representative

JAN 2 2 2008
_____
Date

Endorsement No. 2

Effective date of this endorsement: 12:01 a.m. on: August 15, 2007
To be attached to and form part of Policy Number: MNN 734622/01/2007
Issued to: NAMCO Financial Exchange Corp.
By: Axis Insurance Company

## MANUSCRIPT APPLICATION ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

## SECUREXCESS POLICY

In consideration of the premium charged, it is agreed by the Insurer and Insureds that the application or proposal dated *July 2, 2007* and submitted to *Axis Insurance Company* shall be accepted by the Insurer as the Application for this Policy.

Any and all references to an Application or application in this Policy shall mean the application or proposal described above. The Insurer has relied upon all statements, warranties and other information and documents contained in or submitted with such other application or proposal as if they were submitted directly to Insurer using its own Application form.

All other provisions remain unchanged.

_____
Authorized Representative

JAN 2 2 2008
_____
Date

Endorsement No. 3

Effective date of this endorsement: 12:01 a.m. on: <u>August 15, 2007</u>
To be attached to and form part of Policy Number: <u>MNN 734622/01/2007</u>
Issued to: <u>NAMCO Financial Exchange Corp.</u>
By: <u>Axis Insurance Company</u>

# CALIFORNIA AMENDATORY ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**SECUREXCESS INSURANCE POLICY**

1.  Section **X., MODIFICATION, CANCELLATION AND NONRENEWAL**, paragraph C. is amended by the addition of the following:

    The notice shall state the reason for the cancellation. Notice of cancellation shall be mailed or delivered to the **Policyholder** at the mailing address shown on the Policy and to the producer of record, if applicable, provided that the producer of record is not an employee of the **Insurer**.

2.  Section **X., MODIFICATION, CANCELLATION AND NONRENEWAL**, paragraph E. is deleted and replaced by the following:

    The **Insurer** shall have no obligation to renew this Policy upon its expiration. Once the **Insurer** chooses to nonrenew this Policy, or to condition renewal upon a reduction of the Policy's Limit of Liability, an elimination of coverage, an increase in retention or an increase of more than 25 percent of the current Policy's premium, the **Insurer** shall deliver or mail to the **Policyholder** at the mailing address shown on the Policy, and to the producer of record, if applicable, written notice stating such at least sixty (60) days but not more than one hundred twenty (120) days prior to the end of the **Policy Period** set forth in Item 2. in the Declarations. The notice shall include the specific reason for nonrenewal or conditional renewal.

All other provisions remain unchanged.

Authorized Representative

JAN 2 2 2008
Date

SE 0501 (Ed. 1203)                                                        Printed in U.S

Endorsement No. 4

Effective date of this endorsement: 12:01 a.m. on: August 15, 2007
To be attached to and form part of Policy Number: MNN 734622/01/2007
Issued to: NAMCO Financial Exchange Corp.
By: Axis Insurance Company

# ADDENDUM TO DECLARATIONS

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**SECUREXCESS POLICY**

The Declarations is amended by the addition of the following:

Policy Premium: $8,750

# EXHIBIT 4

**THE HARTFORD**
**UNIVERSAL EXCESS™ POLICY**



Policy Number  00 FA 0245357-07

TWIN CITY FIRE INSURANCE CO.
INDIANAPOLIS, IN 46268-0930
a stock insurance company, herein called
the insurer

Agency Code, Name & Address
88094
LOCKTON INSURANCE BROKERS INC
TWO EMBARCADERO CTR, STE 1700
SAN FRANCISCO, CA 94111

NOTICE: THIS IS A CLAIMS MADE POLICY. EXCEPT AS MAY BE OTHERWISE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS LIMITED TO LIABILITY FOR ACTS COVERED BY UNDERLYING INSURANCE (ITEM D.) FOR WHICH CLAIMS ARE FIRST MADE AGAINST THE INSURED(S) WHILE THE POLICY IS IN FORCE. THIS POLICY DOES NOT PROVIDE FOR THE UNDERWRITERS TO DEFEND THE INSURED, AND ANY DEFENSE COSTS AND OTHER CLAIM EXPENSE COVERED UNDER THE POLICY IS PART OF AND NOT IN ADDITION TO THE LIMIT OF LIABILITY. PLEASE READ AND REVIEW THE POLICY CAREFULLY.

## DECLARATIONS

ITEM A. Name of Insured: (hereinafter called the "Insured")

Address of Insured:
NAMCO FINANCIAL EXCHANGE   CORPORATION
12121 WILSHIRE BLVD.
SUITE 1400
LOS ANGELES, CA 90025

ITEM B. Policy Period: From 12:01 a.m. on  8/15/07       To 12:01 a.m. on  8/15/08
(Standard Time at the address stated in Item A)

ITEM C. LIMIT OF LIABILITY: SEE FORM # UE00H07500    Aggregate each Policy Period, including claim expense.

ITEM D. SCHEDULE OF UNDERLYING INSURANCE:

(1)   Primary Policy:         LIBERTY MUTUAL INSURANCE COMPANY
FI4N587509001

Company:             SEE FORM # UE00H07500

Policy Number:

Limit of Liability:

(2)   Underlying Excess Policy(ies):   SEE FORM # UE00H07500
ITEM E. ENDORSEMENTS EFFECTIVE AT INCEPTION:  SEE FORM GU207 (SCHEDULE OF ENDORSEMENTS)

ITEM F. TERMINATION OF PRIOR POLICY(IES):

ITEM G. DISCOVERY CLAUSE:

(1) Additional Premium:      AS PER UNDERLYING INSURANCE

(2) Additional Period:       AS PER UNDERLYING INSURANCE

ITEM H. POLICY PERIOD PREMIUM:        $7,650.00

Authorized Representative                    Date

UE 00 H001 00 1004

**ENDORSEMENT**

GU 207
(6-78)

This endorsement, effective on     8/15/07                         at 12:01 A.M. standard time, forms a part of

Policy No.   00 FA 0245357-07          of the          TWIN CITY FIRE INSURANCE CO.

Issued to   NAMCO FINANCIAL EXCHANGE   CORPORATION

David Zwiener, President

SCHEDULE OF FORMS AND ENDORSEMENTS

|   | RN00N02600 | 05/93 | IN WITNESS PAGE |
|---|---|---|---|
| 1 | GU207 | 06/78 | EXCESS FIDELITY AMEND DECLARATIONS ENDORSEMENT |
| 2 | UE00H07701 | 06/06 | EXCESS FIDELITY ENDORSEMENT WHEN PRIMARY POLICY IS PER LOSS POLICY |
| 3 | UE00H07900 | 03/06 | UNIVERSAL EXCESS OVER CRIME COVERAGE ONLY ENDORSEMENT |
| 4 | UE04H01600 | 12/04 | CALIFORNIA NONRENEWAL ENDORSEMENT |
|   | EL04R11101 | 05/05 | IMPORTANT INFORMATION TO POLICYHOLDERS |
|   | HR00H09300 | 02/07 | PRODUCER COMPENSATION NOTICE |

Rev. Ed. Date (04/02)
GU 207 (6-78)



# The Hartford

## UNIVERSAL EXCESS™ POLICY

### I.   INSURING AGREEMENT

The Insurer designated in the Declarations (a Stock Insurance Company herein called the "Underwriters"), in consideration of the payment of the premium and in reliance upon any application, materials or information made available by or on behalf of the Insured(s) to the Underwriters during the application or proposal process, and subject to all of the terms, conditions and exclusions of this policy, agrees with the Insured(s) as follows:

The Underwriters shall provide the Insured(s) with insurance during the Policy Period which is in excess of the total limits of liability and any retention/deductible under all Underlying Insurance, as set forth in Item D of the Declarations, whether collectible or not.

### II.   LIMIT OF LIABILITY

**A.**   It is expressly agreed that liability for any loss shall attach to the Underwriters only after the Primary and Underlying Excess Insurers shall have paid the full amount of their respective liability (hereinafter referred to as the "Underlying Insurance") or the Insured(s) shall have paid the full amount of such liability due to the financial insolvency of an Insurer of the Underlying Insurance. The Underwriters shall then be liable to pay only such additional amounts up to the Limit of Liability set forth in Item C of the Declarations, which shall be the maximum liability of the Underwriters in each Policy Period.

**B.**   In the event of the reduction or exhaustion of the aggregate limits of liability under the Primary and Underlying Excess Policy(ies) by reason of losses paid thereunder for claims first made while this policy is in force, this policy shall:

    (1)   in the event of such reduction, continue in force excess of the reduced Primary and Underlying Insurance; or

    (2)   in the event of exhaustion, continue in force as primary insurance, subject to the Underwriters' Limit of Liability and to the other terms, conditions and exclusions of this policy,

provided always that in the latter event this policy shall only pay excess of the retention/deductible applicable to such primary insurance as set forth in the Primary Policy, which shall be applied to any subsequent loss in the same manner specified in such primary insurance. Notice of exhaustion of Underlying Insurance shall be given the Underwriters upon such exhaustion. Nothing herein shall be construed to provide for any duty on the part of the Underwriters to defend any Insured or to pay defense or any claim expenses in addition to the Limit of Liability set forth in Item C of the Declarations.

**C.**   If the Primary Policy contains a specific grant of coverage that is subject to a sub-limit of liability, then coverage under this policy shall not apply to any claim which is subject to such sub-limit of liability. However, any such claim shall be recognized under this policy solely for purposes of reducing or exhausting, to any extent, the Underlying Insurance.

### III.   PRIMARY AND UNDERLYING INSURANCE

**A.**   This policy is subject to the same warranties, terms, conditions, definitions, exclusions and endorsements (except as regards the premium, the amount and limits of liability, and duty to defend, and except as otherwise provided herein) as are contained in or as may be added to the Primary Policy, together with all the warranties, terms, conditions, exclusions and limitations contained in or added by endorsement to any Underlying Excess Policy(ies). In no event shall this policy grant broader coverage than is provided by the most restrictive Primary or Underlying Excess Policy(ies).

**B.**   It is a condition precedent to this policy that the policy(ies) of the Primary and Underlying Excess Insurers shall be maintained in full effect while this policy is in force except for any reduction of the aggregate limits contained therein (as provided for in Section II., B. above).



C.   Failure of the Insured to comply with the foregoing shall not invalidate this policy, but in the event of such failure, the Underwriters shall be liable only to the extent that it would have been liable had the Insured complied therewith. To the extent that any Underlying Insurance is not maintained in full effect while this policy is in force, the Insured(s) shall be deemed to be self-insured for the amount of the limit of liability of the Underlying Insurance which is not maintained as set forth above.

## IV.   COSTS, CHARGES, EXPENSES AND COOPERATION

A.   No costs, charges or expenses for investigation or defense of claims shall be incurred, or settlements made, without the Underwriters' written consent, such consent not to be unreasonably withheld; however, in the event of such consent being given, the Underwriters will pay, subject to the provisions of Section II., such costs, settlements, charges or expenses.

B.   The Underwriters may, at their sole option, elect to participate in the investigation, settlement or defense of any claim even if the Underlying Insurance has not been exhausted. The Insured(s) shall, as a condition precedent to their rights under this policy, give to the Underwriters all information and cooperation as the Underwriters may reasonably require and shall do nothing that may prejudice the Underwriters' position or its potential or actual rights of recovery.

## V.   GENERAL CONDITIONS

A.   Definitions

1.   Insured(s) means those individuals and/or entities insured under the Underlying Insurance.

2.   Primary Policy means the policy scheduled in Item D(1) of the Declarations.

3.   Underlying Excess Policy(ies) means the policy(ies) scheduled in Item D(2) of the Declarations.

4.   Underlying Insurance means all those policies scheduled in Item D of the Declarations.

5.   Policy Period means the period set forth in Item B of the Declarations, subject to prior cancellation pursuant to Section V. C.

B.   Discovery Clause

If the Insured(s) elect and are granted a discovery period or extended reporting period under the Underlying Insurance, then the Insured(s) shall have the same ability to elect a discovery period or extended reporting period under this policy by: (i) satisfying the conditions as set forth in the Underlying Insurance; and (ii) paying the additional premium set forth in Item G(1) of the Declarations. If elected, the discovery period or extended reporting period shall be for the period of time set forth in Item G(2) of the Declarations.

C.   Cancellation Clause

The Underwriter may cancel this policy for non-payment of premium by sending not less than ten (10) days notice to the Insured(s) at their last known address. The Underwriter may not otherwise cancel this policy. This policy may be cancelled by the Insured(s) in accordance with the conditions of the Underlying Insurance. If the policy shall be cancelled by the Insured(s), the Underwriters shall retain the customary short rate proportion of the premium hereon.

D.   Termination of Prior Policy(ies)

The taking effect of this policy shall terminate, if not already terminated, the policy(ies) specified in Item F of the Declarations.

E.   Notice

The Underwriters shall be given notice in writing as soon as practicable: (a) in the event of the cancellation or non-renewal of any Underlying Insurance; and (b) of any additional or return premiums charged or paid in connection with any Underlying Insurance.

Any changes in coverage in the Underlying Insurance or any changes in the Insured(s) that would require notice under the Underlying Insurance shall be reported to the Underwriters as soon as practicable and the Insured(s) shall, upon request, furnish the Underwriters with copies of such changes. The Underwriters shall not be subject to such changes without the Underwriter's consent, such consent not to be unreasonably withheld.

In the event any claim is made against any Insured, written notice shall be given to the Underwriters in the same manner as given to the Primary Policy at 2 Park Ave, 5th Floor, New York, NY 10016, ATTN:  Hartford Financial Products Claims Division [Fax # (917) 464-5972], and otherwise pursuant to all appropriate notice provisions contained in the Underlying Insurance.



IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

**TWIN CITY FIRE INSURANCE COMPANY**
HOME OFFICE - INDIANAPOLIS, INDIANA
ADMINISTRATIVE OFFICES - HARTFORD, CONNECTICUT
(A STOCK INSURANCE COMPANY MEMBER OF THE HARTFORD)

Brian S. Becker, Secretary

David Zwiener, President

RN 00 N026 00 0593
ILBP 83 01 05 89 RN
   00 FA 0245357-07   8/15/07



**ENDORSEMENT NO:    1**

This endorsement, effective 12:01 am, August 15, 2007                    forms part
of policy number 57 FA 0245357 07

Issued to: Namco Financial Exchange Corporation

by: Twin City Fire Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EXCESS FIDELITY AMEND DECLARATIONS ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**UNIVERSAL EXCESS POLICY**

It is agreed that the **DECLARATIONS** is amended as follows:

**NOTICE** is deleted and replaced with the following:

NOTICE:    THE COMPANY AGREES WITH THE INSURED NAMED BELOW THAT THE
COVERAGE AFFORDED BY THIS POLICY SHALL FOLLOW ALL OF THE TERMS
AND CONDITIONS OF THE PRIMARY COVERAGE LISTED IN THE SCHEDULE OF
UNDERLYING INSURANCE SET FORTH IN ITEM D. BELOW SUBJECT, HOWEVER,
TO THE SPECIAL CONDITIONS APPLICABLE TO THIS POLICY AND ANY
ENDORSEMENTS ATTACHED HERETO.

**ITEM C. LIMIT OF LIABILITY** is deleted and replaced with the following:

**ITEM C.   LIMIT OF LIABILITY:**

| Coverage | Description | Limit of Liability |
|---|---|---|
| Insuring Agreement 1 | Employee Theft | $5,000,000 Excess of $15,000,000 |

The Company's Limit of Liability for each Coverage for which an amount is inserted above shall be in
excess of all Underlying Insurance shown in the Schedule of Underlying Insurance below plus any
Deductible Amount shown as applicable to the Primary Coverage.

**ITEM D. SCHEDULE OF UNDERLYING INSURANCE** is deleted and replaced with the following:

**ITEM D.  SCHEDULE OF UNDERLYING INSURANCE**

**Primary Coverage**                Carrier: Liberty Mutual Insurance Company
                                    Policy No.: FI4N587509001

| Coverage | Description | Limit of Liability | Deductible |
|---|---|---|---|
| Insuring Agreement 1 | Employee Theft | $5,000,000 | $ 25,000 |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |

**Other Underlying Coverage**   ☐  None        X☐  See Schedule Below

**Excess Layer**                    Carrier: Zurich American Insurance Company
                                    Policy No.: FID 9158508 00

| Coverage | Description | Limit of Liability |
|---|---|---|
| Insuring Agreement 1 | Employee Theft | $5,000,000 Excess of $5,000,000 |

**Excess Layer**                    Carrier: Axis Insurance Company
                                    Policy No.: MNN 734622/01/2007

| Coverage | Description | Limit of Liability |
|---|---|---|
| Insuring Agreement 1 | Employee Theft | $5,000,000 Excess of $10,000,000 |

**Excess Layer**                    Carrier:
                                    Policy No.:

| Coverage | Description | Limit of Liability |
|---|---|---|
|  |  | $ Excess of $ |
|  |  | $ Excess of $ |
|  |  | $ Excess of $ |
|  |  | $ Excess of $ |
|  |  | $ Excess of $ |

**Excess Layer**                    Carrier:
                                    Policy No.:

| Coverage | Description | Limit of Liability |
|---|---|---|
|  |  | $ Excess of $ |
|  |  | $ Excess of $ |
|  |  | $ Excess of $ |
|  |  | $ Excess of $ |
|  |  | $ Excess of $ |

Excess Layer                    Carrier:
                                Policy No.:

            Coverage                    Description                          Limit of Liability
                                                                    $        Excess of $
                                                                    $        Excess of $
                                                                    $        Excess of $
                                                                    $        Excess of $
                                                                    $        Excess of $

Excess Layer                    Carrier:
                                Policy No.:

            Coverage                    Description                          Limit of Liability
                                                                    $        Excess of $
                                                                    $        Excess of $
                                                                    $        Excess of $
                                                                    $        Excess of $
                                                                    $        Excess of $

ITEM F.   TERMINATION OF PRIOR POLICY(IES):

The Insured by the acceptance of the Policy gives notice to the Company terminating or canceling
prior bond(s) or policy(ies) No.(s)        such termination or cancellation to be effective as of the time
this Policy becomes effective.

ITEM G.  DISCOVERY CLAUSE is deleted in its entirety.

All other terms and conditions remain unchanged.

David Zwiener, President                        _9/4/2007_____
                                                         Date

ENDORSEMENT NO:      2

This endorsement, effective 12:01 am,      8/15/07                                    forms part
   policy number      00 FA 0245357-07

issued to:          NAMCO FINANCIAL EXCHANGE  CORPORATION

by:                 TWIN CITY FIRE INSURANCE CO.


## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCESS FIDELITY ENDORSEMENT WHEN PRIMARY POLICY IS PER LOSS POLICY

This endorsement modifies insurance provided under the following:

**UNIVERSAL EXCESS POLICY**

It is agreed that **II. LIMIT OF LIABILITY** is deleted in its entirety and replaced with the following:

A.   It is expressly agreed that liability for any loss shall attach to the Underwriters only after the Primary and
     Underlying Excess Insurers shall have paid the full amount of their respective liability (hereinafter referred to as
     the "Underlying Insurance") or the Insured(s) shall have paid the full amount of such liability due to the financial
     insolvency of an Insurer of the Underlying Insurance. The Underwriters shall then be liable to pay only such
     additional amounts up to the Limit of Liability set forth in Item C of the Declarations, which shall be the
     maximum liability of the Underwriters per loss for any one occurrence.

B.   If the Primary Policy contains a specific grant of coverage that is subject to a sub-limit of liability, then coverage under
     this policy shall not apply to any claim which is subject to such sub-limit of liability. Excess coverage shall only apply
     to those Insuring Clauses noted on the Declarations.

It is agreed that **III. PRIMARY AND UNDERLYING INSURANCE B. & C.** are deleted and replaced with the following:

B.   It is a condition precedent to this policy that the policy(ies) of the Primary and Underlying Excess Insurers shall
     be maintained in full effect while this policy is in force.

C.   Failure of the Insured to comply with the foregoing shall not invalidate this policy, but in the event of such
     failure, the Underwriters shall be liable only to the extent that it would have been liable had the Insured
     complied therewith. To the extent that any Underlying Insurance is not maintained in full effect while this policy
     is in force, the Insured(s) shall be deemed to be self-insured for the amount of the limit of liability of the
     Underlying Insurance which is not maintained as set forth above.

It is agreed that **IV. COSTS, CHARGES, EXPENSES AND COOPERATION** is deleted in its entirety.

It is agreed that **V. GENERAL CONDITIONS B.** is deleted.

It is agreed that **V. GENERAL CONDITIONS C.** is deleted and replaced with the following:

C.   The Underwriter may cancel this policy for non-payment of premium by sending not less than ten (10) days
     notice to the Insured(s) at their last known address. In the event of cancellation, termination or non-renewal of the
     Primary Policy, this Policy shall be deemed to be canceled as of the effective date of cancellation, termination or non-
     renewal of such Primary Policy.

s agreed that the last paragraph of **V. GENERAL CONDITIONS E.** is deleted and replaced with the following:


UE 00 H077 01 0606                        © 2006, The Hartford                          Page 1 of 2



ENDORSEMENT NO:     2

In the event any claim is made against any Insured, written notice shall be given to the Underwriters in the same manner as given to the Primary Policy at:  Hartford Financial Products Bond Claims Division, T-4, 690 Asylum Avenue, Hartford, CT 06115 [Fax # (860) 757-5835 or (860) 547-8265], and otherwise pursuant to all appropriate notice provisions contained in the Underlying Insurance.

All other terms and conditions remain unchanged.

David Zwiener, President

ENDORSEMENT NO:      3

This endorsement, effective 12:01 am,      8/15/07           forms part
policy number    00 FA 0245357-07

issued to:       NAMCO FINANCIAL EXCHANGE   CORPORATION

by:              TWIN CITY FIRE INSURANCE CO.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## UNIVERSAL EXCESS OVER CRIME COVERAGE ONLY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**UNIVERSAL EXCESS POLICY**

It is agreed that wherever the term Limits of Liability appears in this policy, it shall have the same meaning as Limits of Insurance.

All other terms and conditions remain unchanged.

David Zwiener, President

UE 00 H079 00 0306                    © 2006, The Hartford                    Page 1 of 1

ENDORSEMENT NO: 4

This endorsement, effective 12:01 am,   8/15/07            forms part
policy number    00 FA 0245357-07

Issued to:    NAMCO FINANCIAL EXCHANGE CORPORATION

by:    TWIN CITY FIRE INSURANCE CO.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### CALIFORNIA NONRENEWAL ENDORSEMENT

Wherever used in this endorsement: 1) "Insurer" means the insurance company which issued this policy; and 2) "Insured" means the Name of Insured, Name of Company, Name of Partnership, Parent Company, Name of Insured Plan or Trust, Name of Insured Entity, Named Entity, Named Real Estate Investment Trust(s), Name of Sponsor Company or Insured stated in ITEM A or ITEM 1 of the Declarations Page.

The Cancellation provision of the Policy is amended to include the following:

<u>NOTICE OF NONRENEWAL</u>

A.    If the Insurer decides not to renew the Policy, the Insurer shall mail or deliver to the producer of record and the Insured Notice of Nonrenewal at least sixty (60) days but no more than one hundred twenty (120) days prior to the end of the expiration date or anniversary date of the Policy. The Notice of Nonrenewal shall contain the reason for nonrenewal of the Policy.

The Insurer is not required to send Notice of Nonrenewal in the following situations:

1.    If the transfer or renewal of a policy, without any changes in terms, conditions or rates, is between the Insurer and a member of the Insurer's insurance group.

2.    If the Policy has been extended for ninety (90) days or less, provided that notice has been given in accordance with the nonrenewal notice requirements cited in paragraph A above in the Nonrenewal Section.

3.    If the Insured has obtained replacement coverage, or has agreed, in writing, within sixty (60) days of the termination of the Policy, to obtain that coverage.

4.    If the Policy is for a period of no more than sixty (60) days and the Insured is notified at the time of issuance that it will not be renewed.

5.    If the Insured requests a change in the terms or conditions or risks covered by the Policy within sixty (60) days prior to the end of the Policy Period.

6.    If the Insurer has made a written offer to the Insured, in accordance with the time frames shown in the non-renewal notice requirements cited in paragraph A above in the Nonrenewal Section, to renew the Policy under changed terms or conditions or at an increased premium rate.

All other terms and conditions remain unchanged.

David Zwiener, President

## IMPORTANT INFORMATION TO POLICYHOLDERS

the event you need to contact someone about this policy/bond for any reason, please contact your producer. If you ve additional questions, you may contact the insurance company issuing this policy/bond at the following address and ephone number:

*THE HARTFORD*
*COMPLIANCE DEPARTMENT*
*HARTFORD FINANCIAL PRODUCTS*
*2 PARK AVENUE*
*5TH FLOOR*
*NEW YORK, NEW YORK 10016*
*1-212-277-0400*

If you have a problem with your insurance company, its producer or representative that has not been resolved to your satisfaction, please call or write to the Department of Insurance.

Consumer Services Division
California Department of Insurance
300 South Spring Street
14th Floor
Los Angeles, CA 90013
1-800-927-4357 or -1-213-897-8921

Written correspondence is preferable so that a record of your inquiry can be maintained. When contacting your producer, company or the Bureau of Insurance have your policy/bond number available.

ILNP 85 14 03 89 CA
EL 04 R111 01 0505

00  FA 0245357-07     8/15/07

**Producer Compensation Notice**



You can review and obtain information on The Hartford's
producer compensation practices at www.thehartford.com
or at 1-800-592-5717.

# EXHIBIT 5

# WEISS & SPEES

Attorneys at Law
1925 Century Park East, Suite 650
Los Angeles, California 90067
Telephone (424) 245-3100
Facsimile (424) 245-3199

*Jonathan C. Balfus*
*jb@weissandspees.com*

July 2, 2009

Liberty Mutual Insurance Company
175 Berkeley Street
Boston, MA 02116

Re:   *In Re Namco Financial Exchange Corp.*
USBC Case No.        2:09-BK-17727
Your Policy No.       FI4N587509001

Dear Sir or Madam:

We represent Heide Kurtz, Chapter 7 Trustee ("Trustee") in the above-referenced action. Having reviewed the Debtor Namco Capital Group, Inc.'s ("Debtor") financial information we have determined there are a substantial number of claims against the Debtor that are covered under the insurance policy shown above issued by you to the Debtor. These claims are believed to total in excess of $35,000,000 and include, without limitation, the misappropriation or inappropriate transfer of funds received from participants in 1031 exchange transactions. On behalf of the Trustee, we hereby submit a claim for payment pursuant to the terms of the identified policy. The Trustee reserves the right to make additional claims as appropriate as more information regarding the insured's activities is discovered.

This letter is not meant and should not be construed as a waiver, limitation, modification or compromise of any of our client's rights and remedies, all of which are hereby expressly reserved. Should you require any further information, please do not hesitate to contact the undersigned.

Very truly yours,

WEISS & SPEES

JONATHAN C. BALFUS

cc:   Heide Kurtz
Michael H. Weiss
Claudia Porras/San Francisco Series of Lockton Companies, LLC

# WEISS & SPEES

Attorneys at Law
1925 Century Park East, Suite 650
Los Angeles, California 90067
Telephone (424) 245-3100
Facsimile (424) 245-3199

*Jonathan C. Balfus*
*jb@weissandspees.com*

July 2, 2009

Axis Financial Insurance Solutions Claims
Connell Corporate Park
300 Connell Drive
P.O. Box 357
Berkeley Heights, NJ 07922-0357

Re:   ***In Re Namco Financial Exchange Corp.***
      USBC Case No.      2:09-BK-17727
      Your Policy No.    MNN 734622/01/2007

Dear Sir or Madam:

We represent Heide Kurtz, Chapter 7 Trustee ("Trustee") in the above-referenced action. Having reviewed the Debtor Namco Capital Group, Inc.'s ("Debtor") financial information we have determined there are a substantial number of claims against the Debtor that are covered under insurance policy no. MNN 734622/01/2007 issued by you to the Debtor. These claims are believed to total in excess of $35,000,000 and include, without limitation, the misappropriation or inappropriate transfer of funds received from participants in 1031 exchange transactions. On behalf of the Trustee, we hereby submit a claim for payment pursuant to the terms of the identified policy. The Trustee reserves the right to make additional claims as appropriate as more information regarding the insured's activities is discovered.

This letter is not meant and should not be construed as a waiver, limitation, modification or compromise of any of our client's rights and remedies, all of which are hereby expressly reserved. Should you require any further information, please do not hesitate to contact the undersigned.

Very truly yours,

WEISS & SPEES

*Jonathan C. Balfus (RA)*

JONATHAN C. BALFUS

cc:   Heide Kurtz
      Michael H. Weiss
      Claudia Porras/San Francisco Series of Lockton Companies, LLC



# WEISS & SPEES

### Attorneys at Law
1925 Century Park East, Suite 650
Los Angeles, California 90067
Telephone (424) 245-3100
Facsimile (424) 245-3199

*Jonathan C. Balfus*
*jb@weissandspees.com*

July 2, 2009

Zurich Insurance Company
One Liberty Plaza, 53rd Floor
New York, New York 10006
Attention: Executive Assurance Department

     Re:   ***In Re Namco Financial Exchange Corp.***
           USBC Case No.     2:09-BK-17727
           Your Policy No.     Pol. No. FID9158508

Dear Sir or Madam:

     We represent Heide Kurtz, Chapter 7 Trustee ("Trustee") in the above-referenced action. Having reviewed the Debtor Namco Capital Group, Inc.'s ("Debtor") financial information we have determined there are a substantial number of claims against the Debtor that are covered under the insurance policy shown above issued by you to the Debtor. These claims are believed to total in excess of $35,000,000 and include, without limitation, the misappropriation or inappropriate transfer of funds received from participants in 1031 exchange transactions. On behalf of the Trustee, we hereby submit a claim for payment pursuant to the terms of the identified policy. The Trustee reserves the right to make additional claims as appropriate as more information regarding the insured's activities is discovered.

     This letter is not meant and should not be construed as a waiver, limitation, modification or compromise of any of our client's rights and remedies, all of which are hereby expressly reserved. Should you require any further information, please do not hesitate to contact the undersigned.

Very truly yours,

WEISS & SPEES

JONATHAN C. BALFUS

cc:    Heide Kurtz
       Michael H. Weiss
       Claudia Porras/San Francisco Series of Lockton Companies, LLC

# WEISS & SPEES

Attorneys at Law
1925 Century Park East, Suite 650
Los Angeles, California 90067
Telephone (424) 245-3100
Facsimile (424) 245-3199

Jonathan C. Balfus
jb@weissandspees.com

July 2, 2009

Hartford
2 Park Avenue, 5th Floor
New York, NY 10016

Re:   *In Re Namco Financial Exchange Corp.*
USBC Case No.      2:09-BK-17727
Your Policy No.     00 FA 0245357-07

Dear Sir or Madam:

We represent Heide Kurtz, Chapter 7 Trustee ("Trustee") in the above-referenced action. Having reviewed the Debtor Namco Capital Group, Inc.'s ("Debtor") financial information we have determined there are a substantial number of claims against the Debtor that are covered under the insurance policy shown above issued by you to the Debtor. These claims are believed to total in excess of $35,000,000 and include, without limitation, the misappropriation or inappropriate transfer of funds received from participants in 1031 exchange transactions. On behalf of the Trustee, we hereby submit a claim for payment pursuant to the terms of the identified policy. The Trustee reserves the right to make additional claims as appropriate as more information regarding the insured's activities is discovered.

This letter is not meant and should not be construed as a waiver, limitation, modification or compromise of any of our client's rights and remedies, all of which are hereby expressly reserved. Should you require any further information, please do not hesitate to contact the undersigned.

Very truly yours,

WEISS & SPEES

*Jonathan C. Balfus (Rb)*

JONATHAN C. BALFUS

cc:   Heide Kurtz
      Michael H. Weiss
      Claudia Porras/San Francisco Series of Lockton Companies, LLC

EXHIBIT 6

# Studler, Doyle & Company, LLC
## Global Investigation & Forensic Accounting Services

September 11, 2009

Via Electronic Mail (jb@weissandspees.com)

Mr. Jonathan C. Balfus
Attorney
Weiss & Spees
1925 Century Park East
Suite 650
Los Angeles, CA 90067

      Re:  Namco Financial Exchange
           Loss Location: Los Angeles, California
           Policy No.: F14N587509001
           Claim No.: 4NSPC000133147
           Our File No.: A2598

Dear Mr. Balfus:

The purpose of this letter is to confirm the documentation and information discussed and requested during our conversation on September 10, 2009. According to our conversation:

1) We understand there are three bankruptcies of interest:
      a) Namco Financial Exchange
      b) Ezri Namvar
      c) Namco Capital Group, Inc.

2) We understand Weiss & Spees are the attorneys representing the Trustee, Ms. Kurtz.

3) We understand Ms. Heide Kurtz was appointed as trustee on Namco Finance Exchange.

4) We understand you are in the process of compiling and completing the Proof of Loss.

5) We understand there are approximately 17 debtors and approximately $35,000,000.00 in unpaid exchanger contracts.

6) We understand that Namco Capital Group, Inc. is a bank. Based on our review, the bank is known as Security Pacific Bank, and the holding company is Security Pacific Bancorp. The bank was taken over by the FDIC on November 7, 2008.

Mr. Jonathan C. Balfus
Re: Namco Financial Exchange
Claim No.: Unknown
September 11, 2009

It was mentioned that the exchanger monies may have been used to fund bank activities, and the bank's notes were due in May 2008.

If any of our understandings are incorrect, please correct them in writing.

Please send the original Proof of Loss to Ms. Carla Caliendo of Liberty International Underwriters, and a copy to Studler, Doyle & Company.

Also, please provide the following documentation and information to Studler, Doyle & Company:

1) Please provide a copy of the Namco Financial Exchange bankruptcy filing appointing the Trustee.

2) Please provide a copy of the debtor listing and amounts.

3) For those debtors who have filed lawsuits, please provide a copy of the complaints filed.

4) Please provide a hierarchy or organizational chart of Namco Financial Exchange for the personnel, duties and responsibilities during its existence during 2008 to bankruptcy.

5) Please provide copies of all exchanger agreements for 2008 and 2009.

6) Please provide a list of bank accounts in existence in 2008 and 2009 for Namco Financial Exchange. The list should also detail the purpose of the bank account, i.e., operating, exchangers, etc.

7) Please provide a copy of the signature card and corporate resolution for each of the bank accounts detailed above.

8) Please provide documentation available which details and supports the monies moved from the exchangers' accounts to the "bank operating" accounts.

9) Please explain and detail how each exchanger's monies were recorded and accounted.

10) Based upon our conversation on September 10, 2009, we understand the exchanger monies had not been deposited in a bank account separate from Namco Financial Exchange's operating bank account or Pacific Securities Bank's operating account. Please confirm this information.

2

Mr. Jonathan C. Balfus
Re: Namco Financial Exchange
Claim No.: Unknown
September 11, 2009

11) Please provide an explanation of how the exchangers' account balances, incoming monies and outgoing monies were recorded and tracked on the general ledgers of Namco Financial Exchange.

12) Please describe and provide documentation supporting how exchangers' transactions and books were reconciled to the bank account statement.

13) Please describe who at Namco Financial Exchange did the bank reconciliation for the exchangers'/clients' bank accounts, and how often the accounts were reconciled.

14) Please provide an explanation of who at Namco Financial Exchange could withdraw and deposit in the exchangers'/clients' bank accounts.

15) Did Namco Financial Exchange employ an outside bookkeeper, accountant, or CPA to do any work relative to the exchangers'/clients' accounts?

16) Based on Studler, Doyle & Company's research, Security Pacific Bancorp owns 10% of Pacific Premier Bancorp, Inc. Please explain Security Pacific Bancorp's and/or Mr. Ezri Namvar's relationship to Pacific Premier Bancorp, Inc.

17) Please provide information on whether Namco Financial Exchange clients'/exchangers' monies were invested in Pacific Premier Bancorp, Inc. trading and stock options.

We look forward to receiving the above requested documentation and information. Please be aware, as our review continues, additional documentation and information may be deemed necessary.

Please be aware, this letter and any investigation of this claim by Studler, Doyle & Company, CPAs or Liberty International Underwriters shall not be construed as an admission of liability or as a waiver of any policy provisions, defenses or limitations that are available to Liberty International Underwriters by operation of law. In addition to the policy defenses discussed in this correspondence, there may be other defenses available to Liberty International Underwriters under additional policy provisions and/or by operation of law. On behalf of Liberty International Underwriters, we respectfully reserve all of its rights and defenses and no waiver of any of the provisions of the policy and/or any rights and defenses to this claim under the policy and/or applicable law should be inferred from this letter or any action taken by or on behalf of Liberty International Underwriters. Liberty International Underwriters reserves the right to modify its coverage position at any time upon receipt of any additional information regarding this policy or claim.

3

Mr. Jonathan C. Balfus
Re:  Namco Financial Exchange
Claim No.: Unknown
September 11, 2009

In the meantime, if you have questions, comments or concerns, please do not hesitate to contact
D. M. Studler or Marta Drost, of our firm.

Sincerely,

*Studler, Doyle & Company*

STUDLER, DOYLE & COMPANY, LLC

cc:  C. Caliendo – Liberty International Underwriters (via email: Carla.Caliendo@libertyiu.com)

328

1444 N. Farnsworth Avenue, Suite 500, Aurora, IL 60505-1644
Tel: 630.820.5770  ●  Fax: 630.820.5765  ●  Website: www.sdccpa.com

# EXHIBIT 7



weiss&spees llp

1925 Century Park East, Suite 650
Los Angeles, CA 90067
T. 424.245.3100
F. 424.245.3199

November 4, 2009

Jonathan C. Balfus
jb@weissandspees.com

# PRIVILEGED & CONFIDENTIAL

**VIA FEDEX**
Dee Studler
STUDLER, DOYLE & COMPANY, CPAs, LLC
1444 N. Farnsworth Ave.
Suite 500
Aurora, IL 60505

Re:   Namco Financial Exchange Corporation
      Liberty Mutual Policy No.: FI4N587509001
      Bankruptcy Case No.  2:09-17727-BR

Dear Dee:

As promised, enclosed please find four flash drives containing all records we have received to date from Namco Financial Exchange Corporation ("NFEC").  ALL DOCUMENTS CONTAINED IN THE FLASH DRIVES ARE HEREBY DESIGNATED <u>CONFIDENTIAL</u> IN ACCORDANCE WITH THE CONFIDENTIALITY AGREEMENT EXECUTED BETWEEN THIS OFFICE AND LIBERTY MUTUAL INSURANCE COMPANY.

In an effort to provide as comprehensive a disclosure as possible, we have included in the enclosed drives numerous records that may pertain only indirectly to the loss submitted by NFEC for coverage.  However, records pertaining to the 1031 transactions on which NFEC's claim is based may be found in Flash Drive No. 1 in the folder labeled "Debtor Documents."

Very truly yours,

JONATHAN C. BALFUS
OF WEISS & SPEES

(ENCLOSURES)

# EXHIBIT 8

# Studler, Doyle & Company, LLC

## Global Investigation & Forensic Accounting Services

December 17, 2009

Via Electronic Mail (jb@weissandspees.com)

Mr. Jonathan C. Balfus
Attorney
Weiss & Spees
1925 Century Park East
Suite 650
Los Angeles, CA 90067

> Re: Namco Financial Exchange
> Loss Location: Los Angeles, California
> Policy No.: F14N587509001
> Claim No.: 4NSPC000133147
> Our File No.: A2598

Dear Mr. Balfus:

This is to acknowledge receipt of the September 3, 2009 letter from Ms. Betsy Carpenter of Lockton, and discussed with Ms. Caliendo in October 2009, in which you request an extension of time for filing your Proof of Loss. The conditions of the policy provide in part as follows:

    E.   Conditions

        1.   Conditions Applicable To All Insuring Agreements

            g.   Duties In The Event Of Loss

               After you "discovery" a loss or a situation that may result in loss of or damage to "money", "securities" or "other property" you must:

               (1)   Notify us as soon as possible. If you have reason to believe that any loss (except for loss covered under Insuring Agreements A.1. or A.2.) involves a violation of law, you must also notify the local law enforcement authorities.

               (2)   Submit to examination under oath at our request and give us a signed statement of your answers.

               (3)   Produce for our examination all pertinent records.

               (4)   Give us a detailed, sworn proof of loss within 120 days.

               (5)   Cooperate with us in the investigation and settlement of any claim.

Mr. Jonathan C. Balfus
Re: Namco Financial Exchange
Claim No.: 4NSPC000133147
December 17, 2009

This extension of time is subject to the following terms:

1) A Proof of Loss, duly sworn to, with full particulars furnished to Liberty International
   Underwriters on or before March 3, 2010, shall be deemed to have been furnished on
   September 3, 2009.

2) If a Proof of Loss, duly sworn to, with full particulars furnished to Liberty International
   Underwriters on September 3, 2009, would have been within the time period specified in
   the Policy, then a Proof of Loss, duly sworn to with full particulars furnished to Liberty
   International Underwriters on or before March 3, 2010, shall also be within the time
   period specified in the Policy.

3) The extension of time is not an admission of any coverage under the terms of the Policy
   including, but not limited to, an admission that the loss was discovered during the Policy
   Period.

4) The extension does not toll any other limitations period, under the Policy or applicable
   law, including, but not limited to, the time period in which to commence legal
   proceedings for recovery under the Policy.

5) The extension of time is subject to a full and complete reservation of all rights and
   defenses under the Policy and applicable law.

Please be aware, this letter and any investigation of this claim by Studler, Doyle & Company,
CPAs, Liberty International Underwriters or Zurich North America shall not be construed as an
admission of liability or as a waiver of any policy provisions, defenses or limitations that are
available to Liberty International Underwriters and Zurich North America by operation of law. In
addition to the policy defenses discussed in this correspondence, there may be other defenses
available to Liberty International Underwriters or Zurich North America under additional policy
provisions and/or by operation of law. On behalf of Liberty International Underwriters and
Zurich North America, we respectfully reserve all of their rights and defenses and no waiver of
any of the provisions of the policy and/or any rights and defenses to this claim under the policy
and/or applicable law should be inferred from this letter or any action taken by or on behalf of
Liberty International Underwriters or Zurich North America. Liberty International Underwriters
and Zurich North America reserve the right to modify their coverage position at any time upon
receipt of any additional information regarding this policy or claim.

1444 N. Farnsworth Avenue, Suite 500, Aurora, IL 60505-1644
Tel: 630.820.5770 ● Fax: 630.820.5765 ● Website: www.sdccpa.com

Mr. Jonathan C. Balfus
Re:  Namco Financial Exchange
Claim No.: 4NSPC000133147
December 17, 2009


In the meantime, if you have questions, comments or concerns, please do not hesitate to contact D. M. Studler or Marta Drost, of our firm.

Sincerely,

*Studler, Doyle & Company*

STUDLER, DOYLE & COMPANY, LLC

cc: C. Caliendo – Liberty International Underwriters (via email: Carla.Caliendo@libertyiu.com)
    P. Dougherty – Zurich North America (via email: phil.dougherty@zurichna.com)
    F. Zauderer – Axis U.S. Insurance (via email: Fred.Zauderer@axiscapital.com)
    D. Benfield – The Hartford Insurance Group (via email: David.Benfield@thehartford.com)

328

3

EXHIBIT 9



## LIBERTY INTERNATIONAL UNDERWRITERS

### 55 Water Street - 18th Floor
### New York, NY 10041

### PROOF OF LOSS
### CLAIM # Y N S P C 0 0 0 1 3 3 1 4 7

### INSTRUCTION FOR MAKING PROOF

Please provide a complete narrative statement of the circumstance of the loss claimed, including the individuals involved, the events giving rise to the loss and a description of the money or other property alleged to have been lost. (Attach additional sheets of paper as required.) The Statement of Loss should consist of an itemized accounting showing names, dates, amounts, and description of individual items of money, securities or property that were misappropriated, stolen or embezzled, as nearly as can be ascertained, and if representing collections made, the dates, names and addresses of the persons, firms or corporations from which the collections were made. Credits should be similarly entered in detail, as to commissions or salary due and unpaid and any securities, notes, etc., should be stated individually with full description. Attach to this Proof all original vouchers, or otherwise verified copies of same any further evidence in explanation or support of the amount or amounts for which claim is made. If other security, indemnity or surety against loss is held, list the amounts, names and addresses of the indemnities or sureties with full descriptions of same.

The undersigned makes each statement herein under oath on behalf _of the Estate of_
of _NAMCO FINANCIAL_ _EXCHANGE CORP._(Herein, the "Insured"):

1.  Claim is hereby made upon _LIBERTY MUTUAL INSURANCE CO._
    pursuant to the terms of Bond/Policy Number _F4N58750900_ for a loss sustained in the
    amount of _$35-45 million_ consisting of funds or other property described in the
    schedule submitted below, which loss was discovered by the Insured ~~on the ____ day~~ _in and_
    ~~of~~ _July_, 20 _09_ _(and continuing)._ _after_

Page 1 of 4

2. The loss is a direct result of (check and complete one):

i.  __X__  EMPLOYEE DISHONESTY (GIVE NAME OF EMPLOYEE(S))
    _EZRI NAMVAR_

ii.  _____  LOSS ON THE PREMISES (GIVE LOCATION)
    _____

iii.  _____  LOSS AWAY FROM THE PREMISES (GIVE LOCATION)
    _____

iii.  _____  FORGERY OR ALTERATION OF A NEGOTIABLE INSTRUMENT
           (COPIES OF SUCH INSTRUMENT(S) AND AFFIDAVIT OF FORGERY
           ATTACHED)

3. The loss occurred under the following circumstances:

_THE INSURED WAS A 1031 EXCHANGE ACCOMMODATOR. MR. NAMVAR_
_ACCEPTED FUNDS FROM RELINQUISHED PROPERTIES ON BEHALF OF_
_THE INSURED, BUT MISAPPROPRIATED THOSE FUNDS_

4. The loss consisted of property valued as itemized and described in the following schedule:

| Date of Loss | Owner | Quantity and Description | Approximate Date Purchased | Place Purchased | Actual Cost | Amount Claimed |
|---|---|---|---|---|---|---|
| (See attached schedule) | | | | | | |

Total: $_____
Less salary, commission, profit, etc.: $_____
Net Loss: $_____

5. The Insured has no other suretyship or insurance under which the above claim, or any part thereof, is claimable, except the following:

_EXCESS POLICIES ISSUED BY HARTFORD, AXIS AND_
_ZURICH_

6. Has there been an investigation of the loss conducted by the Insured or any third party?

Name of Investigator          Location                    Dates: _8/17/09, 11/20/09_
_MICHAEL WEISS, ESQ._         _OFFICE OF THE U.S._
                             _TRUSTEE, LOS ANGELES_

7.    Circumstances were reported to the Police Department as follows:

        Name of Police Department        Location            Date

8.    The following property has been recovered:

9.    It is understood and agreed that the furnishing of this form to the Insured, or its preparation by any representative of Liberty International, or the acceptance or retention of the proof thereafter by Liberty International shall not constitute a waiver of any of the conditions of the policy. The undersigned, being duly sworn, hereby makes this affidavit in the presence of a Notary Public

INSURED

HEIDE KURTZ, TRUSTEE

Dated: 12-16-09

By: FOR NAMCO FIN. EXCHANGE

NAME AND TITLE OF OFFICER

## AFFIDAVIT

Subscribed and sworn to before me, the undersigned, at _____

this _____, day of _____

*See attached document*

NOTARY PUBLIC

## NOTICE TO NEW YORK APPLICANTS

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim, containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

# CALIFORNIA JURAT WITH AFFIANT STATEMENT

☒ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–5 to be completed only by document signer[s], *not* Notary)

1 _____

2 _____

3 _____

4 _____

5 _____

6 _____

Signature of Document Signer No. 1          Signature of Document Signer No. 2 (if any)

State of California

County of Los Angeles

Subscribed and sworn to (or affirmed) before me on this

10th day of December, 20 09, by
Date            Month            Year

(1) Heide Kurtz
Name of Signer

proved to me on the basis of satisfactory evidence
to be the person who appeared before me (.) (,)

(and

(2) _____
Name of Signer

proved to me on the basis of satisfactory evidence
to be the person who appeared before me.)

Signature Deena Rose Dort
Signature of Notary Public

DEENA ROSE DORT
NOTARY PUBLIC - CALIFORNIA
COMMISSION # 1756966
LOS ANGELES COUNTY
My Comm. Exp. July 14, 2011

Place Notary Seal Above

─────────── **OPTIONAL** ───────────

*Though the information below is not required by law, it may prove
valuable to persons relying on the document and could prevent
fraudulent removal and reattachment of this form to another document.*

**Further Description of Any Attached Document**

Title or Type of Document: Proof of Loss

Document Date: December 16, 2009   Number of Pages: 3

Signer(s) Other Than Named Above: _____

RIGHT THUMBPRINT
OF SIGNER #1
Top of thumb here

RIGHT THUMBPRINT
OF SIGNER #2
Top of thumb here

Account Listing
November 13, 2008

| Acct | Account | Name | Amount | Date | Date |
|---|---|---|---|---|---|
| 384.38 | 300.00 · Accounts Payable:384.38 · Amel Investments, LLC | Siamak (Steve) Torkian | 447,259.90 | 03/03/08 | 07/21/08 |
| 384.62 | 300.00 · Accounts Payable:384.62 · Brickweb, LLC | George Daneshgar & David Taban | 1,554,592.58 | | |
| 384.63 | 300.00 · Accounts Payable:384.63 · Rolling Hills Capital, LLC | George Daneshgar & David Taban | 1,558,751.03 | | |
| 384.67 | 300.00 · Accounts Payable:384.67 · JRMS Family, LLC | | 372,375.00 | | |
| 384.70 | 300.00 · Accounts Payable:384.70 · Aslizadeh Family, LLC | | 57,618.75 | | |
| 384.71 | 300.00 · Accounts Payable:384.71 · J. Golshan, LLC | Joseph Golshan | 575,812.50 | | |
| 384.72 | 300.00 · Accounts Payable:384.72 · 87th Peoria, LLC | Khoshrow Zarabi | 872,378.00 | 06/21/08 | 11/03/08 |
| 384.75B | 300.00 · Accounts Payable:384.75 · Murphy 220 Land Company ...384.75B · Holly Gedlin | Holly Gedlin | 3,227,026.24 | 06/29/08 | 11/11/08 |
| 384.76 | 300.00 · Accounts Payable:384.76 · LA Crescenta Foothill Invst | Mehrdad Taharipour | 2,110,318.18 | 07/08/08 | 11/18/08 |
| 384.87 | 300.00 · Accounts Payable:384.87 · Boyle Avenue, LLC | Parham Miroo, Manager | 7,090,598.26 | 09/28/08 | 02/10/09 |
| 384.91 | 300.00 · Accounts Payable:384.91 · Sunnylane Partners, LLC | Michael Schau, Manager | 1,971,973.24 | 10/04/08 | 02/16/09 |
| 384.92 | 300.00 · Accounts Payable:384.92 · Paul and Judith Leska Family Trust | Paul & Judith Leska, Tees | 723,248.75 | 10/02/08 | 02/16/09 |
| 384.93 | 300.00 · Accounts Payable:384.93 · Crawford Living Trust | Ralph W. Crawford & Orlyn Ann Crawford, Tees | 295,676.74 | 10/31/08 | 03/24/09 |
| 3001.01 | 300.00 · Accounts Payable:3001.01 Pels Properties LLC | | 109,387.57 | | 03/15/09 |
| 500.10 | 500.00 · Accounts Payable:500.10 · Sokha & Kulwinder Bhopal | Sokha & Kulwinder Bhopal | 653,110.55 | 10/22/08 | 01/04/09 |
| 500.11 | 500.00 · Accounts Payable:500.11 · Leo & Irene Kerstin Trust No. 2 | Holly Gedlin, Tee | 17,491,859.33 | 09/13/08 | 01/26/09 |
| 7001.86 | 7000.00 · Real Tac:7001.86 · Vasquez, Ernesto & Socorro | | 742,455.33 | 05/16/08 | 09/28/08 |

39,859,449.95



September 3, 2009

Liberty International Underwriters
Commercial Crime Claims
ATTN: Carla Caliendo
55 Water Street, 18th Floor
New York, NY 10041
Phone: 212-208-9544

Via email

        RE:    Request for extension to file POL
                Insured: NAMCO Fiancial Exchange Corp.
                Policies: Liberty Mutual F14N587509001
                LIU File 4NSPC000133147

Dear Carla,

On behalf of the trustee for the insured, we would like to request an extension to file the proof of loss under the policy referenced above. The attorney for the trustee, Mr. Jonathan C. Balfus of Weiss & Spees, is in the process of collecting relevant information but given that the insured is in bankruptcy, it may take some time.

Please contact Mr. Balfus with any questions regarding this request.

Yours truly,

Betsy Carpenter

Encl.

cc:    Mr. Jonathan C. Balfus, Weiss & Spees
       Ms. Dee Studler, Studler, Doyle & Co.

# EXHIBIT 10



veiss&speesLLP

1925 Century Park East
Suite 650
Los Angeles, CA 90067-2701

Direct   (424) 245-3104
Fax      (424) 245-3199

www.weissandspees.com

Jonathan C. Balfus
Attorney at Law

jb@weissandspees.com

May 26, 2010

**VIA EMAIL**
Dee Studler
STUDLER, DOYLE & COMPANY, CPAs, LLC
1444 N. Farnsworth Ave., Suite 500
Aurora, IL 60505

Re:   Namco Financial Exchange Corporation
      Liberty Mutual Policy No.: FI4N587509001
      Bankruptcy Case No.  2:09-17727-BR

Dear Dee:

Kevin Mattessich, Esq. contacted me on May 10, 2010 and advised that he would now be
handling the investigation into the misappropriation of funds at Namco Financial Exchange
Corp. (NFE) on behalf of Liberty Mutual. I have yet to hear again from Mr. Mattessich and have
not heard from you in a while. Please tell me whether I should communicate with you or Mr.
Mattessich regarding the claims.

In any event, we have obtained little new information that might be relevant to your
investigation of NFE's claims. Since we last spoke, we subpoenaed NFE's bank records, hoping
they might shed further light on which transfers occurred during the policy period. The banks
have produced some but not all of the documents responsive to the subpoenas. That process
continues. Once completed, we will share the production with you.

Except for the 341(a) transcripts of Ezri Namvar's testimony which we already produced to you,
we have yet to speak with NFE's former employees either informally or under oath. Without
their input, our client is forced to reconstruct and assemble NFE's records from scratch. As we
continue to investigate NFE's bank records, we have become less, not more, certain as to
exactly how NFE handled exchange client funds.

As an example, in response to your inquiries regarding "the exchangers'/clients' bank
accounts," I previously wrote: "we do not know – but are of the belief – that no accounts were
established for any client." Subsequently, I reviewed application materials for commercial
crime coverage submitted by NFE's former controller, Hamid Taba. In the application Mr. Taba
indicates that proceeds from 1031 transactions were in fact held in accounts segregated from

WEISS & SPEES, LLP
Dee Studler
May 26, 2010
Page 2

NFE's operating funds.  It appears that a formal, forensic accounting study by qualified experts of all the relevant materials is necessary to be able to determine how NFE client funds were handled.

Further, it must be remembered that our client has no direct personal knowledge regarding the operations of NFE – all of which had effectively ceased months before her appointment as its trustee.   As such, and given the time frames in which to report claims under the policy, all our prior descriptions of how NFE treated client funds remain both tentative and speculative. Consequently, if not already clear from my January 8, 2010 letter and other correspondence, we reiterate that our client has previously reserved, and continues to reserve, her right to supplement, modify or change any previous responses to your inquiries if and when she acquires and develops new evidence.

Finally, we wish to reassure you, again, that we have given you all of the documents our client has regarding NFE's accounts and money handling methods, except the documents produced pursuant to the subpoenas.   Should we acquire more relevant documents, we will share them with you.

If you, Mr. Mattessich, or any other representative of the insurers have questions, please contact me.

Very truly yours,

JONATHAN C. BALFUS
OF WEISS & SPEES, LLP

CC.VIA EMAIL:

HEIDE KURTZ, CHAPTER 7 TRUSTEE
MICHAEL H. WEISS, ESQ.
CARLA CALIENDO, ESQ.
PHIL DOUGHERTY
FRED ZAUDERER
CHRIS BUTLER
MARTA DROST
REJINA GARCIA
KEVIN MATTESSICH, ESQ.

# EXHIBIT "B"



**CORPORATION SERVICE COMPANY**

# Notice of Service of Process

CZG / ALL
Transmittal Number: 8964969
Date Processed: 07/30/2011

| | |
|---|---|
| Primary Contact: | Suzanne Beaven<br>AXIS<br>11680 Great Oaks Way<br>Suite 500<br>Alpharetta, GA 30022 |
| Copy of transmittal only provided to: | Sharon Coleman<br>Frances Mathis |

| | |
|---|---|
| Entity: | AXIS Insurance Company<br>Entity ID Number  2563872 |
| Entity Served: | Axis Insurance Company |
| Title of Action: | Heide Kurtz, solely in her capacity as Chapter 7 Trustee for the Estate of Namco Financial Exchange Corp. vs. Liberty Mutual Insurance Company |
| Document(s) Type: | Summons/Complaint |
| Nature of Action: | Contract |
| Court/Agency: | Los Angeles County Superior Court, California |
| Case/Reference No: | BC463044 |
| Jurisdiction Served: | California |
| Date Served on CSC: | 07/29/2011 |
| Answer or Appearance Due: | 30 Days |
| Originally Served On: | CSC |
| How Served: | Personal Service |
| Sender Information: | Steve Schuetzc<br>909-621-4935 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

NOTICE TO DEFENDANT: LIBERTY MUTUAL INSURANCE COMPANY, a
(AVISO AL DEMANDADO): Massachusetts Corporation; ZURICH AMERICAN
INSURANCE COMPANY, a New York Corporation; AXIS INSURANCE
COMPANY, an Illinois Corporation; TWIN CITY FIRE INSURANCE COMPANY,
Additional Parties Attachment form is attached.

YOU ARE BEING SUED BY PLAINTIFF: HEIDE KURTZ, solely in her capacity
(LO ESTÁ DEMANDANDO EL DEMANDANTE): as Chapter 7 Trustee for the
Estate of NAMCO FINANCIAL EXCHANGE CORP.

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUN 07 2011

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
SHAUNYA WESLEY

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
(El nombre y dirección de la corte es):
Superior Court of California, County of Los Angeles
111 North Hill Street
Los Angeles, California 90012

CASE NUMBER:
(Número del Caso): BC 463044

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: Steve Schuetze, Esq.
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
SHERNOFF BIDART ECHEVERRIA
600 S. Indian Hill Blvd, Claremont, CA 91711                                    (909)-621-4935

DATE:                                      Clerk, by                            , Deputy
(Fecha)    JUN 07 2011            (Secretario)    Shaunya Wesley          (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).

NOTICE TO THE PERSON SERVED: You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of (specify):

3. [X] on behalf of (specify): Axis Insurance company, an Illinois
   corporation
   under: [X] CCP 416.10 (corporation)              [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)      [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
          [ ] other (specify):
4. [ ] by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

SUMMONS

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov
PRODOC®

SUM-200(A)

| SHORT TITLE: Heide Kurtz, solely in her capacity as Chapter 7 Trustee for the Estate of Namco Financial Exchange Corp. v. Liberty Mutual Insurance Company, et al. | CASE NUMBER: |
|---|---|

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff   ☒ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

a Minnesota Corporation; Does 1-100,

Page __1__ of __1__

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

ProDoc®

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Steve Schuetze, Esq.    SBN: 143778<br>SHERNOFF BIDART ECHEVERRIA    e-mail:<br>600 S. Indian Hill Blvd, Claremont, CA 91711<br>TELEPHONE NO.: (909)-621-4935 ·    FAX NO.: (909)-621-2806<br>ATTORNEY FOR (Name): Heide Kurtz | **CONFORMED COPY**<br>**OF ORIGINAL FILED**<br>Los Angeles Superior Court<br><br>**JUN 07 2011**<br><br>John A. Clarke, Executive Officer/Clerk<br>By _____, Deputy<br>SHAUNYA WESLEY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME: HEIDE KURTZ, solely in her capacity as Chapter 7 Trustee for the Estate
of NAMCO FINANCIAL EXCHANGE v. LIBERTY MUTUAL INSURANCE, et al.

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | CASE NUMBER BC 463044 |
|---|---|---|---|
| [X] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[X] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05) ·
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [ ] is [X] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [X] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [X] punitive
4. Number of causes of action (specify): 3
5. This case [ ] is [X] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: June 7, 2011
Steve Schuetze, Esq.
(TYPE OR PRINT NAME)                              ▶ (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**   ProDoc®

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

| SHORT TITLE: Heide Kurtz, solely in her capacity as Chapter 7 Trustee for the Estate of Namco Financial Exchange Corp. v. Liberty Mutual Insurance Company, et al. | CASE NUMBER | B C 4 6 3 0 4 4 |
|---|---|---|

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUN 07 2011

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
SHAUNYA WESLEY

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to LASC Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

Item I. Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL?  ☒ YES   CLASS ACTION? ☐YES   LIMITED CASE? ☐YES   TIME ESTIMATED FOR TRIAL 15  ☐ HOURS/☒ DAYS

Item II. Select the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Los Angeles Superior Court Local Rule 2.0.

| Applicable Reasons for Choosing Courthouse Location (see Column C below) |
|---|

1. Class Actions must be filed in the Stanley Mosk Courthouse, Central District.
2. May be filed in Central (Other county, or no Bodily Injury/Property Damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/ Property Damage/ Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 2. |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1., 2., 4. |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1., 2., 4. |
| | Other<br>Personal Injury<br>Property Damage<br>Wrongful Death<br>(23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1., 2., 4. |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 2., 4. |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1., 2., 3. |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |

LACIV 109 (Rev. 01/11)
LASC Draft 03-04

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 1 of 4

| | | |
|---|---|---|
| SHORT TITLE: Heide Kurtz, solely in her capacity as Chapter 7 Trustee for the Estate of Namco Financial Exchange Corp. v. Liberty Mutual Insurance Company, et al. | | CASE NUMBER |

| A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons - See Step 3 Above |
|---|---|---|
| Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 2., 3. |
| Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |
| Professional Negligence (25) | ☐ A6017  Legal Malpractice<br>☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3.<br>1., 2., 3. |
| Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2., 3. |
| Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| Other Employment (15) | ☐ A6024  Other Employment Complaint Case<br>☐ A6109  Labor Commissioner Appeals | 1., 2., 3.<br>10. |
| Breach of Contract/Warranty (06) (not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction)<br>☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence)<br>☐ A6019  Negligent Breach of Contract/Warranty (no fraud)<br>☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 2., 5.<br>2., 5.<br>1., 2., 5.<br>1., 2., 5. |
| Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff<br>☐ A6012  Other Promissory Note/Collections Case | 2., 5., 6.<br>2., 5. |
| Insurance Coverage (18) | ☒ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| Other Contract (37) | ☐ A6009  Contractual Fraud<br>☐ A6031  Tortious Interference<br>☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 5.<br>1., 2., 3., 5.<br>1., 2., 3., 8. |
| Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation       Number of parcels_____ | 2. |
| Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| Other Real Property (26) | ☐ A6018  Mortgage Foreclosure<br>☐ A6032  Quiet Title<br>☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6.<br>2., 6.<br>2., 6. |
| Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Foreclosure | 2., 6. |
| Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

| SHORT TITLE: Heide Kurtz, solely in her capacity as Chapter 7 Trustee for the Estate of Namco Financial Exchange Corp. v. Liberty Mutual Insurance Company, et al. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims<br>from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement<br>of Judgment (20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br>(43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

LACIV 109 (Rev. 01/11)

LASC Draft 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0

Page 3 of 4

| SHORT TITLE: Heide Kurtz, solely in her capacity as Chapter 7 Trustee for the Estate of Namco Financial Exchange Corp. v. Liberty Mutual Insurance Company, et al. | CASE NUMBER |
|---|---|

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER COLUMN C WHICH APPLIES IN THIS CASE<br><br>☐1. ☒2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS:<br>12121 Wilshire Boulevard, Suite 1400 | |
|---|---|---|
| CITY:<br>Los Angeles | STATE:<br>CA | ZIP CODE:<br>90025 | |

Item IV. *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the Stanley Mosk _____ courthouse in the Central _____ District of the Los Angeles Superior Court [Code Civ. Proc., § 392 et seq., and LASC Local Rule 2.0, subds. (b), (c) and (d)].

Dated: June 7, 2011 _____

(SIGNATURE OF ATTORNEY/FILING PARTY)

---

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet form CM-010.

4. Complete Addendum to Civil Case Cover Sheet form LASC Approved CIV 109 (Rev. 01/07).

5. Payment in full of the filing fee, unless fees have been waived.

6. Signed order appointing the Guardian ad Litem, JC form FL-935, if the plaintiff or petitioner is a minor under 18 years of age, or if required by Court.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE

Case Number _____

BC 463044

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

Your case is assigned for all purposes to the judicial officer indicated below (Local Rule 7.3©). There is additional information on the reverse side of this form.

| ASSIGNED JUDGE | DEPT | ROOM | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|
| Hon. Carolyn B. Kuhl | 1 | 534 | Hon. Holly E. Kendig | 42 | 416 |
| Hon. J. Stephen Czuleger | 3 | 224 | Hon. Mel Red Recana | 45 | 529 |
| Hon. Luis A. Lavin | 13 | 630 | Hon. Debre Katz Weintraub | 47 | 507 |
| Hon. Terry A. Green | 14 | 300 | Hon. Elizabeth Allen White | 48 | 506 |
| Hon. Richard Fruin | 15 | 307 | Hon. Deirdre Hill | 49 | 509 |
| Hon. Rita Miller | 16 | 306 | Hon. John Shepard Wiley Jr. | 50 | 508 |
| Hon. Richard E. Rico | 17 | 309 | Hon. Abraham Khan | 51 | 511 |
| Hon. Rex Heeseman | 19 | 311 | Hon. Susan Bryant-Deason | 52 | 510 |
| Hon. Kevin C. Brazile | 20 | 310 | Hon. John P. Shook | 53 | 513 |
| Hon. Zaven V. Sinanian | 23 | 315 | Hon. Ernest M. Hiroshige | 54 | 512 |
| Hon. Robert L. Hess | 24 | 314 | Hon. Malcolm H. Mackey | 55 | 515 |
| Hon. Mary Ann Murphy | 25 | 317 | Hon. Michael Johnson | 56 | 514 |
| Hon. James R. Dunn | 26 | 316 | Hon. Ralph W. Dau | 57 | 517 |
| Hon. Yvette M. Palazuelos | 28 | 318 | Hon. Rolf M. Treu | 58 | 516 |
| Pending Assignment | 30 | 400 | Hon. David L. Minning | 61 | 632 |
| Hon. Alan S. Rosenfield | 31 | 407 | Hon. Michael L. Stern | 62 | 600 |
| Hon. Mary H. Strobel | 32 | 406 | Hon. Kenneth R. Freeman | 64 | 601 |
| Hon. Charles F. Palmer | 33 | 409 | Hon. Mark Mooney | 68 | 617 |
| Hon. Amy D. Hogue | 34 | 408 | Hon. Ramona See | 69 | 621 |
| Hon. Daniel Buckley | 35 | 411 | Hon. Soussan G. Bruguera | 71 | 729 |
| Hon. Gregory Alarcon | 36 | 410 | Hon. Ruth Ann Kwan | 72 | 731 |
| Hon. Joanne O'Donnell | 37 | 413 | Hon. Teresa Sanchez-Gordon | 74 | 735 |
| Hon. Maureen Duffy-Lewis | 38 | 412 | Hon. William F. Fahey | 78 | 730 |
| Hon. Michael C. Solner | 39 | 415 | Hon. Emilie H. Elias* | 324 | CCW |
| Hon. Michelle R. Rosenblatt | 40 | 414 | other | | |
| Hon. Ronald M. Sohigian | 41 | 417 | | | |

*Class Actions
All class actions are initially assigned to Judge Emilie H. Elias in Department 324 of the Central Civil West Courthouse (600 S. Commonwealth Ave., Los Angeles 90005). This assignment is for the purpose of assessing whether or not the case is complex within the meaning of California Rules of Court, rule 3.400. Outcome of that assessment, the class action case may be reassigned to one of the judges of the Complex Litigation Program or reassigned randomly to a court in the Central District.

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____

JOHN A. CLARKE, Executive Officer/Clerk
By _____, Deputy Clerk

LACIV CCH 190 (Rev. 04/10)
LASC Approved 05-06

NOTICE OF CASE ASSIGNMENT –
UNLIMITED CIVIL CASE

Page 1 of 2

# INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the Chapter Seven Rules, as applicable in the Central District, are summarized for your assistance.

## APPLICATION

The Chapter Seven Rules were effective January 1, 1994.  They apply to all general civil cases.

## PRIORITY OVER OTHER RULES

The Chapter Seven Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

## CHALLENGE TO ASSIGNED JUDGE

A challenge under Code of Civil Procedure section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

## TIME STANDARDS

Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

**COMPLAINTS:** All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

**CROSS-COMPLAINTS:** Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

## FINAL STATUS CONFERENCE

The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts.  These matters may be heard and resolved at this conference.  At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

## SANCTIONS

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Seven Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Seven Rules.  Such sanctions may be on a party or if appropriate on counsel for the party.

**This is not a complete delineation of the Chapter Seven Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is absolutely imperative.**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE
[CRC 3.221 Information about Alternative Dispute Resolution]
For additional ADR information and forms visit the Court ADR web application at **www.lasuperiorcourt.org** (click on ADR).

The plaintiff shall serve a copy of this Information Package on each defendant along with the complaint (Civil only).

**What is ADR:**
Alternative Dispute Resolution (ADR) is the term used to describe all the other options available for settling a dispute which once had to be settled in court. ADR processes, such as arbitration, mediation, neutral evaluation (NE), and settlement conferences, are less formal than a court process and provide opportunities for parties to reach an agreement using a problem-solving approach.

There are many different kinds of ADR. All of them utilize a "neutral", an impartial person, to decide the case or help the parties reach an agreement.

**Mediation:**
In mediation, a neutral person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

### Cases for Which Mediation May Be Appropriate
Mediation may be particularly useful when parties have a dispute between or among family members, neighbors, or business partners. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

### Cases for Which Mediation May Not Be Appropriate
Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

**Arbitration:**
In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. *Nonbinding* arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

### Cases for Which Arbitration May Be Appropriate
Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

### Cases for Which Arbitration May Not Be Appropriate
If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

**Neutral Evaluation:**
In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

### Cases for Which Neutral Evaluation May Be Appropriate
Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

### Cases for Which Neutral Evaluation May Not Be Appropriate
Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

**Settlement Conferences:**
Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

## LOS ANGELES SUPERIOR COURT ADR PROGRAMS

CIVIL:

- **Civil Action Mediation** (Governed by Code of Civil Procedure (CCP) sections 1775-1775.15, California Rules of Court, rules 3.850-3.868 and 3.870-3.878, Evidence Code sections 1115-1128, and Los Angeles Superior Court Rules, chapter 12.)
- **Retired Judge Settlement Conference**
- **Neutral Evaluation** (Governed by Los Angeles Superior Court Rules, chapter 12.)
- **Judicial Arbitration** (Governed by Code of Civil Procedure sections 1141.10-1141.31, California Rules of Court, rules 3.810-3.830, and Los Angeles Superior Court Rules, chapter 12.)
- **Eminent Domain Mediation** (Governed by Code of Civil Procedure section 1250.420.)
- **Civil Harassment Mediation**
- **Small Claims Mediation**

FAMILY LAW (non-custody):

- **Mediation**
- **Forensic Certified Public Accountant (CPA) Settlement Conference**
- **Settlement Conference**
- **Nonbinding Arbitration** (Governed by Family Code section 2554.)

PROBATE:

- **Mediation**
- **Settlement Conference**

### NEUTRAL SELECTION

Parties may select a mediator, neutral evaluator, or arbitrator from the Court Party Select Panel or may hire someone privately, at their discretion. If the parties utilize the Random Select Mediation or Arbitration Panel, the parties will be assigned on a random basis the name of one neutral who meets the case criteria entered on the court's website.

### COURT ADR PANELS

**Party Select Panel**
The Party Select Panel consists of mediators, neutral evaluators, and arbitrators who have achieved a specified level of experience in court-connected cases. The parties (collectively) may be charged $150.00 per hour for the first three hours of hearing time. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing.

**Random Select Panel**
The Random Select Panel consists of trained mediators, neutral evaluators, and arbitrators who have not yet gained the experience to qualify for the Party Select Panel, as well as experienced neutrals who make themselves available pro bono as a way of supporting the judicial system. It is the policy of the Court that all Random Select Panel volunteer mediators, neutral evaluators, and arbitrators provide three hours hearing time per case. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing.

**Private Neutral**
The market rate for private neutrals can range from $300-$1,000 per hour.

### ADR ASSISTANCE

For assistance regarding ADR, please contact the ADR clerk at the courthouse in which your case was filed.

| COURTHOUSE | ADDRESS | ROOM | CITY | PHONE | FAX |
|---|---|---|---|---|---|
| Antonovich | 42011 4th St. West | None | Lancaster, CA 93534 | (661)974-7275 | (661)974-7060 |
| Chatsworth | 9425 Penfield Ave. | 1200 | Chatsworth, CA 91311 | (818)576-8565 | (818)576-8687 |
| Compton | 200 W. Compton Blvd. | 1002 | Compton, CA 90220 | (310)603-3072 | (310)223-0337 |
| Glendale | 600 E. Broadway | 273 | Glendale, CA 91206 | (818)500-3160 | (818)548-5470 |
| Long Beach | 415 W. Ocean Blvd. | 316 | Long Beach, CA 90802 | (562)491-6272 | (562)437-3802 |
| Norwalk | 12720 Norwalk Blvd. | 308 | Norwalk, CA 90650 | (562)807-7243 | (562)462-9019 |
| Pasadena | 300 E. Walnut St. | 109 | Pasadena, CA 91101 | (626)356-5685 | (626)666-1774 |
| Pomona | 400 Civic Center Plaza | 106 | Pomona, CA 91766 | (909)620-3183 | (909)620-6283 |
| San Pedro | 505 S. Centre | 209 | San Pedro, CA 90731 | (310)519-6151 | (310)514-0314 |
| Santa Monica | 1725 Main St. | 203 | Santa Monica, CA 90401 | (310)260-1829 | (310)319-6130 |
| Stanley Mosk | 111 N. Hill St. | 113 | Los Angeles, CA 90012 | (213)974-5425 | (213)633-5115 |
| Torrance | 825 Maple Ave. | 100 | Torrance, CA 90503 | (310)222-1701 | (310)782-7326 |
| Van Nuys | 6230 Sylmar Ave. | 418 | Van Nuys, CA 91401 | (818)374-2337 | (818)902-2440 |

Partially Funded by the Los Angeles County Dispute Resolution Program
A complete list of the County Dispute Resolution Programs is available online and upon request in the Clerk's Office

LAADR 005 (Rev. 05/09)
LASC Approved 10-03

# VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties.  The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application.  These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association
Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

**STIPULATION – EARLY ORGANIZATIONAL MEETING**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h. Computation of damages, including documents not privileged or protected from disclosure, on which such computation is based;

i. Whether the case is suitable for the Expedited Jury Trial procedures (see information at **www.lasuperiorcourt.org** under "*Civil*" and then under "*General Information*").

2. The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
   (INSERT DATE)                                    (INSERT DATE)
complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation.

3. The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____          ➤  _____
(TYPE OR PRINT NAME)                        (ATTORNEY FOR PLAINTIFF)

Date:

_____          ➤  _____
(TYPE OR PRINT NAME)                        (ATTORNEY FOR DEFENDANT)

Date:

_____          ➤  _____
(TYPE OR PRINT NAME)                        (ATTORNEY FOR DEFENDANT)

Date:

_____          ➤  _____
(TYPE OR PRINT NAME)                        (ATTORNEY FOR DEFENDANT)

Date:

_____          ➤  _____
(TYPE OR PRINT NAME)                        (ATTORNEY FOR _____)

Date:

_____          ➤  _____
(TYPE OR PRINT NAME)                        (ATTORNEY FOR _____)

Date:

_____          ➤  _____
(TYPE OR PRINT NAME)                        (ATTORNEY FOR _____)

| | | |
|---|---|---|
| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):           FAX NO. (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

    a. The party requesting the Informal Discovery Conference will:

        i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

        ii. Include a brief summary of the dispute and specify the relief requested; and

        iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

    b. Any Answer to a Request for Informal Discovery Conference must:

        i. Also be filed on the approved form (copy attached);

        ii. Include a brief summary of why the requested relief should be denied;

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

   iii.   Be filed within two (2) court days of receipt of the Request; and

   iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

**STIPULATION – DISCOVERY RESOLUTION**

SHORT TITLE:

CASE NUMBER:

**The following parties stipulate:**

Date:

_____
(TYPE OR PRINT NAME)

>

_____
(ATTORNEY FOR PLAINTIFF)

Date:

_____
(TYPE OR PRINT NAME)

>

_____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

>

_____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

>

_____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

>

(ATTORNEY FOR _____)

Date:

_____
(TYPE OR PRINT NAME)

>

(ATTORNEY FOR _____)

Date:

_____
(TYPE OR PRINT NAME)

>

(ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:      FAX NO. (Optional): | | |
| E-MAIL ADDRESS (Optional): | | |
| ATTORNEY FOR (Name): | | |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least ____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

    a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

    b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | | CASE NUMBER: |
|---|---|---|
| | | |

## The following parties stipulate:

Date:

_____          ▶ _____
(TYPE OR PRINT NAME)                                    (ATTORNEY FOR PLAINTIFF)

Date:

_____          ▶ _____
(TYPE OR PRINT NAME)                                    (ATTORNEY FOR DEFENDANT)

Date:

_____          ▶ _____
(TYPE OR PRINT NAME)                                    (ATTORNEY FOR DEFENOANT)

Date:

_____          ▶ _____
(TYPE OR PRINT NAME)                                    (ATTORNEY FOR DEFENDANT)

Date:

_____          ▶ (ATTORNEY FOR _____ )
(TYPE OR PRINT NAME)

Date:

_____          ▶ (ATTORNEY FOR _____ )
(TYPE OR PRINT NAME)

Date:

_____          ▶ (ATTORNEY FOR _____ )
(TYPE OR PRINT NAME)

## THE COURT SO ORDERS.

Date: _____          _____
                                                                                JUDICIAL OFFICER

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:                    FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:
   ☐    Request for Informal Discovery Conference
   ☐    Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue.  For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

ORIGINAL FILED

NOTICE SENT TO:

Bidart, Michael J., Esq.
Shernoff Bidart Echeverria, LLP
600 South Indian Hill Boulevard
Claremont,        CA  91711

FILE STAMP

JUL 15 2011

LOS ANGELES
SUPERIOR COURT

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

HEIDE KURTZ

Plaintiff(s),

vs.

LIBERTY MUTUAL INSURANCE COMPANY ET AL
Defendant(s).

CASE NUMBER

BC463044

### NOTICE OF CASE
### MANAGEMENT CONFERENCE

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/ attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled for  October 5, 2011  at  8:30 am  in  Dept. 74  at 111 North Hill Street, Los Angeles, California 90012.

**NOTICE TO DEFENDANT:**     **THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.**

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least **15 calendar days** prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, section 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions pursuant to LASC Local Rule 7.13, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code Section 68608 (b), and California Rules of Court 2.2 et seq.

Date: July 15, 2011

_____
Judicial Officer

## CERTIFICATE OF SERVICE

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named above:

[ ✓ ] by depositing in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed herein in a separate sealed envelope to each address as shown above with postage thereon fully prepaid.

[  ] by personally giving the party notice upon filing the complaint.

Date: July 15, 2011

John A. Clarke, Executive Officer/Clerk

**E. MORENO**

by _____, Deputy Clerk

LACIV 132 (Rev. 09/07)
LASC Approved 10-03

Cal. Rules of Court, rule 3.720-3.730
LASC Local Rules, Chapter Seven

1  MICHAEL J. BIDART #60582
2  RICARDO ECHEVERRIA #166049
   STEVEN SCHUETZE #143778
3  **SHERNOFF BIDART ECHEVERRIA LLP**
   600 South Indian Hill Boulevard
4  Claremont, CA 91711
   Telephone:   (909) 621-4935
5  Facsimile:   (909) 625-6915
6
7  Attorneys for Plaintiff HEIDE KURTZ,
   as Chapter 7 Trustee for the Estate
8  of Namco Financial Exchange Corp
9

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUN 07 2011

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
SHAUNYA WESLEY

10              SUPERIOR COURT FOR THE STATE OF CALIFORNIA
11                    FOR THE COUNTY OF LOS ANGELES
12
13  HEIDE KURTZ, solely in her capacity as      Case No.: **BC 463044**
14  Chapter 7 Trustee for the Estate of
    NAMCO FINANCIAL EXCHANGE            **COMPLAINT AND DEMAND FOR**
15  CORP.                               **JURY TRIAL:**
16                                      1.  BREACH OF THE IMPLIED
            Plaintiff,                      COVENANT OF GOOD FAITH AND
17                                          FAIR DEALING
            vs.
18                                      2.  BREACH OF CONTRACT
19  LIBERTY MUTUAL INSURANCE
    COMPANY, a Massachusetts            3.  DECLARATORY JUDGMENT
20  Corporation; ZURICH AMERICAN
    INSURANCE COMPANY, a New York
21  Corporation;  AXIS INSURANCE
    COMPANY, an Illinois Corporation;
22  TWIN CITY FIRE INSURANCE
    COMPANY, a Minnesota Corporation;
23  Does 1-100,
24
            Defendants.
25
26

27      Plaintiff HEIDE KURTZ, solely in her capacity as Chapter 7 Trustee for the Estate
28  of Namco Financial Exchange Corp., alleges:

- 1 -

COMPLAINT AND DEMAND FOR JURY

# I.

## INTRODUCTION

1.     Namco Financial Exchange Corp. ("NFE") did business for many years as a qualified 1031 exchange.  Section 1031 of the Internal Revenue Code permits sellers of investment property to defer capital gains taxes if sales proceeds are used to purchase an identified replacement investment property.

2.     On April 2, 2009, an involuntary chapter 7 petition was filed against NFE by its creditors, and on June 9, 2009 the Court entered the order for relief.  Plaintiff HEIDE KURTZ was appointed the Chapter 7 trustee on June 17, 2009.

3.     After the Court entered the order of relief on June 9, 2009 and plaintiff HEIDE KURTZ was appointed the Chapter 7 trustee, it was discovered that NFE's principal and President EZRI NAMVAR aka EZRI NAMVAR MOGHADAM ("NAMVAR") and NFE's Controller and Vice President HAMID TABATABAI ("TABATABAI") had misappropriated and converted exchange client funds totaling approximately $30-$40 million.

4.     On May 19, 2011, NAMVAR and TABATABAI were convicted in Federal Court on four charges of wire fraud for diverting $21 million from four clients without their permission.

5.     NFE had purchased a Commercial Crime Policy from LIBERTY MUTUAL INSURANCE COMPANY ("LIBERTY MUTUAL") for the policy period August 15, 2007 to August 15, 2008.  The LIBERTY MUTUAL policy provides $5,000,000 coverage for the loss of clients' funds resulting from a theft by an identified employee acting alone or in collusion with others through coverage added by endorsement identified on the declarations page as FEA Clients' Property ("Endorsement No.5").

6.     Endorsement No. 5 to the LIBERTY MUTUAL policy provides that "We will pay for loss or damage to 'money', 'security' and 'other property' sustained by 'your' client' resulting directly from 'theft' committed by an identified 'employee', acting alone or in collusion with other persons and/or 'you', any of 'your' partners or 'members'

COMPLAINT AND DEMAND FOR JURY

SHERNOFF BIDART
ECHEVERRIA™
LAWYERS FOR INSURANCE POLICYHOLDERS

1   whether acting alone or in collusion with others."   The term "theft" is defined as "the

2   unlawful taking of 'money', 'securities' or other property' to the deprivation of your

3   'client'."

4       7.      ZURICH AMERICAN INSURANCE COMPANY ("ZURICH"), AXIS

5   INSURANCE COMPANY ("AXIS"),  and TWIN CITY FIRE INSURANCE COMPANY

6   ("TWIN CITY") each provided excess coverage in $5 million additional increments for

7   total additional coverage of $15 million under the same terms and conditions set forth in

8   the LIBERTY MUTUAL policy.

9       8.      On July 2, 2009, a claim was made to each insurer by Chapter 7 trustee

10  HEIDE KURTZ for payment pursuant to the terms of the policies.  Thereafter, plaintiff

11  provided the insurers with extensive documentation and financial records supporting the

12  claims made against the insurers.  A notarized Proof of Loss was sent on December 16,

13  2009.

14      9.      Defendant Insurers LIBERTY MUTUAL, ZURICH, AXIS, and TWIN CITY

15  have unreasonably refused to comply with the terms of their policies and pay the claims

16  presented by plaintiff HEIDE KURTZ, as Chapter 7 trustee for NFE.  Plaintiff brings this

17  action against defendants LIBERTY MUTUAL, ZURICH, AXIS, and TWIN CITY for

18  breach of contract and breach of the implied covenant of good faith and fair dealing, for

19  unreasonably refusing to indemnify and pay plaintiff HEIDE KURTZ, as Chapter 7

20  trustee for NFE, for the theft of NFE's clients' money, securities, and other property.

21      10.     Plaintiff HEIDE KURTZ, as Chapter 7 trustee for NFE, also brings a cause

22  of action for declaratory relief against LIBERTY MUTUAL, ZURICH, AXIS, and TWIN

23  CITY.

24

25                              II.

26                          PARTIES

27      11.     Plaintiff HEIDE KURTZ is, and at all relevant times was, a resident of the

28  County of Los Angeles, State of California.  HEIDE Kurtz is the Chapter 7 trustee of

- 3 -
COMPLAINT AND DEMAND FOR JURY

1    NFE's bankruptcy estate.   On April 2, 2009, an involuntary chapter 7 petition was filed

2    against NFE, and on June 9, 2009 the Court entered the order for relief.   HEIDE KURTZ

3    was appointed the Chapter 7 trustee on June 17, 2009, and has standing to bring this

4    Complaint under 11 U.S.C § 323.

5         12.   Defendant LIBERTY MUTUAL is, and at all relevant times was, a

6    Massachusetts corporation with its principal place of business located at 175 Berkeley

7    St., Boston, Massachusetts, 02116.   LIBERTY MUTUAL is authorized to transact in the

8    business of insurance in the State of California.

9         13.   Defendant ZURICH is, and at all relevant times was, a New York

10   corporation, with its principal place of business located at 1400 American Lane,

11   Schaumburg, Illinois  60196.   ZURICH is authorized to transact in the business of

12   insurance in the State of California.

13        14.   Defendant AXIS is, and at all relevant times was, an Illinois corporation

14   with its principal place of business located at 11680 Great Oaks Way, Ste. 500,

15   Alphretta, Georgia 30022.   AXIS is authorized to transact in the business of insurance in

16   the State of California.

17        15.   Defendant TWIN CITY is, and at all relevant times was, a Minnesota

18   corporation, with its principal place of business located at One Hartford Plaza, HO-1-09,

19   Hartford, Connecticut.   TWIN CITY is authorized to transact in the business of insurance

20   in the State of California.

21        16.   The true names or capacities, whether individual, corporate, associate, or

22   otherwise, of defendants DOES 1 through 100, inclusive, are unknown to plaintiff, who

23   therefore sues said defendants by such fictitious names.   Plaintiff is informed and

24   believes and thereon alleges that each of the defendants sued herein as a DOE is

25   legally responsible in some manner for the events and happenings referred to herein.

26   Plaintiff will ask leave of this court to amend this complaint to insert their true names

27   and capacities in place and instead of the fictitious names when the same become

28   known.

SHERNOFF BIDART
ECHEVERRIA™
LAWYERS FOR INSURANCE POLICYHOLDERS

III.

**POLICIES**

17.     NFE purchased and paid all the premiums for a LIBERTY MUTUAL policy, Policy No. F14N587509001, for policy period August 15, 2007 to August 15, 2008.   The policy provides for insuring agreements for Employee Theft coverage at $5,000,000, and also added by endorsement additional coverage for FEA Clients' Property at $5,000,000.  A true and correct copy of the LIBERTY MUTUAL policy is attached as **Exhibit 1 [Declarations Page, Page 1 of 2].**

18.     The Insuring Agreement for "Employee Theft" provides "We will pay for loss of or damage to 'money', 'securities' and 'other property' resulting directly from 'theft' committed by an 'employee', whether identified or not, acting alone or in collusion with other persons." **[Exhibit 1, Liberty Mutual Policy, Page 1 of 20, ¶ A.1]** "Theft" for purposes of "employee theft coverage" is defined in the policy as "the unlawful taking of property to the deprivation of the Insured."  **[Exhibit 1, Liberty Mutual Policy, Page 20 of 20, ¶ F.20]**

19.     The LIBERTY MUTUAL policy also added Endorsement No. 5 to the policy.  Endorsement No. 5 is titled "Federation of Exchange Accommodators – Fidelity Bond Clients' Property Insuring Agreement."   Endorsement 5 adds the following as an additional Section A Insuring Agreement regarding Clients' Property.

We will pay for loss or damage to "money", "security" and "other property" sustained by "your" "client"  resulting directly from 'theft' committed by an identified "employee", acting alone or in collusion with other persons and/or "you", any or "your" partners or "members" whether acting alone or in collusion with others.

20.     Endorsement No. 5 further sets forth that "[t]he property covered under this Insuring Agreement is: a.  Limited to property which is held in a financial institution account in a transaction involving 'you' as a qualified intermediary for a tax-deferred

SHERNOFF BIDART
ECHEVERRIA™
LAWYERS FOR INSURANCE POLICYHOLDERS

1    exchange of property intended to qualify under Internal Revenue Code 1031." **[Exhibit**

2    **1, Liberty Mutual Policy, Endorsement  5, Page 1 of 2, ¶ C.2.a.]**

3         21.    Endorsement No. 5 also contains the following definitions applicable to the

4    Insuring Agreement, FEA Clients' Property:

5             a.    "Client" means any party for whom you perform services under a

6             written contract.

7             b.    "Theft" means the unlawful taking of "money", "securities" or "other

8             property" to the deprivation of your "client".

9             c.    "You" and "your" refers to the Named Insured shown in the

10            Declarations and/or any natural person who is an owner of the Named

11            Insured.

12    **[Exhibit 1, Liberty Mutual Policy, Endorsement  5, ¶ D]**

13         22.    While the "employee theft" endorsement provides coverage for the

14    unlawful taking of property to the deprivation of the **Insured**, Endorsement No. 5

15    provides coverage for the unlawful taking of property to the deprivation of **clients**.

16         23.    The LIBERTY MUTUAL policy also contains Endorsement 4 titled

17    Federation of Exchange Accommodators-Fidelity Bond Conditions Precedent to

18    Liability.  It states "6.    As respect to Insuring Agreement 1 and Clients' Property, there

19    will be no 'employee theft' coverage involving a transaction intended to qualify as a tax

20    deferred exchange of property under Internal Revenue Code 1031 unless the following

21    internal control requirements were complied with at the time the 'employee theft'

22    occurred . . ." **[Exhibit 1, Liberty Mutual Policy, Endorsement  4, ¶ 6]**

23         24.    "Employee theft coverage" is specifically enumerated as a separate

24    coverage under the insuring agreements of the policy from the Client Funds coverage

25    provided for Clients Funds under Endorsement No. 5.  By its express terms,

26    Endorsement No. 4 expressly states there is "<u>no 'employee theft' coverage</u>", which is

27    the distinct coverage identified as Insuring Agreement 1 on the Declarations Page and

28    provided under Insuring Agreement A.1 in the Policy.  "Employee theft coverage" is a

1    distinct coverage from the "Clients' Property" coverage provided by Endorsement No. 5.

2    Endorsement 4 by its terms does not limit and state there would be no "FEA Clients'

3    Property" coverage as outlined in Endorsement No. 5 if all the conditions in

4    Endorsement 4 were not met.

5         25.    Endorsement 4 sets forth the following internal control requirements to be

6    complied with as a condition of coverage for "employee theft":

7         "a.     A written contract was in effect between you and each

8            exchange/client stipulating the manner in which relinquished 'money',

9            'securities', and 'other property' will be held and subsequently released by

10          you for use in acquiring replacement property.

11         b.     The relinquished 'money', 'securities' and 'other property' of each

12           related exchange transaction were held in a financial institution account

13           segregated from your operating funds.

14         c.     Each related exchange transaction was identified by a unique file

15           number or similar identifier.

16         d.     Countersignature was required to authorize release of all 'money',

17           'securities' and 'other property' or a monthly reconciliation of all accounts

18           involving exchange transaction proceeds was performed within two weeks

19           of receipt of the account statement. Additionally, reconciliations were

20           performed by an 'employee' not authorized to deposit, withdraw or transfer

21           funds from the account, or were reviewed by an outside bookkeeper or an

22           outside CPA."

23    **[Exhibit 1, Liberty Mutual Policy, Endorsement 4, ¶ 6, a-d]**

24         26.     ZURICH issued an Excess Policy of $5,000,000 to NFE, Policy Number

25    FID 9158508 for the policy term period of August 15, 2007 to August 15, 2008. The

26    ZURICH Policy is in excess of the LIBERTY MUTUAL policy. The ZURICH Excess

27    Policy is a so called "following form" policy, and as such, provides the same coverage

28    terms and conditions as the underlying LIBERTY MUTUAL Policies. Upon exhaustion

SHERNOFF BIDART ECHEVERRIA
LAWYERS FOR INSURANCE POLICYHOLDERS

1   of the Underlying Limits of the LIBERTY MUTUAL policy, ZURICH'S coverage is subject

2   to the same warranties, limitations, conditions, provisions, and other terms of the

3   LIBERTY MUTUAL policy.  A true and correct copy of the ZURICH policy is attached as

4   **Exhibit 2.**

5       27.   AXIS issued an Excess Policy of $5,000,000 to NFE, Policy Number MNN

6   734622/01/2007 for the policy term period of August 15, 2007 to August 15, 2008.  The

7   AXIS Policy is in excess of the LIBERTY MUTUAL policy and the ZURICH excess

8   policy.  Upon exhaustion of the Underlying Limits of the LIBERTY MUTUAL policy and

9   ZURICH's policy, AXIS' coverage is subject to the same warranties, limitations,

10  conditions, provisions, and other terms of the LIBERTY MUTUAL policy.  A true and

11  correct copy of the AXIS policy is attached as **Exhibit 3.**

12      28.   TWIN CITY issued an Excess Policy of $5,000,000 to NFE, Policy Number

13  00 FA 0245357-07 for the policy term period of August 15, 2007 to August 15, 2008.

14  The TWIN CITY Policy is in excess of the LIBERTY MUTUAL policy and the ZURICH

15  excess policy and the AXIS excess policy.  Upon exhaustion of the Underlying Limits of

16  the LIBERTY MUTUAL policy and ZURICH's policy and the AXIS policy, TWIN CITY'S

17  coverage is subject to the same warranties, limitations, conditions, provisions, and other

18  terms of the LIBERTY MUTUAL policy.  A true and correct copy of the TWIN CITY

19  policy is attached as **Exhibit 4.**

20

21                              **IV.**

22                    **FACTUAL ALLEGATIONS**

23      29.   Section 1031 of the Internal Revenue Code permits owners of investment

24  property to defer the capital gains tax that would otherwise be due and owing upon the

25  sale of the investment property by applying, within a set time frame, the sale proceeds

26  to the purchase of an identified replacement investment property or properties.  These

27  transactions are known as a 1031 exchange.

28

SHERNOFF BIDART
ECHEVERRIA"
LAWYERS FOR INSURANCE POLICYHOLDERS

30.     In a typical 1031 exchange, the owner of an investment property would assign the owner's interest in the investment property to a "qualified intermediary" before the planned sale of the investment property.  The qualified intermediary would convey the investment property to the buyer, who would deposit the sale proceeds into a bank account of the qualified intermediary.  The owner of the investment property would have 45 days to identify for the qualified intermediary a like-kind replacement, and 180 days to close on the purchase of the replacement property.  The funds deposited into the bank account of the qualified intermediary would be used to fund the purchase of replacement property, returning any unused funds to the owner.

31.     NFE held itself as a qualified intermediary, and pursuant to written exchange agreements received it would hold clients' funds in accounts where the funds were supposed to be available to the clients for purchase of replacement properties, or return to the client.

32.     Each exchange client was assigned a unique file number.

33.     During the policy periods of the LIBERTY MUTUAL policy and the excess policies, numerous clients entered into 1031 transactions with NFE and exchange funds were deposited in NFE accounts to be held until replacement properties were identified.

34.     During the policy period, the relinquished moneys of each related exchange transaction were held in separate accounts from NFE's operating funds.  It is unclear whether or not this was done on a consistent basis for all funds.

35.     Bank signature cards demonstrate that EZRI NAMVAR and other persons were authorized signatories.  Based on information and belief, countersignatures were required on written instruments to authorize release of money, securities and other property.

36.     Monthly reconciliations were performed by employee HAMID TABATABAI, who was not authorized to deposit, withdraw or transfer funds from the account.

37.     During the policy periods, EZRI NAMVAR, in collusion with HAMID TABATABAI, used, misappropriated and converted the clients' funds for purposes other

SHERNOFF BIDART
ECHEVERRIA™
LAWYERS FOR INSURANCE POLICYHOLDERS

1   than the intended use of a 1031 exchange to purchase replacement properties.  In

2   some instances clients' funds were used to purchase other real property or assets not

3   on behalf of the particular client whose funds were used, or transferred to persons or

4   employees other than client.

5        38.    As a result of the misappropriation and theft by NAMVAR and

6   TABATABAI, approximately $35-$45 million in clients' funds have been identified as

7   lost.

8        39.    On July 2, 2009, plaintiff HEIDE KURTZ, Chapter 7 Trustee, submitted a

9   claim to defendants LIBERTY MUTUAL, ZURICH, AXIS, and TWIN FALL (sent to

10   Hartford) under the applicable policies.  Attached as **Exhibit 5** are true and correct

11   copies of the claims that were submitted on July 2, 2009.

12        40.    Beginning in September 2009, the insurers began investigating the claim

13   and communicating through Dee Studler ("Studler") of Studler, Doyle & Company, LLC.

14   Attached as **Exhibit 6** is a true and correct copy of a September 11, 2009 letter

15   requesting certain information.

16        41.    On November 4, 2009, four flash drives were sent to Studler by Weiss &

17   Spees, attorneys for the Chapter 7 Trustee, containing all the records of NFE, including

18   the records pertaining to the 1031 transactions on which NFE's claim was based. .

19   Attached as **Exhibit 7** is a true and correct copy of the November 4, 2009 letter.

20        42.    LIBERTY MUTUAL, through its agent Studler, granted an extension to the

21   Trustee to file a Proof of Loss on or before March 3, 2010.  Attached as **Exhibit 8** is a

22   true and correct copy of the letter dated December 17, 2009 confirming the extension to

23   file a Proof of Loss.

24        43.    On or about December 16, 2009 a notarized Proof of Loss was submitted

25   to Liberty International Underwriters submitting a loss in the amount of $35-$45 million.

26   Attached as **Exhibit 9** is a true and correct copy of the Proof of Loss.

27        44.    There were some communications with the insurers' investigator Studler

28   by Weiss & Spees in January, 2010.



COMPLAINT AND DEMAND FOR JURY

45.   On May 10, 2010, Kevin Mattessich, Esq. contacted by phone Jonathan Balfus of Weiss & Spees advising he would be handling the investigation of the misappropriation of NFE on behalf of Liberty Mutual.

46.   On May 26, 2010, correspondence was sent to Studler by Jonathan Balfus memorializing the conversation with Mr. Mattessich, and inquiring who would be handling the claim for purposes of future communications and investigation.  Attached as **Exhibit 10** is a true and correct copy of the May 26, 2010 letter.

47.   The carriers and its investigators have failed to have any communications with Plaintiff Chapter 7 Trustee and her representatives since May, 2010 when it was stated that the insurers were continuing to investigate the claims.

48.   To date, no coverage position has ever been stated by or on behalf of the carriers either accepting or denying the claim.

49.   NFE is defunct and no longer has any employees.

50.   On May 19, 2011, EZRI NAMVAR and HAMID TABATABAI were convicted of four wire fraud charges for diverting clients' funds without their permission.



## **FIRST CAUSE OF ACTION**

### **(BREACH OF CONTRACT)**

PLAINTIFF HEIDE KURTZ, CHAPTER 7 TRUSTEE, FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT, LIBERTY MUTUAL INSURANCE COMPANY, ZURICH AMERICAN INSURANCE COMPANY ("ZURICH"), AXIS INSURANCE COMPANY ("AXIS"), and TWIN CITY FIRE INSURANCE COMPANY AND DOES 1 THROUGH 100, FOR BREACH OF CONTRACT, ALLEGES:

51.   Plaintiff HEIDE Kurtz, Chapter 7 Trustee, refers to each and every preceding paragraph and Incorporates those paragraphs as though set forth in full in this cause of action.

52.   Defendants LIBERTY MUTUAL, ZURICH, AXIS, and TWIN CITY, and Does 1-100 owed duties and obligations to plaintiff under the policy.  Specifically,

1   Endorsement No. 5 stated payment would be made for loss or damage sustained by

2   "'your' 'client' resulting directly from 'theft' committed by an identified 'employee', acting

3   alone or in collusions with other persons and/or 'you', any of 'your' partners or

4   'members' whether acting alone or in collusion with others.".

5        53.    The conduct of NAMVAR and TABATABAI constituted a "theft" of client's

6   property as defined by Endorsement No. 5 and constitute a covered claim for which

7   payment pursuant to the policies is required to be made to plaintiff

8        54.    The total amount of client funds covered by Endorsement No. 5 exceeds

9   the limits of the LIBERTY MUTUAL policy and the excess policies of ZURICH, AXIS,

10  and TWIN CITY.

11       55.    Defendant breached the terms and provisions of the insurance policy by

12  failing to indemnify plaintiff from the theft losses incurred and covered under the Policy.

13       56.    Plaintiff has complied with all of the terms and conditions of the LIBERTY

14  MUTUAL policy, including payment of all premiums due and any other costs and all

15  conditions associated with the LIBERTY MUTUAL policy.

16       57.    Plaintiff has complied with all of the terms and conditions of the ZURICH,

17  AXIS, and TWIN CITY policies, including payment of all premiums due and any other

18  costs and all conditions associated with the excess policies.

19       58.    As a direct and proximate result of defendant's conduct and breach of its

20  contractual obligations, plaintiff has suffered damages under the policies in an amount

21  to be determined according to proof at the time of trial.

22

23                           **SECOND CAUSE OF ACTION**

24       **(BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)**

25  PLAINTIFF, HEIDE KURTZ, CHAPTER 7 TRUSTEE, FOR A SECOND CAUSE

26  OF ACTION AGAINST DEFENDANT, LIBERTY MUTUAL INSURANCE COMPANY, ,

27  ZURICH AMERICAN INSURANCE COMPANY ("ZURICH"), AXIS INSURANCE

28  COMPANY ("AXIS"), and TWIN CITY FIRE INSURANCE COMPANY AND DOES 1

SHERNOFF BIDART ECHEVERRIA"
LAWYERS FOR INSURANCE POLICYHOLDERS

1  THROUGH 100, FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND

2  FAIR DEALING, ALLEGES:

3      59.    Plaintiff HEIDE Kurtz, Chapter 7 Trustee, refers to each and every

4  preceding paragraph and incorporates those paragraphs as though set forth in full in

5  this cause of action.

6      60.    Defendants, and each of them, have breached their duty of good faith and

7  fair dealing owed to plaintiff in the following respects:

8          (a)    Unreasonably failing to give at least as much consideration to the

9                 interests of Plaintiff as they gave to their own interests;

10         (b)    Unreasonably failing to conduct a full, fair, and thorough

11                investigation of all of the bases of Plaintiff's submitted claims;

12         (c)    Unreasonably delaying payment of benefits under the Policies

13                issued to NFE, at a time when defendants knew that the Plaintiff

14                was entitled to such benefits under the terms of the Policies;

15         (d)    Unreasonably withholding benefits from the Plaintiff, knowing that

16                Plaintiff's claims for benefits under the Policies to be valid;

17         (e)    Unreasonably refusing to communicate with plaintiff, and failing to

18                advise plaintiff of any coverage position;

19         (f)    Unreasonably failing to affirmatively search for evidence which

20                would support coverage; and

21         (g)    Unreasonably requiring Plaintiffs to file suit to obtain the Policies'

22                benefits owed; and

23     61.    As a proximate result of the unreasonable and bad faith conduct of

24  defendants, Plaintiffs were compelled to retain legal counsel to obtain the benefits due

25  under the Policies.  Therefore, defendants are liable to Plaintiffs for those attorneys'

26  fees reasonably necessary, incurred and/or paid by Plaintiffs in order to obtain benefits

27  under the Policies in a sum to be determined at the time of trial.

28



SHERNOFF BIDART ECHEVERRIA™
LAWYERS FOR INSURANCE POLICYHOLDERS

1      62.    As a further proximate cause of the unreasonable and bad faith conduct of

2   defendants, Plaintiffs have suffered other consequential economic damages in a sum to

3   be determined at the time of trial.

4      63.    Defendants' conduct described herein was carried out with a conscious

5   disregard of Plaintiffs' rights and interests under the policies.  Defendants acted willfully

6   to deprive Plaintiffs of policy benefits in favor of defendants' own financial interests.

7      64.    Defendants' conduct described herein was undertaken by the corporate

8   officers or managing agents of defendants, who were responsible for claims supervision

9   and operation, underwriting, communications and/or decisions.  The aforementioned

10   conduct of these managing agents and individuals was therefore undertaken on behalf

11   of defendants.   Plaintiffs allege on information and belief that defendants had advance

12   knowledge of the actions and conduct of these individuals, and that their actions and

13   conduct were ratified, authorized, and approved by managing agents whose precise

14   identities are unknown to Plaintiffs at this time.  Defendants' unreasonable and bad faith

15   conduct is the legal cause of the substantial harm and damages suffered by Plaintiffs.

16

17                          **THIRD CAUSE OF ACTION**

18                             **(DECLARATORY RELIEF)**

19      PLAINTIFF, HEIDE KURTZ, CHAPTER 7 TRUSTEE, FOR A SECOND CAUSE

20   OF ACTION AGAINST DEFENDANT, LIBERTY MUTUAL INSURANCE COMPANY,

21   ZURICH AMERICAN INSURANCE COMPANY ("ZURICH"), AXIS INSURANCE

22   COMPANY ("AXIS"),  and TWIN CITY FIRE INSURANCE COMPANY AND DOES 1

23   THROUGH 100, FOR DECLARATORY RELIEF, ALLEGES:

24      65.    Plaintiff HEIDE Kurtz, Chapter 7 Trustee, refers to each and every

25   preceding paragraph and incorporates those paragraphs as though set forth in full in

26   this cause of action.

27      66.    A present and actual controversy between plaintiff and defendants exists

28   in that defendants' refusal to indemnify plaintiff for the loss of client funds pursuant to

SHERNOFF BIDART
ECHEVERRIA*
LAWYERS FOR INSURANCE POLICYHOLDERS

1   the terms of Endorsement No. 5 and each of the policies described herein compelled

2   plaintiff to obtain counsel to represent it to obtain the benefits due under the Policy.

3      67.   Plaintiff requests a declaration from this Court that the defendants have an

4   obligation to reimburse plaintiff for clients' funds which were lost for the period of the

5   policy pursuant to the terms of Endorsement No. 5 occasioned by the thefts described

6   herein in addition to attorney fees incurred and/or paid by plaintiff in order to obtain

7   benefits under the policies.

8

9                         **PRAYER FOR RELIEF**

10      **WHEREFORE,** Plaintiff HEIDE Kurtz, Chapter 7 Trustee For The Estate of

11   Namco Financial Exchange Corp., prays for judgment against defendants as follows:

12      1.   Damages under the LIBERTY MUTUAL, ZURICH, AXIS, and TWIN CITY

13   Polices for failure to indemnify for the losses suffered by the plaintiff;

14      2.   For all economic damages proximately caused by defendant's conduct;

15      3.   For reasonable attorney's fees, witness fees, and costs of litigation

16   incurred and/or paid by the plaintiff to obtain the Policy benefits in an amount to be

17   determined at trial;

18      4.   Punitive and exemplary damages in an amount appropriate to punish or

19   set an example of defendants;

20      5.   For costs of suit incurred herein;

21      6.   For a declaration of rights and obligations of the parties under the Policies;

22   and

23      7.   For such other and further relief as the Court deems just and proper.

24   Date: June 7, 2011          SHERNOFF BIDART ECHEVERRIA LLP

25

26                          By _____

27                              MICHAEL J. BIDART
                                RICARDO ECHEVERRIA
28                              STEVEN SCHUETZE
                                Attorneys for Plaintiff



SHERNOFF BIDART
ECHEVERRIA™
LAWYERS FOR INSURANCE POLICYHOLDERS

- 15 -

1

2  **DEMAND FOR JURY TRIAL**

3  Plaintiff hereby demands a trial by jury.

4

5  Date: June 7, 2011          SHERNOFF BIDART ECHEVERRIA LLP

6

7  By_____

8  MICHAEL J. BIDART
   RICARDO ECHEVERRIA
9  STEVEN SCHUETZE
   Attorneys for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

## LIBERTY INTERNATIONAL UNDERWRITERS

## COMMERCIAL CRIME POLICY





# Commercial Crime Policy

## LIBERTY MUTUAL INSURANCE COMPANY

(A Mutual Insurance Company, hereinafter called the Company)

### DECLARATIONS

In Return For The Payment Of The Premium, And Subject To All The Terms And Conditions Of This Policy, We Agree With You To Provide The Insurance As Stated In This Policy.

| COMPANY NAME AREA | PRODUCERS NAME AREA |
|---|---|
| Liberty Mutual Insurance Company | Lockton Companies LLC |

**NAMED INSURED:** NAMCO Financial Exchange Corp.
(Also list any Employee Benefit Plan(s) included as Insureds)

**MAILING ADDRESS:** 12121 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025

**POLICY PERIOD:** August 15, 2007   to   August 15, 2008
(12:01 A.M. at your Mailing Address shown above)

**POLICY NUMBER:** FI4N587509001

## INSURING AGREEMENTS, LIMITS OF INSURANCE AND DEDUCTIBLE

| INSURING AGREEMENTS | LIMIT OF INSURANCE Per Occurrence | DEDUCTIBLE AMOUNT Per Occurrence |
|---|---|---|
| 1. Employee Theft | $5,000,000 | $25,000 |
| 2. Forgery Or Alteration | Not Covered | Nil |
| 3. Inside The Premises – Theft Of Money And Securities | Not Covered | Nil |
| 4. Inside The Premises – Robbery Or Safe Burglary Of Other Property | Not Covered | Nil |
| 5. Outside The Premises | Not Covered | Nil |
| 6. Computer Fraud | Not Covered | Nil |
| 7. Funds Transfer Fraud | Not Covered | Nil |
| 8. Money Orders And Counterfeit Paper Currency | Not Covered | Nil |
| If Added by Endorsement, Insuring Agreement(s): | | |
| FEA Clients' Property | $5,000,000 | $25,000 |

**2**

CR DS 02 07 02

© ISO Properties, Inc., 2001



# Commercial Crime Policy

If "Not Covered" is inserted above opposite any specified Insuring Agreement, such Insuring Agreement and any other reference thereto in this policy is deleted.

**ENDORSEMENTS FORMING PART OF THIS POLICY WHEN ISSUED:**
Notice Endorsement, Notice of Membership in Liberty Mutual Holding Company Inc. and Notice of Annual Meeting, California Changes CR 02 49 11 04,Loss Payable CR 20 14 03 00,Federation Of Exchange Accommodators Amend Consolidation-Merger Or Acquisition,Federation Of Exchange Accommodators Conditions Precedent To Liability, Federation Of Exchange Accommodators Clients' Property, Federation Of Exchange AccommodatorsOmnibus Named Insured

**CANCELLATION OF PRIOR INSURANCE ISSUED BY US:**

By acceptance of this Policy you give us notice cancelling prior policy Nos.   N/A
the cancellation to be effective at the time this Policy becomes effective.

9/28/2007

Countersigned Date:

By Authorized Representative

CR DS 02 07 02

© ISO Properties, Inc., 2001



**Commercial Crime Policy**

## LIBERTY MUTUAL INSURANCE COMPANY
(A Mutual Insurance Company, hereinafter called the Company)

### LOSS SUSTAINED FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is or is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section F. Definitions.

A.  **Insuring Agreements**

Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the Declarations and applies to loss that you sustain resulting directly from an "occurrence" taking place during the Policy Period shown in the Declarations, except as provided in Condition E.1.o. or E.1.p., which is "discovered" by you during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period To Discover Loss Condition E.1.j.:

1.  **Employee Theft**

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

For the purposes of this Insuring Agreement, "theft" shall also include forgery.

2.  **Forgery Or Alteration**

a.  We will pay for loss resulting directly from "forgery" or alteration of checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in "money" that are:

(1)  Made or drawn by or drawn upon you; or

(2)  Made or drawn by one acting as your agent;

or that are purported to have been so made or drawn.

For the purposes of this Insuring Agreement, a substitute check as defined in the Check Clearing for the 21st Century Act shall be treated the same as the original it replaced.

b.  If you are sued for refusing to pay any instrument covered in Paragraph 2.a., on the basis that it has been forged or altered, and you have not written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in that defense. The amount that we will pay is in addition to the Limit of Insurance applicable to this Insuring Agreement.

3.  **Inside The Premises — Theft Of Money And Securities**

a.  We will pay for loss of "money" and "securities" inside the "premises" or "banking premises":

(1)  Resulting directly from "theft" committed by a person present inside such "premises" or "banking premises"; or

(2)  Resulting directly from disappearance or destruction.

CR 00 23 05 06                                                                © ISO Properties, Inc., 2005



## Commercial Crime Policy

   b.  We will pay for loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "theft" of "money" and "securities", if you are the owner of the "premises" or are liable for damage to it.

   c.  We will pay for loss of or damage to a locked safe, vault, cash register, cash box or cash drawer located inside the "premises" resulting directly from an actual or attempted "theft" of or unlawful entry into those containers.

**4.  Inside The Premises – Robbery Or Safe Burglary Of Other Property**

   a.  We will pay for loss of or damage to "other property":

     (1)  Inside the "premises" resulting directly from an actual or attempted "robbery" of a "custodian"; or

     (2)  Inside the "premises" in a safe or vault resulting directly from an actual or attempted "safe burglary".

   b.  We will pay for loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "robbery" or "safe burglary" of "other property", if you are the owner of the "premises" or are liable for damage to it.

   c.  We will pay for loss of or damage to a locked safe or vault located inside the "premises" resulting directly from an actual or attempted "robbery" or "safe burglary".

**5.  Outside The Premises**

   a.  We will pay for loss of "money" and "securities" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from "theft", disappearance or destruction.

   b.  We will pay for loss of or damage to "other property" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from an actual or attempted "robbery".

**6.  Computer Fraud**

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from the use of any computer to fraudulently cause a transfer of that property from inside the "premises" or "banking premises":

   a.  To a person (other than a "messenger") outside those "premises"; or

   b.  To a place outside those "premises".

**7.  Funds Transfer Fraud**

We will pay for loss of "funds" resulting directly from a "fraudulent instruction" directing a financial institution to transfer, pay or deliver "funds" from your "transfer account".

**8.  Money Orders And Counterfeit Money**

We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

   a.  Money orders issued by any post office, express company or bank that are not paid upon presentation; or

   b.  "Counterfeit money" that is acquired during the regular course of business.

CR 00 23 05 06

© ISO Properties, Inc., 2005

**Liberty**
**International**
**Underwriters.**
Member of Liberty Mutual Group

# Commercial Crime Policy

**B. Limit Of Insurance**

The most we will pay for all loss resulting directly from an "occurrence" is the applicable Limit of Insurance shown in the Declarations.

If any loss is covered under more than one Insuring Agreement or Coverage, the most we will pay for such loss shall not exceed the largest Limit of Insurance available under any one of those Insuring Agreements or Coverages.

**C. Deductible**

We will not pay for loss resulting directly from an "occurrence" unless the amount of loss exceeds the Deductible Amount shown in the Declarations. We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance.

**D. Exclusions**

1.  This policy does not cover:

    a.  **Acts Committed By You, Your Partners Or Your Members**

        Loss resulting from "theft" or any other dishonest act committed by:

        (1) You; or

        (2) Any of your partners or "members";

        whether acting alone or in collusion with other persons.

    b.  **Acts Of Employees Learned Of By You Prior To The Policy Period**

        Loss caused by an "employee" if the "employee" had also committed "theft" or any other dishonest act prior to the effective date of this policy and you or any of your partners, "members", "managers", officers, directors or trustees, not in collusion with the "employee", learned of that "theft" or dishonest act prior to the Policy Period shown in the Declarations.

    c.  **Acts Of Employees, Managers, Directors, Trustees Or Representatives**

        Loss resulting from "theft" or any other dishonest act committed by any of your "employees", "managers", directors, trustees or authorized representatives:

        (1) Whether acting alone or in collusion with other persons; or

        (2) While performing services for you or otherwise;

        except when covered under Insuring Agreement A.1.

    d.  **Confidential Information**

        Loss resulting from:

        (1) The unauthorized disclosure of your confidential information including, but not limited to, patents, trade secrets, processing methods or customer lists; or

        (2) The unauthorized use or disclosure of confidential information of another person or entity which is held by you including, but not limited to, financial information, personal information, credit card information or similar non-public information.

    e.  **Governmental Action**

        Loss resulting from seizure or destruction of property by order of governmental authority.

| 3 | 20 |
|---|---|

CR 00 23 05 06

© ISO Properties, Inc., 2005



**Liberty International Underwriters**™
Member of Liberty Mutual Group

# Commercial Crime Policy

    **f.**   **Indirect Loss**

Loss that is an indirect result of an "occurrence" covered by this policy including, but not limited to, loss resulting from:

    **(1)** Your inability to realize income that you would have realized had there been no loss of or damage to "money", "securities" or "other property".

    **(2)** Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this policy.

    **(3)** Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this policy.

    **g.**   **Legal Fees, Costs And Expenses**

Fees, costs and expenses incurred by you which are related to any legal action, except when covered under Insuring Agreement A.2.

    **h.**   **Nuclear Hazard**

Loss or damage resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

    **i.**   **Pollution**

Loss or damage caused by or resulting from pollution. Pollution means the discharge, dispersal, seepage, migration, release or escape of any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

    **j.**   **War And Military Action**

Loss or damage resulting from:

    **(1)** War, including undeclared or civil war;

    **(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    **(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**2.**  Insuring Agreement A.1. does not cover:

    **a.**   **Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

    **(1)** An inventory computation; or

    **(2)** A profit and loss computation.

However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

**20**

CR 00 23 05 06

© ISO Properties, Inc., 2005

# Commercial Crime Policy

**Liberty International Underwriters**
Member of Liberty Mutual Group

**b. Trading**

Loss resulting from trading, whether in your name or in a genuine or fictitious account.

**c. Warehouse Receipts**

Loss resulting from the fraudulent or dishonest signing, issuing, cancelling or failing to cancel, a warehouse receipt or any papers connected with it.

3. Insuring Agreements A.3., A.4. and A.5. do not cover:

**a. Accounting Or Arithmetical Errors Or Omissions**

Loss resulting from accounting or arithmetical errors or omissions.

**b. Exchanges Or Purchases**

Loss resulting from the giving or surrendering of property in any exchange or purchase.

**c. Fire**

Loss or damage resulting from fire, however caused, except:

(1) Loss of or damage to "money" and "securities"; and

(2) Loss from damage to a safe or vault.

**d. Money Operated Devices**

Loss of property contained in any money operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

**e. Motor Vehicles Or Equipment And Accessories**

Loss of or damage to motor vehicles, trailers or semi-trailers or equipment and accessories attached to them.

**f. Transfer Or Surrender Of Property**

(1) Loss of or damage to property after it has been transferred or surrendered to a person or place outside the "premises" or "banking premises":

(a) On the basis of unauthorized instructions;

(b) As a result of a threat to do bodily harm to any person;

(c) As a result of a threat to do damage to any property;

(d) As a result of a threat to introduce a denial of service attack into your computer system;

(e) As a result of a threat to introduce a virus or other malicious instruction into your computer system which is designed to damage, destroy or corrupt data or computer programs stored within your computer system;

(f) As a result of a threat to contaminate, pollute or render substandard your products or goods; or

(g) As a result of a threat to disseminate, divulge or utilize:

(i) Your confidential information; or

(ii) Weaknesses in the source code within your computer system.

© ISO Properties, Inc., 2005



# Commercial Crime Policy

    (2)  But, this Exclusion does not apply under Insuring Agreement A.5. to loss of "money", "securities" or "other property" while outside the "premises" in the care and custody of a "messenger" if you:

        (a)  Had no knowledge of any threat at the time the conveyance began; or

        (b)  Had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

**g.  Vandalism**

Loss from damage to the "premises" or its exterior, or to any safe, vault, cash register, cash box, cash drawer or "other property" by vandalism or malicious mischief.

**h.  Voluntary Parting Of Title To Or Possession Of Property**

Loss resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

**4.  Insuring Agreement A.6. does not cover:**

**a.  Credit Card Transactions**

Loss resulting from the use or purported use of credit, debit, charge, access, convenience, identification, stored-value or other cards or the information contained on such cards.

**b.  Funds Transfer Fraud**

Loss resulting from a "fraudulent instruction" directing a financial institution to transfer, pay or deliver "funds" from your "transfer account".

**c.  Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

    (1)  An inventory computation; or

    (2)  A profit and loss computation.

**5.  Insuring Agreement A.7. does not cover:**

**COMPUTER FRAUD**

Loss resulting from the use of any computer to fraudulently cause a transfer of "money", "securities" or "other property".

## E.  Conditions

**1.  Conditions Applicable To All Insuring Agreements**

**a.  Additional Premises Or Employees**

If, while this policy is in force, you establish any additional "premises" or hire additional "employees", other than through consolidation or merger with, or purchase or acquisition of assets or liabilities of, another entity, such "premises" and "employees" shall automatically be covered under this policy. Notice to us of an increase in the number of "premises" or "employees" need not be given and no additional premium need be paid for the remainder of the Policy Period shown in the Declarations.

6    20

CR 00 23 05 06

© ISO Properties, Inc., 2005



# Commercial Crime Policy

**b. Cancellation Of Policy**

    **(1)** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

    **(2)** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

        **(a)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

        **(b)** 30 days before the effective date of cancellation if we cancel for any other reason.

    **(3)** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

    **(4)** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

    **(5)** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

    **(6)** If notice is mailed, proof of mailing will be sufficient proof of notice.

**c. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**d. Concealment, Misrepresentation Or Fraud**

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other Insured, at any time, intentionally conceal or misrepresent a material fact concerning:

    **(1)** This policy;

    **(2)** The property covered under this policy;

    **(3)** Your interest in the property covered under this policy; or

    **(4)** A claim under this policy.

**e. Consolidation – Merger Or Acquisition**

If you consolidate or merge with, or purchase or acquire the assets or liabilities of, another entity:

    **(1)** You must give us written notice as soon as possible and obtain our written consent to extend the coverage provided by this policy to such consolidated or merged entity or such purchased or acquired assets or liabilities. We may condition our consent by requiring payment of an additional premium; but

    **(2)** For the first 90 days after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities, the coverage provided by this policy shall apply to such consolidated or merged entity or such purchased or acquired assets or liabilities, provided that all "occurrences" causing or contributing to a loss involving such consolidation, merger or purchase or acquisition of assets or liabilities, must take place after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities.

CR 00 23 05 06                                        © ISO Properties, Inc., 2005

**Liberty International Underwriters™**
Member of Liberty Mutual Group

# Commercial Crime Policy

**f. Cooperation**

You must cooperate with us in all matters pertaining to this policy as stated in its terms and conditions.

**g. Duties In The Event Of Loss**

After you "discover" a loss or a situation that may result in loss of or damage to "money", "securities" or "other property" you must:

(1) Notify us as soon as possible. If you have reason to believe that any loss (except for loss covered under Insuring Agreement A.1. or A.2.) involves a violation of law, you must also notify the local law enforcement authorities.

(2) Submit to examination under oath at our request and give us a signed statement of your answers.

(3) Produce for our examination all pertinent records.

(4) Give us a detailed, sworn proof of loss within 120 days.

(5) Cooperate with us in the investigation and settlement of any claim.

**h. Employee Benefit Plans**

(1) The "employee benefit plans" shown in the Declarations (hereafter referred to as Plan) are included as Insureds under Insuring Agreement A.1.

(2) If any Plan is insured jointly with any other entity under this policy, you or the Plan Administrator must select a Limit of Insurance for Insuring Agreement A.1. that is sufficient to provide a Limit of Insurance for each Plan that is at least equal to that required if each Plan were separately insured.

(3) With respect to loss sustained or "discovered" by any such Plan, Insuring Agreement A.1. is replaced by the following:

We will pay for loss of or damage to "funds" and "other property" resulting directly from fraudulent or dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

(4) If the first Named Insured is an entity other than a Plan, any payment we make for loss sustained by any Plan will be made to the Plan sustaining the loss.

(5) If two or more Plans are insured under this policy, any payment we make for loss:

(a) Sustained by two or more Plans; or

(b) Of commingled "funds" or "other property" of two or more Plans;

resulting directly from an "occurrence" will be made to each Plan sustaining loss in the proportion that the Limit of Insurance required for each Plan bears to the total Limit of Insurance of all Plans sustaining loss.

(6) The Deductible Amount applicable to Insuring Agreement A.1. does not apply to loss sustained by any Plan.

**i. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the Policy Period shown in the Declarations and up to 3 years afterward.

CR 00 23 05 06

© ISO Properties, Inc., 2005

# Commercial Crime Policy



**Liberty International Underwriters**
Member of Liberty Mutual Group

    **j.**  **Extended Period To Discover Loss**

      We will pay for loss that you sustained prior to the effective date of cancellation of this policy, which is "discovered" by you:

      (1)  No later than 1 year from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you, whether from us or another insurer, replacing in whole or in part the coverage afforded under this policy, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

      (2)  No later than 1 year from the date of that cancellation with regard to any "employee benefit plans".

    **k.**  **Inspections And Surveys**

      (1)  We have the right to:

        (a)  Make inspections and surveys at any time;

        (b)  Give you reports on the conditions we find; and

        (c)  Recommend changes.

      (2)  We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

        (a)  Are safe or healthful; or

        (b)  Comply with laws, regulations, codes or standards.

      (3)  Paragraphs k.(1) and k.(2) apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

    **l.**  **Joint Insured**

      (1)  If more than one Insured is named in the Declarations, the first Named Insured will act for itself and for every other Insured for all purposes of this policy. If the first Named Insured ceases to be covered, then the next Named Insured will become the first Named Insured.

      (2)  If any Insured, or partner, "member" or officer of that Insured has knowledge of any information relevant to this policy, that knowledge is considered knowledge of every Insured.

      (3)  An "employee" of any Insured is considered to be an "employee" of every Insured.

      (4)  If this policy or any of its coverages is cancelled as to any Insured, loss sustained by that Insured is covered only if it is "discovered" by you:

        (a)  No later than 1 year from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by that Insured, whether from us or another insurer, replacing in whole or in part the coverage afforded under this policy, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

        (b)  No later than 1 year from the date of that cancellation with regard to any "employee benefit plans".

CR 00 23 05 06

© ISO Properties, Inc., 2005



# Commercial Crime Policy

    (5) We will not pay more for loss sustained by more than one Insured than all such loss had been sustained by one Insured.

    (6) Payment by us to the first Named Insured for loss sustained by any Ins benefit plan", shall fully release us on account of such loss.

**m. Legal Action Against Us**

You may not bring any legal action against us involving loss:

    (1) Unless you have complied with all the terms of this policy;

    (2) Until 90 days after you have filed proof of loss with us; and

    (3) Unless brought within 2 years from the date you "discovered" the loss.

If any limitation in this Condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**n. Liberalization**

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the Policy Period shown in the Declarations, the broadened coverage will immediately apply to this policy.

**o. Loss Sustained During Prior Insurance Issued By Us Or Any Affiliate**

    **(1) Loss Sustained Partly During This Policy And Partly During Prior Insurance**

If you "discover" loss during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place:

        (a) Partly during the Policy Period shown in the Declarations; and

        (b) Partly during the Policy Period(s) of any prior cancelled insurance that we or any affiliate issued to you or any predecessor in interest;

and this policy became effective at the time of cancellation of the prior insurance, we will first settle the amount of loss that you sustained during this Policy Period. We will then settle the remaining amount of loss that you sustained during the Policy Period(s) of the prior insurance.

    **(2) Loss Sustained Entirely During Prior Insurance**

If you "discover" loss during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place entirely during the Policy Period(s) of any prior cancelled insurance that we or any affiliate issued to you or any predecessor in interest, we will pay for the loss, provided:

        (a) This policy became effective at the time of cancellation of the prior insurance; and

        (b) The loss would have been covered under this policy had it been in effect at the time of the "occurrence".

We will first settle the amount of loss that you sustained during the most recent prior insurance. We will then settle any remaining amount of loss that you sustained during the Policy Period(s) of any other prior insurance.

    **(3)** In settling loss subject to this Condition:

CR 00 23 05 06

© ISO Properties, Inc., 2005

**Liberty
International
Underwriters™**
Member of Liberty Mutual Group

# Commercial Crime Policy

(a) The most we will pay for the entire loss is the highest single Limit of Insurance applicable during the period of loss, whether such limit was written under this policy or was written under the prior insurance issued by us.

(b) We will apply the applicable Deductible Amount shown in the Declarations to the amount of loss sustained under this policy. If no loss was sustained under this policy, we will apply the Deductible Amount shown in the Declarations to the amount of loss sustained under the most recent prior insurance.

If the Deductible Amount is larger than the amount of loss sustained under this policy, or the most recent prior insurance, we will apply the remaining Deductible Amount to the remaining amount of loss sustained during the prior insurance.

We will not apply any other Deductible Amount that may have been applicable to the loss.

(4) The following examples demonstrate how we will settle losses subject to this Condition E.1.o.:

**EXAMPLE NO. 1:**

The insured sustained a covered loss of $10,000 resulting directly from an "occurrence" taking place during the terms of Policy A and Policy B.

## POLICY A

The current policy. Written at a Limit of Insurance of $50,000 and a Deductible Amount of $5,000.

## POLICY B

Issued prior to Policy A. Written at a Limit of Insurance of $50,000 and a Deductible Amount of $5,000.

The amount of loss sustained under Policy A is $2,500 and under Policy B is $7,500.

The highest single Limit of Insurance applicable to this entire loss is $50,000 written under Policy A. The Policy A Deductible Amount of $5,000 applies. The loss is settled as follows:

1. The amount of loss sustained under Policy A ($2,500) is settled first. The amount we will pay is nil ($0.00) because the amount of loss is less than the Deductible Amount (i.e., $2,500 loss - $5,000 deductible = $0.00).

2. The remaining amount of loss sustained under Policy B ($7,500) is settled next. The amount recoverable is $5,000 after the remaining Deductible Amount from Policy A of $2,500 is applied to the loss (i.e., $7,500 loss - $2,500 deductible = $5,000).

The most we will pay for this loss is $5,000.

**EXAMPLE NO. 2:**

The insured sustained a covered loss of $250,000 resulting directly from an "occurrence" taking place during the terms of Policy A and Policy B.

## POLICY A

The current policy. Written at a Limit of Insurance of $125,000 and a Deductible Amount of $10,000.

## POLICY B

Issued prior to Policy A. Written at a Limit of Insurance of $150,000 and a Deductible Amount of $25,000.

**11    21**

CR 00 23 05 06

© ISO Properties, Inc., 2005



## Commercial Crime Policy

The amount of loss sustained under Policy A is $175,000 and under Policy B is $75,000.

The highest single Limit of Insurance applicable to this entire loss is $150,000 written under Policy B. The Policy A Deductible Amount of $10,000 applies. The loss is settled as follows:

1. The amount of loss sustained under Policy A ($175,000) is settled first. The amount we will pay is the Policy A Limit of $125,000 because $175,000 loss - $10,000 deductible = $165,000 which is greater than the $125,000 policy limit.

2. The remaining amount of loss sustained under Policy B ($75,000) is settled next. The amount we will pay is $25,000 (i.e., $150,000 Policy B limit - $125,000 paid under Policy A = $25,000).

The most we will pay for this loss is $150,000.

**EXAMPLE NO. 3:**

The insured sustained a covered loss of $2,000,000 resulting directly from an "occurrence" taking place during the terms of Policies A, B, C and D.

### POLICY A

The current policy. Written at a Limit of Insurance of $1,000,000 and a Deductible Amount of $100,000.

### POLICY B

Issued prior to Policy A. Written at a Limit of Insurance of $750,000 and a Deductible Amount of $75,000.

### POLICY C

Issued prior to Policy B. Written at a Limit of Insurance of $500,000 and a Deductible Amount of $50,000.

### POLICY D

Issued prior to Policy C. Written at a Limit of Insurance of $500,000 and a Deductible Amount of $50,000.

The amount of loss sustained under Policy A is $350,000, under Policy B is $250,000, under Policy C is $600,000 and under Policy D is $800,000.

The highest single Limit of Insurance applicable to this entire loss is $1,000,000 written under Policy A. The Policy A Deductible Amount of $100,000 applies. The loss is settled as follows:

1. The amount of loss sustained under Policy A ($350,000) is settled first. The amount we will pay is $250,000 (i.e., $350,000 loss - $100,000 deductible = $250,000).

2. The amount of loss sustained under Policy B ($250,000) is settled next. The amount we will pay is $250,000 (no deductible is applied).

3. The amount of loss sustained under Policy C ($600,000) is settled next. The amount we will pay is $500,000, the policy limit (no deductible is applied).

4. We will not make any further payment under Policy D as the maximum amount payable under the highest single Limit of Insurance applying to the loss of $1,000,000 under Policy A has been satisfied.

The most we will pay for this loss is $1,000,000.

CR 00 23 05 06

© ISO Properties, Inc., 2005



## Commercial Crime Policy

p. **Loss Sustained During Prior Insurance Not Issued By Us Or Any Affiliate**

(1) If you "discover" loss during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place during the Policy Period of any prior cancelled insurance that was issued to you or a predecessor in interest by another company, and the period of time to discover loss under that insurance had expired, we will pay for the loss under this policy, provided:

   (a) This policy became effective at the time of cancellation of the prior insurance; and

   (b) The loss would have been covered under this policy had it been in effect at the time of the "occurrence".

(2) In settling loss subject to this Condition:

   (a) The most we will pay for the entire loss is the lesser of the Limits of Insurance applicable during the period of loss, whether such limit was written under this policy or was written under the prior cancelled insurance.

   (b) We will apply the applicable Deductible Amount shown in the Declarations to the amount of loss sustained under the prior cancelled insurance.

(3) The insurance provided under this Condition is subject to the following:

   (a) If loss covered under this Condition is also partially covered under Condition E.1.o., the amount recoverable under this Condition is part of, not in addition to, the amount recoverable under Condition E.1.o.

   (b) For loss covered under this Condition that is not subject to Paragraph (3)(a), the amount recoverable under this Condition is part of, not in addition to, the Limit of Insurance applicable to the loss covered under this policy and is limited to the lesser of the amount recoverable under:

      (i) This policy as of its effective date; or

      (ii) The prior cancelled insurance had it remained in effect.

q. **Other Insurance**

   If other valid and collectible insurance is available to you for loss covered under this policy, our obligations are limited as follows:

   (1) **Primary Insurance**

   When this policy is written as primary insurance, and:

      (a) You have other insurance subject to the same terms and conditions as this policy, we will pay our share of the covered loss. Our share is the proportion that the applicable Limit of Insurance shown in the Declarations bears to the total limit of all insurance covering the same loss.

      (b) You have other insurance covering the same loss other than that described in Paragraph (1)(a), we will only pay for the amount of loss that exceeds:

         (i) The Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not; or

         (ii) The Deductible Amount shown in the Declarations;

         whichever is greater. Our payment for loss is subject to the terms and conditions of this policy.

   (2) **Excess Insurance**

© ISO Properties, Inc., 2005

# Commercial Crime Policy


**Liberty International Underwriters™**
Member of Liberty Mutual Group

(a) When this policy is written excess over other insurance, we will only pay for the amount of loss that exceeds the Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not. Our payment for loss is subject to the terms and conditions of this policy.

(b) However, if loss covered under this policy is subject to a Deductible, we will reduce the Deductible Amount shown in the Declarations by the sum total of all such other insurance plus any Deductible Amount applicable to that other insurance.

r. **Ownership Of Property; Interests Covered**

The property covered under this policy is limited to property:

(1) That you own or lease; or

(2) That you hold for others whether or not you are legally liable for the loss of such property.

However, this policy is for your benefit only. It provides no rights or benefits to any other person or organization. Any claim for loss that is covered under this policy must be presented by you.

s. **Premiums**

The first Named Insured shown in the Declarations:

(1) Is responsible for the payment of all premiums; and

(2) Will be the payee for any return premiums we pay.

t. **Records**

You must keep records of all property covered under this policy so we can verify the amount of any loss.

u. **Recoveries**

(1) Any recoveries, whether effected before or after any payment under this policy, whether made by us or you, shall be applied net of the expense of such recovery:

(a) First, to you in satisfaction of your covered loss in excess of the amount paid under this policy;

(b) Second, to us in satisfaction of amounts paid in settlement of your claim;

(c) Third, to you in satisfaction of any Deductible Amount; and

(d) Fourth, to you in satisfaction of any loss not covered under this policy.

(2) Recoveries do not include any recovery:

(a) From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

(b) Of original "securities" after duplicates of them have been issued.

v. **Territory**

This policy covers loss that you sustain resulting directly from an "occurrence" taking place within the United States of America (including its territories and possessions), Puerto Rico and Canada.

w. **Transfer Of Your Rights And Duties Under This Policy**

(1) Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

14    20

CR 00 23 05 06

© ISO Properties, Inc., 2005

**Liberty International Underwriters.**
Member of Liberty Mutual Group

# Commercial Crime Policy

(2) If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having temporary custody of your property will have your rights and duties but only with respect to that property.

**x.** **Transfer Of Your Rights Of Recovery Against Others To Us**

You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

**y.** **Valuation -- Settlement**

(1) The value of any loss for purposes of coverage under this policy shall be determined as follows:

(a) Loss of "money" but only up to and including its face value. We will, at your option, pay for loss of "money" issued by any country other than the United States of America:

(i) At face value in the "money" issued by that country; or

(ii) In the United States of America dollar equivalent determined by the rate of exchange published in *The Wall Street Journal* on the day the loss was "discovered".

(b) Loss of "securities" but only up to and including their value at the close of business on the day the loss was "discovered". We may, at our option:

(i) Pay the market value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "securities"; or

(ii) Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities". However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

i.   Market value of the "securities" at the close of business on the day the loss was "discovered"; or

ii.  The Limit of Insurance applicable to the "securities".

(c) Loss of or damage to "other property" or loss from damage to the "premises" or its exterior for the replacement cost of the property without deduction for depreciation. However, we will not pay more than the least of the following:

(i) The cost to replace the lost or damaged property with property of comparable material and quality and used for the same purpose;

(ii) The amount you actually spend that is necessary to repair or replace the lost or damaged property; or

(iii) The Limit of Insurance applicable to the lost or damaged property.

With regard to Paragraphs y.(1)(c)(i) through y.(1)(c)(iii), we will not pay on a replacement cost basis for any loss or damage:

i.   Until the lost or damaged property is actually repaired or replaced; and

ii.  Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

CR 00 23 05 06

© ISO Properties, Inc., 2005



**Liberty International Underwriters**™
Member of Liberty Mutual Group

# Commercial Crime Policy

If the lost or damaged property is not repaired or replaced, we will pay on an actual cash value basis.

(2). We will, at your option, settle loss or damage to property other than "money":

    (a) In the "money" of the country in which the loss or damage occurred; or

    (b) In the United States of America dollar equivalent of the "money" of the country in which the loss or damage occurred determined by the rate of exchange published in *The Wall Street Journal* on the day the loss was "discovered".

(3) Any property that we pay for or replace becomes our property.

2. **Conditions Applicable To Insuring Agreement A.1.**

    a. **Termination As To Any Employee**

    This Insuring Agreement terminates as to any "employee":

    (1) As soon as:

        (a) You; or

        (b) Any of your partners, "members", "managers", officers, directors, or trustees not in collusion with the "employee":

    learn of "theft" or any other dishonest act committed by the "employee" whether before or after becoming employed by you.

    (2) On the date specified in a notice mailed to the first Named Insured. That date will be at least 30 days after the date of mailing.

    We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

    b. **Territory**

    We will pay for loss caused by any "employee" while temporarily outside the territory specified in the Territory Condition E.1.v. for a period of not more than 90 consecutive days.

3. **Conditions Applicable To Insuring Agreement A.2.**

    a. **Deductible Amount**

    The Deductible Amount does not apply to legal expenses paid under Insuring Agreement A.2.

    b. **Electronic And Mechanical Signatures**

    We will treat signatures that are produced or reproduced electronically, mechanically or by other means the same as handwritten signatures.

    c. **Proof Of Loss**

    You must include with your proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss.

    d. **Territory**

    We will cover loss that you sustain resulting directly from an "occurrence" taking place anywhere in the world. Territory Condition E.1.v. does not apply to Insuring Agreement A.2.

16    20

CR 00 23 05 06

© ISO Properties, Inc., 2005

**Liberty International Underwriters**
Member of Liberty Mutual Group

## Commercial Crime Policy

4. Conditions Applicable To Insuring Agreements A.4. And A.5.

   a. Armored Motor Vehicle Companies

   Under Insuring Agreement A.5., we will only pay for the amount of loss you cannot recover:

   (1) Under your contract with the armored motor vehicle company; and

   (2) From any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

   b. Special Limit Of Insurance For Specified Property

   We will only pay up to $5,000 for any one "occurrence" of loss of or damage to:

   (1) Precious metals, precious or semi-precious stones, pearls, furs, or completed or partially completed articles made of or containing such materials that constitute the principal value of such articles; or

   (2) Manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

5. Conditions Applicable To Insuring Agreement A.6.

   a. Special Limit Of Insurance For Specified Property

   We will only pay up to $5,000 for any one "occurrence" of loss of or damage to manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

   b. Territory

   We will cover loss that you sustain resulting directly from an "occurrence" taking place anywhere in the world. Territory Condition E.1.v. does not apply to Insuring Agreement A.6.

F. Definitions

   1. "Banking premises" means the interior of that portion of any building occupied by a banking institution or similar safe depository.

   2. "Counterfeit money" means an imitation of "money" that is intended to deceive and to be taken as genuine.

   3. "Custodian" means you, or any of your partners or "members", or any "employee" while having care and custody of property inside the "premises", excluding any person while acting as a "watchperson" or janitor.

   4. "Discover" or "discovered" means the time when you first become aware of facts which would cause a reasonable person to assume that a loss of a type covered by this policy has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

   "Discover" or "discovered" also means the time when you first receive notice of an actual or potential claim in which it is alleged that you are liable to a third party under circumstances which, if true, would constitute a loss under this policy.

   5. "Employee":

   a. "Employee" means:

   (1) Any natural person:

   (a) While in your service and for the first 30 days immediately after termination of service, unless such termination is due to "theft" or any other dishonest act committed by the "employee";

CR 00 23 05 06

© ISO Properties, Inc., 2005



# Commercial Crime Policy

     (b) Who you compensate directly by salary, wages or commissions; and

     (c) Who you have the right to direct and control while performing services for you;

  (2) Any natural person who is furnished temporarily to you:

     (a) To substitute for a permanent "employee" as defined in Paragraph a.(1), who is on leave; or

     (b) To meet seasonal or short-term workload conditions;

     while that person is subject to your direction and control and performing services for you, excluding, however, any such person while having care and custody of property outside the "premises";

  (3) Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph a.(2);

  (4) Any natural person who is:

     (a) A trustee, officer, employee, administrator or manager, except an administrator or manager who is an independent contractor, of any "employee benefit plan"; and

     (b) A director or trustee of yours while that person is engaged in handling "funds" or "other property" of any "employee benefit plan";

  (5) Any natural person who is a former "employee", partner, "member", "manager", director or trustee retained as a consultant while performing services for you;

  (6) Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside the "premises";

  (7) Any "employee" of an entity merged or consolidated with you prior to the effective date of this policy; or

  (8) Any of your "managers", directors or trustees while:

     (a) Performing acts within the scope of the usual duties of an "employee"; or

     (b) Acting as a member of any committee duly elected or appointed by resolution of your board of directors or board of trustees to perform specific, as distinguished from general, directorial acts on your behalf.

  b. "Employee" does not mean any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character not specified in Paragraph 5.a.

6. "Employee benefit plan" means any welfare or pension benefit plan shown in the Declarations that you sponsor and which is subject to the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto.

7. "Forgery" means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

8. "Fraudulent Instruction" means:

  a. An electronic, telegraphic, cable, teletype, telefacsimile or telephone instruction which purports to have been transmitted by you, but which was in fact fraudulently transmitted by someone else without your knowledge or consent;

CR 00 23 05 06                                    © ISO Properties, Inc., 2005

## Commercial Crime Policy

**Liberty International Underwriters**
Member of Liberty Mutual Group

  b. A written instruction (other than those described in Insuring Agreement A.2.) issued by you, which was forged or altered by someone other than you without your knowledge or consent, or which purports to have been issued by you, but was in fact fraudulently issued without your knowledge or consent; or

  c. An electronic, telegraphic, cable, teletype, telefacsimile, telephone or written instruction initially received by you which purports to have been transmitted by an "employee" but which was in fact fraudulently transmitted by someone else without your or the "employee's" knowledge or consent.

9. "Funds" means "money" and "securities".

10. "Manager" means a person serving in a directorial capacity for a limited liability company.

11. "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

12. "Messenger" means you, or a relative of yours, or any of your partners or "members", or any "employee" while having care and custody of property outside the "premises".

13. "Money" means:

  a. Currency, coins and bank notes in current use and having a face value; and

  b. Travelers checks, register checks and money orders held for sale to the public.

14. "Occurrence" means:

  a. Under Insuring Agreement A.1.:

   (1) An individual act;

   (2) The combined total of all separate acts whether or not related; or

   (3) A series of acts whether or not related;

  committed by an "employee" acting alone or in collusion with other persons, during the Policy Period shown in the Declarations, except as provided under Condition E.1.o. or E.1.p.

  b. Under Insuring Agreement A.2.:

   (1) An individual act;

   (2) The combined total of all separate acts whether or not related; or

   (3) A series of acts whether or not related;

  committed by a person acting alone or in collusion with other persons, involving one or more instruments, during the Policy Period shown in the Declarations, except as provided under Condition E.1.o. or E.1.p.

  c. Under All Other Insuring Agreements:

   (1) An individual act or event;

   (2) The combined total of all separate acts or events whether or not related; or

   (3) A series of acts or events whether or not related;

  committed by a person acting alone or in collusion with other persons, or not committed by any person, during the Policy Period shown in the Declarations, except as provided under Condition E.1.o. or E.1.p.

CR 00 23 05 06

© ISO Properties, Inc., 2005



# Commercial Crime Policy

15. "Other property" means any tangible property other than "money" and "securities" that has intrinsic value. "Other property" does not include computer programs, electronic data or any property specifically excluded under this policy.

16. "Premises" means the interior of that portion of any building you occupy in conducting your business.

17. "Robbery" means the unlawful taking of property from the care and custody of a person by one who has:

    a.   Caused or threatened to cause that person bodily harm; or

    b.   Committed an obviously unlawful act witnessed by that person.

18. "Safe burglary" means the unlawful taking of:

    a.   Property from within a locked safe or vault by a person unlawfully entering the safe or vault as evidenced by marks of forcible entry upon its exterior; or

    b.   A safe or vault from inside the "premises".

19. "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or property and includes:

    a.   Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

    b.   Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

    but does not include "money".

20. "Theft" means the unlawful taking of property to the deprivation of the Insured.

21. "Transfer account" means an account maintained by you at a financial institution from which you can initiate the transfer, payment or delivery of "funds":

    a.   By means of electronic, telegraphic, cable, teletype, telefacsimile or telephone instructions communicated directly through an electronic funds transfer system; or

    b.   By means of written instructions (other than those described in Insuring Agreement A.2.) establishing the conditions under which such transfers are to be initiated by such financial institution through an electronic funds transfer system.

22. "Watchperson" means any person you retain specifically to have care and custody of property inside the "premises" and who has no other duties.

In witness whereof, the company has caused this policy to be signed by its President and its Secretary at Boston, Massachusetts, and countersigned by a duly authorized representative of the company.

SECRETARY                PRESIDENT

20    20

CR 00 23 05 06

© ISO Properties, Inc., 2005

**Commercial Crime Policy**



## LIBERTY MUTUAL INSURANCE COMPANY
### (A Mutual Insurance Company, hereinafter called the Company)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### NOTICE ENDORSEMENT

Notice of Membership in Liberty Mutual Holding Company Inc.

While this policy is in effect, the named insured first named in the Declarations is a member of Liberty Mutual Holding Company Inc. and is entitled to vote either in person or by proxy at any and all meetings of the members of said company. The Annual Meeting of Liberty Mutual Holding Company Inc. is in Boston, Massachusetts, on the second Wednesday in April each year at ten o'clock in the morning.

The named insured first named in the Declarations shall participate in the distribution of any dividends declared by us for this Policy. The amount of such Named Insured's participation is determined by the decision of Liberty Mutual Holding Company Board of Directors in compliance with any laws that apply.

SECRETARY                    PRESIDENT

1

## Commercial Crime Policy



### LIBERTY MUTUAL INSURANCE COMPANY
(A Mutual Insurance Company, hereinafter called the Company)

### NOTICE OF MEMBERSHIP IN LIBERTY MUTUAL HOLDING COMPANY INC.
### AND NOTICE OF ANNUAL MEETING

Your policy includes a statement regarding membership rights in Liberty Mutual Holding Company Inc. Liberty Mutual Insurance Company is a Massachusetts stock insurance company subsidiary of Liberty Mutual Holding Company Inc., a Massachusetts mutual holding company. Insurance is provided by Liberty Mutual Insurance Company. The named insured first named in the declarations is a member of Liberty Mutual Holding Company Inc.

As a member of Liberty Mutual Holding Company Inc., the named insured first named is entitled, among other things, to vote either in person or by proxy at the annual meeting or special meetings of said company. The Annual Meeting of Liberty Mutual Holding Company Inc. is at its offices located at 175 Berkeley Street, Boston, Massachusetts, on the second Wednesday in April each year at ten o'clock in the morning.

Members of Liberty Mutual Holding Company Inc. may request a copy of the company's annual financial statements, which are posted on Liberty Mutual's website at www.libertymutual.com, by writing to Liberty Mutual Holding Company Inc., 175 Berkeley Street, Boston, Massachusetts, 02117, Attention: Corporate Secretary.

1   1



# Commercial Crime Policy

**Liberty International Underwriters™**
Member of Liberty Mutual Group

## LIBERTY MUTUAL INSURANCE COMPANY
(A Mutual Insurance Company, hereinafter called the Company)

### Endorsement NO. 1

| | |
|---|---|
| **Effective Date:** | August 15, 2007 |
| **Policy Number:** | FI4N587509001 |
| **Issued To:** | NAMCO Financial Exchange Corp. |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### CALIFORNIA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME POLICY
EMPLOYEE THEFT AND FORGERY POLICY
GOVERNMENT CRIME POLICY
KIDNAP/RANSOM AND EXTORTION POLICY

Paragraphs A. and B. below apply only to the Commercial Crime Policy and Government Crime Policy.

A.  Paragraphs (2) and (3) of the Cancellation Of Policy Condition are replaced by the following:

  (2)  **All Policies In Effect For 60 Days Or Less**

    If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured at the mailing address shown in the policy and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

    (a)  10 days before the effective date of cancellation if we cancel for:

      (i)  Nonpayment of premium; or

      (ii)  Discovery of fraud by:

        i.  Any insured or his or her representative in obtaining this policy; or

        ii.  You or your representative in pursuing a claim under this policy.

    (b)  30 days before the effective date of cancellation if we cancel for any other reason.

  (3)  **All Policies In Effect For More Than 60 Days**

    (a)  If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

      (i)  Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

      (ii)  Discovery of fraud or material misrepresentation by:



CR 02 49 11 04

© ISO Properties, Inc., 2004

# Commercial Crime Policy

**Liberty International Underwriters**
Member of Liberty Mutual Group

    i.   Any insured or his or her representative in obtaining this policy; or

    ii.   You or your representative in pursuing a claim under this policy.

  (iii) A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

  (iv) Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

  (v) Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

  (vi) A determination by the Commissioner of Insurance that the:

    i.   Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

    ii.   Continuation of the policy coverage would:

      (I)   Place us in violation of California law or the laws of the state where we are domiciled; or

      (ii)  Threaten our solvency.

      (vii) A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

  **(b)** We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

    (i)   10 days before the effective date of cancellation if we cancel for nonpayment of premium or discovery of fraud; or

    (ii)  30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph (3)(a).

**B.** The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

**1.** Subject to the provisions of Paragraph B.2. below, if we elect not to renew this policy, we will mail or deliver written notice stating the reason for nonrenewal to the first Named Insured shown in the Declarations and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

  We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

**2.** We are not required to send notice of nonrenewal in the following situations:

  **a.**  If the transfer or renewal of a policy, without any changes in terms, conditions, or rates, is between us and a member of our insurance group.

  **b.**  If the policy has been extended for 90 days or less, provided that notice has been given in accordance with Paragraph B.1.

    3

CR 02 49 11 04

© ISO Properties, Inc., 2004

# Commercial Crime Policy



Liberty
International
Underwriters™
Member of Liberty Mutual Group

    c.    If you have obtained replacement coverage, or if the first Named Insured has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

    d.    If the policy is for a period of no more than 60 days and you are notified at the time of issuance that it will not be renewed.

    e.    If the first Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

    f.    If we have made a written offer to the first Named Insured, in accordance with the time frames shown in Paragraph B.1., to renew the policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

**C.** Under the Commercial Crime Policy, Government Crime Policy and Employee Theft And Forgery Policy, the following is added to the Valuation — Settlement Condition:

Actual cash value is calculated as the amount it would cost to repair or replace covered property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. Actual cash value applies to valuation of covered property regardless of whether that property has sustained partial or total loss or damage.

The actual cash value of the lost or damaged property may be significantly less than its replacement cost.

CR 02 49 11 04

© ISO Properties, Inc., 2004

# Commercial Crime Policy



**Liberty International Underwriters**
Member of Liberty Mutual Group

## LIBERTY MUTUAL INSURANCE COMPANY

(A Mutual Insurance Company, hereinafter called the Company)

### Endorsement NO. 2

| | |
|---|---|
| **Effective Date:** | August 15, 2007 |
| **Policy Number:** | FI4N587509001 |
| **Issued To:** | NAMCO Financial Exchange Corp. |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## LOSS PAYABLE

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME COVERAGE FORM
COMMERCIAL CRIME POLICY
EMPLOYEE THEFT AND FORGERY POLICY
GOVERNMENT CRIME COVERAGE FORM
GOVERNMENT CRIME POLICY

**A. Schedule***

| Name And Address Of Loss Payee |
|---|
| Client/Exchangers up to and including the amount that each has deposited with you in trust, to whom you provide Section 1031 exchange services while acting as a qualified intermediary in a tax-deferred exchange of property intended to qualify under Internal Revenue Code 1031. |
| * Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations. |

**B. Provisions**

1. You agree that any loss payable under this insurance shall be paid to the Loss Payee shown in the Schedule as its interests may appear and any such payment shall constitute payment to you. We agree that we will make all such payments to the Loss Payee, and we will not make any payment solely to you unless we receive a request in writing from the Loss Payee to make such payment to you.

2. This insurance is for your benefit only. It provides no rights or benefits to any other person or organization including the Loss Payee, other than payment of loss as set forth in this endorsement.

   Any claim for loss that is covered under this insurance must be presented by you.

3. Our liability under this insurance as extended by this endorsement shall not be cumulative.

FI4N587509001 IN 2007 000 9_25_2007

© ISO Properties, Inc., 1998

**Commercial Crime Policy**



## LIBERTY MUTUAL INSURANCE COMPANY
(A Mutual Insurance Company, hereinafter called the Company)

### Endorsement NO. 3

| | |
|---|---|
| **Effective Date:** | August 15, 2007 |
| **Policy Number:** | FI4N587509001 |
| **Issued To:** | NAMCO Financial Exchange Corp. |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### FEDERATION OF EXCHANGE ACCOMMODATORS FIDELITY BOND
### AMEND CONSOLIDATION-MERGER OR ACQUISITION

Section E. Conditions, Conditions Applicable to all Insuring Agreements, sub-section e. Consolidation – Merger or Acquisition, is deleted and replaced with the following:

   e.  **Consolidation – Merger Or Acquisition**

      If you consolidate or merge with, or purchase or acquire the assets or liabilities of, another entity:

      (1)  You must give us written notice and obtain our written consent to extend the coverage provided by this policy to such consolidated or merged entity or such purchased or acquired assets or liabilities. We may condition our consent by requiring payment of an additional premium; but

      (2)  For the first 90 days after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities, the coverage provided by this policy shall apply to such consolidated or merged entity or such purchased or acquired assets or liabilities, provided that all "occurrences" causing or contributing to a loss involving such consolidation, merger or purchase or acquisition of assets or liabilities, must take place after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities.

      (3)  In the event of a change of control which will represent more than 50% of the ownership interest in the Named Insured, you must give us written notice anytime prior to or within thirty (30) days of the change of control. Upon completion of the transaction, coverage will be suspended until such time as we have completed an underwriting review. If we are satisfied, the coverage suspension will be lifted retroactively to the date it was first suspended. If we are not satisfied, the policy will terminate effective as of the initial date the coverage was suspended.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**

| | |
|---|---|
| 1 | 1 |

FI4N587509001 IN 2007 000 9_25_2007

**Commercial Crime Policy**


**Liberty International Underwriters**
Member of Liberty Mutual Group

## LIBERTY MUTUAL INSURANCE COMPANY
(A Mutual Insurance Company, hereinafter called the Company)

### Endorsement NO. 4

| | |
|---|---|
| **Effective Date:** | August 15, 2007 |
| **Policy Number:** | FI4N587509001 |
| **Issued To:** | NAMCO Financial Exchange Corp. |

#### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

#### FEDERATION OF EXCHANGE ACCOMMODATORS -- FIDELITY BOND CONDITIONS PRECEDENT TO LIABILITY

The following additional exclusion is added to Section D. EXCLUSIONS of the attached policy "Additional Exclusions applicable to Insuring Agreements "Employee Theft" and "Clients Property":

6.  As respect to Insuring Agreement 1 and Clients' Property, there will be no "employee theft" coverage involving a transaction intended to qualify as a tax-deferred exchange of property under Internal Revenue Code 1031 unless the following internal control requirements were complied with at the time the "employee theft" occurred:

    a.  A written contract was in effect between you and each exchanger/client stipulating the manner in which relinquished "money", "securities", and "other property" will be held and subsequently released by you for use in acquiring replacement property.

    b.  The relinquished "money", "securities" and "other property" of each related exchange transaction were held in a financial institution account segregated from your operating funds.

    c.  Each related exchange transaction was identified by a unique file number or similar identifier.

    d.  Countersignature was required to authorize release of all "money", "securities" and "other property" or a monthly reconciliation of all accounts involving exchange transaction proceeds was performed within two weeks of receipt of the account statement. Additionally, reconciliations were performed by an "employee" not authorized to deposit, withdraw or transfer funds from the account, or were reviewed by an outside bookkeeper or an outside CPA.

#### ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

| 1 | 1 |
|---|---|

FI4N587509001 IN 2007 000 9_25_2007



## Commercial Crime Policy

### LIBERTY MUTUAL INSURANCE COMPANY
(A Mutual Insurance Company, hereinafter called the Company)

#### Endorsement NO. 5

| | |
|---|---|
| **Effective Date:** | August 15, 2007 |
| **Policy Number:** | FI4N587509001 |
| **Issued To:** | NAMCO Financial Exchange Corp. |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### FEDERATION OF EXCHANGE ACCOMMODATORS – FIDELITY BOND CLIENTS' PROPERTY INSURING AGREEMENT

A. The following insuring agreement is added to Section A. **Insuring Agreements:**
   Clients' Property

   We will pay for loss of or damage to "money", "securities" and "other property" sustained by "you" "client" resulting directly from "theft" committed by an identified "employee", acting alone or in collusion with other persons and/or "you", any of "your" partners or "members" whether acting alone or in collusion with others.

B. For the purposes of this Insuring Agreement, Clients' Property, under section D. **Exclusions:**

   1. Exclusion a. Acts Committed By You, Your Partners Or Your Members is hereby deleted in its entirety.

   Notwithstanding, this Exclusion is applicable to all other Insuring Agreements in the policy.

C. Under Section E. **Conditions:**
   1. Paragraph (1) of the Duties in the Event of Loss Condition is replaced by the following:

      Notify us as soon as possible.

   2. The Ownership of Property; Interests Covered Condition is replaced by the following:

      The property covered under this Insuring Agreement is:

      a. Limited to property which is held in a financial institution account in a transaction involving "you" as a qualified intermediary for a tax-deferred exchange of property intended to qualify under Internal Revenue Code 1031.

      However, this insurance is for "your" benefit only. It provides no rights or benefits to any other person or organization, including your "client". Any claim for loss that is covered under this Insuring Agreement must be presented by "you".

D. Under Section F. **Definitions:**

   1. For the purposes of this Insuring Agreement, Clients' Property, the following definitions are either added or replaced by the following:

      a. "Client" means any party for whom you perform services under a written contract.

| 1 | 2 |
|---|---|

FI4N587509001 IN 2007 000 9_25_2007



## Commercial Crime Policy

b.   "Theft" means the unlawful taking of "money", "securities" or "other property" to the deprivation of your "client".

c.   "You" and "your" refers to the Named Insured shown in the Declarations and/or any natural person who is an owner of the Named Insured.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**

2   2

FI4N587509001 IN 2007 000 9_25_2007

# Commercial Crime Policy



**Liberty**
**International**
**Underwriters**™
Member of Liberty Mutual Group

## LIBERTY MUTUAL INSURANCE COMPANY

(A Mutual Insurance Company, hereinafter called the Company)

### Endorsement NO. 6

| | |
|---|---|
| **Effective Date:** | August 15, 2007 |
| **Policy Number:** | FI4N587509001 |
| **Issued To:** | NAMCO Financial Exchange Corp. |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### FEDERATION OF EXCHANGE ACCOMMODATORS – FIDELITY BOND OMNIBUS NAMED INSURED SCHEDULE

**PROVISIONS**

1. The Named Insured Section on the Declarations Page is amended to read:

    NAMCO Financial Exchange Corp.

    and any entity acting as a qualified intermediary in a tax-deferred exchange of property intended to qualify under Internal Revenue Code 1031 in which you own more than 50% of the ownership interest, any entity acting as a qualified intermediary in a tax-deferred exchange of property intended to qualify under Internal Revenue Code 1031 you manage pursuant to a written agreement including a partnership agreement, and any entity acting as a qualified intermediary in a tax-deferred exchange of property intended to qualify under Internal Revenue Code 1031 in which you own 50% or less of the ownership interest, up to your ownership interest in that entity.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**

1

FI4N587509001 IN 2007 000 9_25_2007

# EXHIBIT 2

**CRIME INSURANCE EXCESS POLICY**

**ZURICH**

DECLARATIONS

Insurance is provided by the following company:

# Zurich American Insurance Company

Policy Number:   FID 9158508 00

Item 1. Parent Company and Address:       NAMCO FINANCIAL EXCHANGE CORP.
1212 WILSHIRE BOULEVARD, SUITE 1400
LOS ANGELES, CA  90025

Item 2. Limit of Liability:              $5,000,000

Item 3. Underlying Insurance:

    (A) **Primary Policy:**
        Insurer:                     LIBERTY MUTUAL INSURANCE COMPANY
        Policy Number:               F14N587509001
        Limit of Liability:          $5,000,000

    (B) **Other Policy(ies):**
        Insurer:
        Policy Number:
        Limit of Liability:

Item 4. Policy Period:                   From 12:01 A.M. on  08/15/2007
To 12:01 A.M. on  08/15/2008
Local time at the address shown in Item  1.

Item 5. Endorsement(s) Effective at Inception: 1

Item 6.   Cancellation of Prior Insurance: By acceptance of this policy, you give us notice cancelling prior policy number
the cancellation to be effective at time this policy becomes effective.

In witness whereof, the Underwriter issuing this policy has caused this policy to be signed by its authorized officers, but it shall not
be valid unless also signed by the duly authorized representative of the Underwriter.

ZURICH AMERICAN INSURANCE COMPANY

*Donna M. Mazzella*          *Louis J. Yannetta Jr.*          *[signature]*

Authorized Representative              President                   Corporate Secretary
Donna M. Mazzella              Zurich America Insurance Company     Zurich America Insurance Company

*10-22-07*
Date



**ZURICH**

CRIME INSURANCE EXCESS POLICY

consideration of payment of the premium and in reliance upon all statements made and information furnished to the Zurich Insurance Company ( herein called the Underwriter ) and to the Insurers of the Underlying Insurance, including the statements made in the application and its attachments and any material submitted therewith, all of which are made a part hereof, and subject to the Declarations and the limitations, conditions, provisions, and other terms of this policy (including any endorsements hereto), the Underwriter, the Parent Company and the Insureds agree as follows:

## I. INSURING CLAUSE

The Underwriter shall provide the Insureds with insurance coverage during the Policy Period excess of the Underlying Insurance. Coverage under this policy shall attach only after all of the Limit(s) of Liability of Underlying Insurance has been exhausted by the actual payment of loss(es). Except as otherwise provided herein, coverage under this policy shall then apply in conformance with and subject to the warranties, limitations, conditions, provisions, and other terms of the Primary Policy as in effect the first day of the Policy Period, together with the warranties and limitations of any other Underlying Insurance. In no event shall coverage under this policy be broader than coverage under any Underlying Insurance.

## II. DEFINITIONS

When used in this policy:

A. Insured, either in the singular or plural, means those organizations designated as insureds under the Primary Policy.

B. Parent Company means the organization designated in Item 1 of the Declarations of this policy.

C. Policy Period means the period of time specified in Item 4 of the Declarations of this policy, subject to prior termination in accordance with Subsection III.H. of this policy.

Primary Policy means the policy designated in Item 3(A) of the Declarations of this policy.

Underlying Insurance means all of those policy(ies) designated in Item 3 of the Declarations of this policy.

## III. GENERAL CONDITIONS AND LIMITATIONS

A.   MAINTENANCE OF UNDERLYING INSURANCE

The Limit(s) of Liability of the Underlying Insurance scheduled in Item 3 of the Declarations of this policy shall be maintained during the Policy Period in full effect with solvent insurers except for any reduction or exhaustion of the aggregate Limit(s) of Liability available under the Underlying Insurance solely by reason of actual payment of loss(es) thereunder. Failure to comply with the foregoing shall not invalidate this policy but the Underwriter shall not be liable to a greater extent than if this condition had been complied with. To the extent that any Underlying Insurance is not so maintained, then the Insureds shall be deemed to be self-insured for the amount of the Limit(s) of Liability of any such Underlying Insurance.

In the event of a change to any Underlying Insurance by rewrite, endorsement or otherwise, coverage under this policy shall become subject to such change only if and to the extent the Underwriter's consent to such change is endorsed in writing to this policy. If such consent is not endorsed in writing on to this policy, the Underwriter shall not be liable to a greater extent than it would have been in the absence of such change to the Underlying Insurance.

B.   REDUCTION/EXHAUSTION OF UNDERLYING LIMITS

In the event and only in the event of the reduction or exhaustion of the Limit(s) of Liability of the Underlying Insurance solely as the result of actual payment of loss covered thereunder, this policy shall: (i) in the event of reduction, pay excess of the reduced Limit(s) of Liability of the Underlying Insurance, and (ii) in the event of exhaustion, continue in force as primary insurance excess of the retention applicable in the Primary Policy, which retention shall be applied to any subsequent loss as specified in the Primary Policy.

Notwithstanding any of the terms of this policy which might be construed otherwise, this policy shall drop down only in the event of reduction or exhaustion of the Underlying Insurance by the actual payment of loss and shall not drop down for any other reason including, but not limited to, uncollectibility (in whole or in part) of any Underlying Insurance. The risk of uncollectibility of such Underlying Insurance (in whole or in part) whether because of financial impairment or insolvency of the underlying insurer or for any other reason, is expressly retained by the Insureds and is not in any way or under any circumstances insured or assumed by the Underwriter.

C.   LIMIT OF LIABILITY

The amount set forth in Item 2 of the Declarations is the maximum liability of the Underwriter under this policy for any one loss with respect to all loss covered by the Underlying Insurance in effect during the Policy Period.

D.   INVESTIGATION

The Underwriter may, at its sole discretion, elect to participate in the investigation of any matter covered by this policy even if the Underlying Insurance has not been exhausted and the Insureds shall give the Underwriter such information and cooperation as it may reasonably require.

E.   SUBROGATION

In that this policy is "Excess Coverage," the Insureds' right of recovery against any person or entity may not be exclusively subrogated to the Underwriter. Therefore, in the event of any payment under this policy, the Underwriter will act in concert with all other interests (including the Insureds') concerned in the exercise of such rights of recovery. The apportioning of amounts which may be so recovered shall follow the principle that any interests (including the Insureds') that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them; the Underwriter is then to be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly the interests (including the Insureds') of which this coverage is in excess are entitled to claim the residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the interests (including the Insureds') concerned, in the ratio of their respective recoveries as finally settled.

F.   NOTICE AND PROOF OF LOSS

The Insureds shall, as a condition precedent to exercising their rights under this policy, give to the Underwriter written notice of loss or of an occurrence which may become a loss and proof of loss in the same manner required by the terms and conditions of the Primary Policy.

The Underwriter shall be given notice in writing as soon as practicable in the event of (a) the termination of any Underlying Insurance, (b) any additional or return premiums charged or allowed in connection with any Underlying Insurance, or (c) any change to the Underlying Insurance by rewrite, endorsement or otherwise. Written notice to the Underwriter shall be given to Zurich Insurance Company, One Liberty Plaza, 53rd Floor, New York, New York 10006, Attention: Executive Assurance Department.

G.   ALTERATION

No change in, modification of, or assignment of interest under this policy shall be effective except when made by a written endorsement to this policy which is signed by an authorized representative of the Underwriter.

**H.    POLICY TERMINATION**

This policy shall terminate at the earliest of the following times:

1.  the effective date of termination specified in written prior notice by the Parent Company to the Underwriter,

2.  ninety (90) days after receipt by the Parent Company of a written notice of termination from the Underwriter.

3.  upon expiration of the Policy Period as set forth in Item 4 of the Declarations,

4.  ten (10) days after receipt by the Parent Company of a written notice of termination from the Underwriter for failure to pay a premium when due,

5.  at such time as may be agreed upon by the Underwriter and the Parent Company.

The Underwriter shall refund the unearned premium computed at customary short rates if the policy is terminated by the Parent Company.  Under any other circumstances the refund shall be computed pro rata.

Zurich American Insurance Company ("Insurer")



**ZURICH**

## CRIME INSURANCE EXCESS POLICY

RELIANCE UPON OTHER CARRIER'S APPLICATION

Named Insured: NAMCO FINANCIAL EXCHANGE CORP.

To be attached to and form
a part of Policy Number: FID 91585808 00

Endorsement Number: 1
Effective: 08/15/2007

It is agreed that:

In granting coverage under this policy, it is agreed that the Underwriter has relied upon the statements and representations contained in the below referenced application (including materials submitted thereto and, if such application is a renewal application, all such previous policy applications, and their attachments and materials, for which this policy is a renewal or succeeds in time) as being accurate and complete. It is further understood and agreed that the Parent Company and the Insureds warrant and represent to the Underwriter that the statements and representations made in such application were accurate on the date such representations and statement were so given and that in connection therewith the Insureds hereby reaffirm each and every statement made in the FIDELITY BOND APPLICATION, signed by Hamid Taba, as accurate as of 07/02/2007 as if it was made to the Underwriter on such date. All such statements and representations shall be deemed to be material to the risk assumed by the Underwriter, are the basis of this policy and are to be considered as incorporated into this policy.

TYPE OF POLICY APPLICATION

Fidelity Bond Application

DATE SIGNED

07/02/2007

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

U-CR-200-A (CW) (9/93)

Zurich American Insurance Company ("Insurer")



## ZURICH

### CRIME INSURANCE EXCESS POLICY

RELIANCE UPON OTHER CARRIER'S APPLICATION

PARENT COMPANY: NAMCO FINANCIAL EXCHANGE CORP.          Endorsement Number: 1

To be attached to and form
a part of Policy Number: FID 9158508 00                               Effective: 8/15/2007

It is agreed that:

In granting coverage under this policy, it is agreed that the Underwriter has relied upon the statements and representations contained in the below referenced application (including materials submitted thereto and, if such application is a renewal application, all such previous policy applications, and their attachments and materials, for which this policy is a renewal or succeeds in time) as being accurate and complete. It is further understood and agreed that the Parent Company and the Insureds warrant and represent to the Underwriter that the statements and representations made in such application were accurate on the date such representations and statement were so given and that in connection therewith the Insureds hereby reaffirm each and every statement made in the FIDELITY BOND APPLICATION, signed by Hamid Taba, as accurate as of 07/02/2007 as if it was made to the Underwriter on such date. All such statements and representations shall be deemed to be material to the risk assumed by the Underwriter, are the basis of this policy and are to be considered as incorporated into this policy.

TYPE OF POLICY APPLICATION                DATE SIGNED

Fidelity Bond Application                            07/02/2007

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

# Disclosure Statement



## ZURICH

NAMCO Financial Exchange Corp.
Crime Policy #: FID 9158508 00

**ZURICH AGENT/BROKER COMPENSATION DISCLOSURE**

Dear Policyholder:

On behalf of Zurich, we are glad you have chosen us as your insurance company.  We look forward to meeting your insurance needs and want you to understand clearly our business relationship with the agent or broker you chose to represent your company's interests in the placement of insurance coverages.

As is the case with many insurance companies in the United States, Zurich distributes many of its insurance products through agents or brokers.  This means that your agent or broker is not employed by Zurich and, in fact, may represent many insurance companies.  Because we do not employ your agent or broker, the way they are compensated may vary.  We recommend you discuss these arrangements with your agent or broker.

For an explanation of the nature and range of compensation Zurich may pay to your agent or broker in connection with your business, please go to **http://www.zurichna.com**.  Click on the Information link located on the Agent/Broker Compensation Disclosure section.  Where appropriate, insert the Access Code provided below, and you will be able to view this information.  Alternatively, you may call (877) 347-6465 to obtain this type of information.

Thank you.

Access Code:  0112952711

EXHIBIT 3



## SECUREXCESS DECLARATIONS

**SUBJECT TO THE PROVISIONS OF THE UNDERLYING INSURANCE, THIS POLICY MAY ONLY APPLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD. THE LIMITS OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENT AMOUNTS SHALL BE REDUCED AND MAY BE TOTALLY EXHAUSTED BY PAYMENT OF DEFENSE COSTS. PLEASE READ THIS POLICY CAREFULLY.**

| COMPANY: Axis Insurance Company | POLICY NUMBER: MNN 734622/01/2007 |
|---|---|

| Item 1. Policyholder:<br>NAMCO Financial Exchange Corp.<br>12121 Wilshire Boulevard<br>Los Angeles, CA 90025 | Item 2. Policy Period:<br>a. Inception Date: August 15, 2007<br>b. Expiration Date: August 15, 2008<br>Both dates at 12:01 a.m. at the address listed in Item 1. |
|---|---|

Item 3. Limits of Liability (inclusive of defense costs):
    a. Each Claim             $ 5,000,000
    b. Maximum aggregate Limit of Liability for all Claim(s)
        during the Policy Period of all Insurance Products    $ 5,000,000

Item 4. Underlying Insurance and Insurance Products: See Endorsement No. 1

Item 5. Endorsements Attached at Inception: SE1000, MU1032, SE0501, MU7046

Item 6. Notices to Insurer:

| Notice of Claim(s) To Be Sent To:<br>Axis Financial Insurance Solutions Claims<br>Address: Connell Corporate Park<br>         300 Connell Drive<br>         P.O. Box 357<br>         Berkeley Heights, NJ 07922-0357 | All Other Notices To Be Sent To:<br>Axis Financial Insurance Solutions<br>Address: Connell Corporate Park<br>         300 Connell Drive<br>         P.O. Box 357<br>         Berkeley Heights, NJ 07922-0357 |
|---|---|

| Item 7. Pending or Prior Claim Date: N/A | Item 8. Terrorism Coverage Premium: N/A |
|---|---|

The Insurer has caused this Policy to be signed and attested by its authorized officers, but it shall not be valid unless also signed by another duly authorized representative of the Insurer.

_____        JAN 2 2 2008
Authorized Representative                  Date

**Fred Marshall Turner II**
**President**

                           **Andrew Weissert**
                           **Secretary**

# SECUREXCESS POLICY

In consideration of the payment of the premium, and in reliance on all statements made in the application(s) for this Policy and the **Underlying Insurance** and all information provided to the **Insurer** and any or all of the **Underlying Insurers**, and subject to the provisions of this Policy, the **Insurer** and the **Policyholder**, on its own behalf and on behalf of all **Insureds**, agree as follows:

## I. INSURING AGREEMENT

With respect to each **Insurance Product**, the **Insurer** shall provide the **Insureds** with insurance during the **Policy Period** excess of all applicable **Underlying Insurance**. Except as specifically set forth in the provisions of this Policy, the insurance afforded hereunder shall apply in conformance with the provisions of the applicable **Primary Policy** and, to the extent coverage is further limited or restricted thereby, to any other applicable **Underlying Insurance**. In no event shall this Policy grant broader coverage than would be provided by the most restrictive policy constituting part of the applicable **Underlying Insurance**.

The insurance afforded under this Policy shall apply only after all applicable **Underlying Insurance** with respect to an **Insurance Product** has been exhausted by actual payment under such **Underlying Insurance**, and shall only pay excess of any retention or deductible amounts provided in the **Primary Policy** and other exhausted **Underlying Insurance**.

## II. DEFINITIONS

A. **Claim(s)** means the event(s) which take place during the **Policy Period** and which trigger(s) coverage under the insuring agreement(s) of the **Underlying Insurance**.

B. **Insurance Product** means each separate type of insurance identified as an **"Insurance Product"** in Endorsement No. 1 to this Policy.

C. **Insured(s)** means any person(s) or entity(ies) that may be entitled to coverage under the **Primary Policy** at its inception.

D. **Insurer** means the company identified as **"Insurer"** in the Declarations.

E. **Policy Period** means the period from the inception date to the expiration date of this Policy stated in Item 2. in the Declarations, or its earlier cancellation or termination date, if any.

F. **Policyholder** means the person(s) or entity(ies) identified in Item 1. in the Declarations.

G. **Primary Policy** means the specific policy identified as the **"Primary Policy"** under the applicable **Insurance Product** listed in Endorsement No. 1 to this Policy.

H. **Sublimit** means any **Underlying Limits** which:

    1.    applies only to a particular grant of coverage under such **Underlying Insurance**; and
    2.    reduces and is part of the otherwise applicable limits of liability of such **Underlying Insurance** set forth in Item 4 of the Declarations.

I. **Underlying Insurance** means each insurance policy which constitutes all or part of an **Insurance Product**, as scheduled in Endorsement No. 1 to this Policy.

J. **Underlying Insurers** means any or all of the companies who issued the policies of **Underlying Insurance**.

K. **Underlying Limits** means, with respect to each **Insurance Product**, an amount equal to the aggregate of all limits of liability for each **Insurance Product** stated in Endorsement No. 1 to this Policy, plus the

uninsured retention or deductible, if any, applicable to the **Primary Policy** under such **Insurance Product**.

## III. CONDITIONS OF COVERAGE

**A.** For purposes of determining when insurance under this Policy shall attach and the limitations under which such insurance shall apply:

   **1.** All of the **Underlying Insurance** in effect as of the inception date of the **Policy Period** shall be maintained in full effect with solvent insurers throughout the **Policy Period** except for any reduction or exhaustion of the **Underlying Limits** as provided in Section IV. below; and

   **2.** All **Insureds** shall comply fully with all of the provisions of this Policy.

**B.** As a condition precedent to coverage under this Policy, the **Insured** shall give to the **Insurer** as soon as practicable, but in no event later than thirty (30) days thereafter, written notice and the full particulars of i) the exhaustion of the aggregate limit of liability of any **Underlying Insurance**, ii) any **Underlying Insurance** not being maintained in full effect during the **Policy Period**, or iii) an **Underlying Insurer** becoming subject to a receivership, liquidation, dissolution, rehabilitation or similar proceeding or being taken over by any regulatory authority.

**C.** If during the **Policy Period** the provisions of the **Primary Policy** are changed in any manner, as a condition precedent to coverage under this Policy, the **Insured** shall give written notice to the **Insurer** of the full particulars of such change as soon as practicable but in no event later than thirty (30) days following the effective date of such change. No amendment to any **Primary Policy** or **Underlying Insurance** during the **Policy Period** shall be effective in broadening or extending the coverage afforded by this Policy or extending or increasing the limits of liability afforded by this Policy unless the **Insurer** so agrees in writing. The **Insurer** may, in its sole discretion, condition its agreement to follow any changes to the **Primary Policy** or the **Underlying Insurance** on the **Insured** paying any additional premium required by the **Insurer** for such change.

As soon as practicable, but in no event later than thirty (30) days thereafter, the **Policyholder** must give the **Insurer** written notice of any additional or return premiums charged or allowed in connection with any **Underlying Insurance**.

## IV. REDUCTION OR EXHAUSTION OF UNDERLYING LIMITS

**A.** If the **Underlying Limits** are partially reduced solely due to actual payment under the **Underlying Insurance**, this Policy shall continue to apply as excess insurance over the remaining **Underlying Limits**.

**B.** If the **Underlying Limits** are wholly exhausted solely due to actual payment under the **Underlying Insurance**, this Policy shall continue to apply as primary insurance with respect to the applicable **Insurance Product(s)** and the retention or deductible, if any, applicable under the **Primary Policy(ies)** shall apply under this Policy.

**C** If any **Underlying Limits** are subject to a **Sublimit** then coverage hereunder shall not apply to any **Claim** which is subject to such **Sublimit**, provided however, that the **Underlying Limit** shall be recognized hereunder as depleted to the extent of any payment of such **Claim** subject to such **Sublimit**.

## V. LIMITS OF LIABILITY

**A.** The amount stated in Item 3.a. in the Declarations shall be the maximum limit of the **Insurer's** liability for each **Claim** under the applicable **Primary Policy**, and shall be the maximum amount payable by the **Insurer** under this Policy for a single **Claim**, which amount shall be part of, and not in addition to, the amount stated in Item 3.b. in the Declarations.

B. The amount stated in Item 3.b. in the Declarations shall be the maximum aggregate amount payable by the **Insurer** under this **Policy** with respect to all **Claims** during the **Policy Period** for all **Insurance Products**.

C. This **Policy** does not provide coverage for any **Claim** not covered by the **Underlying Insurance**, and shall drop down only to the extent that payment is not made under the **Underlying Insurance** solely by reason of exhaustion of the **Underlying Insurance** through payments thereunder, and shall not drop down for any other reason. If any **Underlying Insurer** fails to make payments under such **Underlying Insurance** for any reason whatsoever, including without limitation the insolvency of such **Underlying Insurer**, then the **Insureds** shall be deemed to have retained any such amounts which are not so paid. If the **Underlying Insurance** is not so maintained, the **Insurer** shall not be liable under this **Policy** to a greater extent than it would have been had such **Underlying Insurance** been so maintained.

D. Payment by the **Insurer** of any amount, including but not limited to defense costs, shall reduce the limits of liability available under this **Policy**.

## VI. SETTLEMENTS AND DEFENSE

A. No **Insured** under this **Policy** may, without the **Insurer's** prior written consent, which consent shall not be unreasonably withheld, admit liability for or settle any matter for which insurance may be sought under this **Policy**.

B. The **Insurer** may, at its sole discretion, elect to participate in the investigation, defense and/or settlement of any claim under this **Policy**, regardless of whether the applicable **Underlying Insurance** has been exhausted.

C. The **Insured**, and not the **Insurer**, has the duty to defend all **Claims** under this **Policy**.

## VII. SUBROGATION

A. In the event of payment under this **Policy**, the **Insurer** shall be subrogated to all rights of recovery of each and all **Insureds** against any person or organization, and the **Insureds** shall do whatever is necessary to secure those rights to the satisfaction of the **Insurer**, including the execution of such documents necessary to enable the **Insurer** effectively to bring suit in the name of such **Insureds**.

B. Any amount recovered after payment under this **Policy** and any **Underlying Insurance** policies shall be apportioned among the **Insurer** and the **Underlying Insurers** net of the expense of such recovery in the reverse order of actual payment. The expenses attendant to such recovery shall be apportioned among those benefiting from the recovery in proportion to the amount of benefit to each party.

## VIII. AUTHORIZATION

Except as stated in paragraph IX.A. below, the **Policyholder** shall be the sole agent of all **Insureds** with respect to all matters, including but not limited to giving and receiving notices and other communications, effecting or accepting any endorsements to or notices of cancellation of this **Policy**, the payment of premium and the receipt of any return premiums.

## IX. NOTICE

A. With respect to any **Claim**, situation that could give rise to a **Claim**, or other matter as to which insurance may be sought under this **Policy**, the **Policyholder** or any **Insured** must give the **Insurer** written notice contemporaneously with and in the identical manner required by the applicable **Primary Policy**.

B. All notices under this **Policy** shall be sent to the **Insurer** at the address set forth in Item 6. in the Declarations.

## X.   MODIFICATION, CANCELLATION AND NONRENEWAL

A.   No modification of this Policy shall be effective unless made by endorsement signed by an authorized representative of the **Insurer**.

B.   The **Policyholder** may cancel this Policy at any time by written notice stating when thereafter such cancellation is to be effective.

C.   The **Insurer** may cancel this Policy only for nonpayment of premium, and only by delivering or mailing to the **Policyholder** written notice stating when, not less than ten (10) days thereafter, such cancellation shall become effective. The delivery or mailing of such notice shall be sufficient proof thereof and this Policy and the **Policy Period** shall terminate at the date and hour specified in the notice.

D.   The **Insurer** shall refund the unearned premium, computed at the customary short rate, if the Policy is cancelled by the **Policyholder**.

E.   The **Insurer** shall have no obligation to renew this Policy upon its expiration. If the **Insurer** decides not to renew this Policy, the **Insurer** shall provide written notice to the **Policyholder** by messenger, express delivery or first class mail at least sixty (60) days prior to the expiration of the Policy.

## XI.   EXCLUSIONS

The **Insurer** shall not be liable for any amount in any **Claim** taking place during the **Policy Period** and arising under any **Insurance Product**, which is based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving:

A.   Any demand, suit or other proceeding pending, or order, decree or judgment entered, against any **Insured** on or prior to the Pending or Prior Claim Date set forth in Item 7 of the Declarations or any wrongful act, fact, circumstance or situation underlying or alleged therein; or

B.   Any other wrongful act, fact, circumstance or situation whenever occurring, which together with a wrongful act, fact, circumstance or situation described in (a) above are causally or logically interrelated by a common nexus.

Endorsement No. 1

Effective date of this endorsement: 12:01 a.m. on: August 15, 2007
To be attached to and form part of Policy Number: MNN 734622/01/2007
Issued to: NAMCO Financial Exchange Corp.
By: Axis Insurance Company

# SCHEDULE OF UNDERLYING INSURANCE AND INSURANCE PRODUCTS

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**SECUREXCESS POLICY**

The Schedule of Underlying Insurance and Insurance Products is as follows:

   **A.  Insurance Product:   Commercial Crime**

   **1.   Primary Policy**

| Insurer | Policy Number | Limits | Policy Period |
|---------|---------------|--------|---------------|
| Liberty Mutual Insurance Company | FI4N587509001 | $5,000,000 | August 15, 2007-August 15, 2008 |

   **2.   Other Underlying Policies**

| Insurer | Policy Number | Limits | Policy Period |
|---------|---------------|--------|---------------|
| Zurich American Insurance Company | FID 915850800 | $5,000,000 | August 15, 2007-August 15, 2008 |

All other provisions remain unchanged.

_____
Authorized Representative

JAN 2 2 2008
_____
Date

Endorsement No. 2

Effective date of this endorsement:  12:01 a.m. on: August 15, 2007
To be attached to and form part of Policy Number: MNN 734622/01/2007
Issued to: NAMCO Financial Exchange Corp.
By: Axis Insurance Company

## MANUSCRIPT APPLICATION ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

## SECUREXCESS POLICY

In consideration of the premium charged, it is agreed by the Insurer and **Insureds** that the application or proposal dated *July 2, 2007* and submitted to *Axis Insurance Company* shall be accepted by the Insurer as the Application for this Policy.

Any and all references to an Application or application in this Policy shall mean the application or proposal described above.  The Insurer has relied upon all statements, warranties and other information and documents contained in or submitted with such other application or proposal as if they were submitted directly to Insurer using its own Application form.

All other provisions remain unchanged.

_____
Authorized Representative

JAN 2 2 2008
_____
Date

Endorsement No. 3

Effective date of this endorsement:  12:01 a.m. on: August 15, 2007
To be attached to and form part of Policy Number: MNN 734622/01/2007
Issued to: NAMCO Financial Exchange Corp.
By: Axis Insurance Company

# CALIFORNIA AMENDATORY ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**SECUREXCESS INSURANCE POLICY**

1.   Section **X.**, **MODIFICATION, CANCELLATION AND NONRENEWAL**, paragraph C. is amended by the addition of the following:

   The notice shall state the reason for the cancellation. Notice of cancellation shall be mailed or delivered to the **Policyholder** at the mailing address shown on the Policy and to the producer of record, if applicable, provided that the producer of record is not an employee of the **Insurer**.

2.   Section **X.**, **MODIFICATION, CANCELLATION AND NONRENEWAL**, paragraph E. is deleted and replaced by the following:

   The **Insurer** shall have no obligation to renew this Policy upon its expiration. Once the **Insurer** chooses to nonrenew this Policy, or to condition renewal upon a reduction of the Policy's Limit of Liability, an elimination of coverage, an increase in retention or an increase of more than 25 percent of the current Policy's premium, the **Insurer** shall deliver or mail to the **Policyholder** at the mailing address shown on the Policy, and to the producer of record, if applicable, written notice stating such at least sixty (60) days but not more than one hundred twenty (120) days prior to the end of the **Policy Period** set forth in Item 2. in the Declarations. The notice shall include the specific reason for nonrenewal or conditional renewal.

All other provisions remain unchanged.

_____
Authorized Representative

      JAN 2 2 2008
_____
Date

SE 0501 (Ed. 1203)                                                    Printed in U.S

Endorsement No. 4

Effective date of this endorsement: 12:01 a.m. on: August 15, 2007
To be attached to and form part of Policy Number: MNN 734622/01/2007
Issued to: NAMCO Financial Exchange Corp.
By: Axis Insurance Company

## ADDENDUM TO DECLARATIONS

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**SECUREXCESS POLICY**

The Declarations is amended by the addition of the following:

Policy Premium: $8,750

# EXHIBIT 4

THE HARTFORD
UNIVERSAL EXCESS™ POLICY



Policy Number _00 FA 0245357-07_

Agency Code, Name & Address
88094

TWIN CITY FIRE INSURANCE CO.
INDIANAPOLIS, IN 46268-0930
a stock insurance company, herein called
the Insurer

LOCKTON INSURANCE BROKERS INC
TWO EMBARCADERO CTR, STE 1700
SAN FRANCISCO, CA 94111

NOTICE: THIS IS A CLAIMS MADE POLICY. EXCEPT AS MAY BE OTHERWISE PROVIDED HEREIN, THE COVERAGE
OF THIS POLICY IS LIMITED TO LIABILITY FOR ACTS COVERED BY UNDERLYING INSURANCE (ITEM D.)
FOR WHICH CLAIMS ARE FIRST MADE AGAINST THE INSURED(S) WHILE THE POLICY IS IN FORCE. THIS
POLICY DOES NOT PROVIDE FOR THE UNDERWRITERS TO DEFEND THE INSURED, AND ANY DEFENSE
COSTS AND OTHER CLAIM EXPENSE COVERED UNDER THE POLICY IS PART OF AND NOT IN ADDITION
TO THE LIMIT OF LIABILITY. PLEASE READ AND REVIEW THE POLICY CAREFULLY.

## DECLARATIONS

**ITEM A.** Name of Insured: (hereinafter called the "Insured")

           NAMCO FINANCIAL EXCHANGE  CORPORATION
Address of Insured: 12121 WILSHIRE BLVD.
           SUITE 1400
           LOS ANGELES, CA 90025

**ITEM B.** Policy Period: From 12:01 a.m. on    8/15/07        To 12:01 a.m. on    8/15/08
              (Standard Time at the address stated in Item A)

**ITEM C.** LIMIT OF LIABILITY: SEE FORM # UE00H07500    Aggregate each Policy Period, including claim expense.

**ITEM D.** SCHEDULE OF UNDERLYING INSURANCE:

    (1)    Primary Policy:     LIBERTY MUTUAL INSURANCE COMPANY
                        FI4N587509001

           Company:          SEE FORM # UE00H07500

           Policy Number:

           Limit of Liability:

    (2)    Underlying Excess Policy(ies):     SEE FORM # UE00H07500

**ITEM E.** ENDORSEMENTS EFFECTIVE AT INCEPTION:   SEE FORM GU207 (SCHEDULE OF ENDORSEMENTS)

**ITEM F.** TERMINATION OF PRIOR POLICY(IES):

**ITEM G.** DISCOVERY CLAUSE:

    (1) Additional Premium:     AS PER UNDERLYING INSURANCE

    (2) Additional Period:     AS PER UNDERLYING INSURANCE

**ITEM H.** POLICY PERIOD PREMIUM:     $7,650.00

_____        _____
Authorized Representative             Date

UE 00 H001 00 1004

**ENDORSEMENT**

GU 207
(6-78)

This endorsement, effective on     8/15/07          at 12:01 A.M. standard time, forms a part of

Policy No.   00 FA 0245357-07     of the         TWIN CITY FIRE INSURANCE CO.

Issued to    NAMCO FINANCIAL EXCHANGE   CORPORATION

David Zwiener, President

SCHEDULE OF FORMS AND ENDORSEMENTS

| | | | |
|---|---|---|---|
| | RN00N02600 | 05/93 | IN WITNESS PAGE |
| 1 | GU207 | 06/78 | EXCESS FIDELITY AMEND DECLARATIONS ENDORSEMENT |
| 2 | UE00H07701 | 06/06 | EXCESS FIDELITY ENDORSEMENT WHEN PRIMARY POLICY IS PER LOSS POLICY |
| 3 | UE00H07900 | 03/06 | UNIVERSAL EXCESS OVER CRIME COVERAGE ONLY ENDORSEMENT |
| 4 | UE04H01600 | 12/04 | CALIFORNIA NONRENEWAL ENDORSEMENT |
| | EL04R11101 | 05/05 | IMPORTANT INFORMATION TO POLICYHOLDERS |
| | HR00H09300 | 02/07 | PRODUCER COMPENSATION NOTICE |

Rev. Ed. Date (04/02)
GU 207 (6-78)

## The Hartford

### UNIVERSAL EXCESS™ POLICY

I. **INSURING AGREEMENT**

The Insurer designated in the Declarations (a Stock Insurance Company herein called the "Underwriters"), in consideration of the payment of the premium and in reliance upon any application, materials or information made available by or on behalf of the Insured(s) to the Underwriters during the application or proposal process, and subject to all of the terms, conditions and exclusions of this policy, agrees with the Insured(s) as follows:

The Underwriters shall provide the Insured(s) with insurance during the Policy Period which is in excess of the total limits of liability and any retention/deductible under all Underlying Insurance, as set forth in Item D of the Declarations, whether collectible or not.

II. **LIMIT OF LIABILITY**

A.  It is expressly agreed that liability for any loss shall attach to the Underwriters only after the Primary and Underlying Excess insurers shall have paid the full amount of their respective liability (hereinafter referred to as the "Underlying Insurance") or the Insured(s) shall have paid the full amount of such liability due to the financial insolvency of an insurer of the Underlying Insurance. The Underwriters shall then be liable to pay only such additional amounts up to the Limit of Liability set forth in Item C of the Declarations, which shall be the maximum liability of the Underwriters in each Policy Period.

B.  In the event of the reduction or exhaustion of the aggregate limits of liability under the Primary and Underlying Excess Policy(ies) by reason of losses paid thereunder for claims first made while this policy is in force, this policy shall:

   (1)  In the event of such reduction, continue in force excess of the reduced Primary and Underlying Insurance; or

   (2)  In the event of exhaustion, continue in force as primary insurance, subject to the Underwriters' Limit of Liability and to the other terms, conditions and exclusions of this policy,

   provided always that in the latter event this policy shall only pay excess of the retention/deductible applicable to such primary insurance as set forth in the Primary Policy, which shall be applied to any subsequent loss in the same manner specified in such primary insurance. Notice of exhaustion of Underlying Insurance shall be given the Underwriters upon such exhaustion. Nothing herein shall be construed to provide for any duty on the part of the Underwriters to defend any Insured or to pay defense or any claim expenses in addition to the Limit of Liability set forth in Item C of the Declarations.

C.  If the Primary Policy contains a specific grant of coverage that is subject to a sub-limit of liability, then coverage under this policy shall not apply to any claim which is subject to such sub-limit of liability. However, any such claim shall be recognized under this policy solely for purposes of reducing or exhausting, to any extent, the Underlying Insurance.

III. **PRIMARY AND UNDERLYING INSURANCE**

A.  This policy is subject to the same warranties, terms, conditions, definitions, exclusions and endorsements (except as regards the premium, the amount and limits of liability, and duty to defend, and except as otherwise provided herein) as are contained in or as may be added to the Primary Policy, together with all the warranties, terms, conditions, exclusions and limitations contained in or added by endorsement to any Underlying Excess Policy(ies). In no event shall this policy grant broader coverage than is provided by the most restrictive Primary or Underlying Excess Policy(ies).

B.  It is a condition precedent to this policy that the policy(ies) of the Primary and Underlying Excess Insurers shall be maintained in full effect while this policy is in force except for any reduction of the aggregate limits contained therein (as provided for in Section II., B. above).

UE 00 H002 00 1004                          © 2004, The Hartford                          Page 1 of 3
       00 FA 0245357-07        8/15/07

C.  Failure of the Insured to comply with the foregoing shall not invalidate this policy, but in the event of such failure, the Underwriters shall be liable only to the extent that it would have been liable had the Insured complied therewith. To the extent that any Underlying Insurance is not maintained in full effect while this policy is in force, the Insured(s) shall be deemed to be self-insured for the amount of the limit of liability of the Underlying Insurance which is not maintained as set forth above.

## IV.  COSTS, CHARGES, EXPENSES AND COOPERATION

A.  No costs, charges or expenses for investigation or defense of claims shall be incurred, or settlements made, without the Underwriters' written consent, such consent not to be unreasonably withheld; however, in the event of such consent being given, the Underwriters will pay, subject to the provisions of Section II., such costs, settlements, charges or expenses.

B.  The Underwriters may, at their sole option, elect to participate in the investigation, settlement or defense of any claim even if the Underlying Insurance has not been exhausted. The Insured(s) shall, as a condition precedent to their rights under this policy, give to the Underwriters all information and cooperation as the Underwriters may reasonably require and shall do nothing that may prejudice the Underwriters' position or its potential or actual rights of recovery.

## V.  GENERAL CONDITIONS

A.  Definitions

1.  Insured(s) means those individuals and/or entities insured under the Underlying Insurance.

2.  Primary Policy means the policy scheduled in Item D(1) of the Declarations.

3.  Underlying Excess Policy(ies) means the policy(ies) scheduled in Item D(2) of the Declarations.

4.  Underlying Insurance means all those policies scheduled in Item D of the Declarations.

5.  Policy Period means the period set forth in Item B of the Declarations, subject to prior cancellation pursuant to Section V. C.

B.  Discovery Clause

If the Insured(s) elect and are granted a discovery period or extended reporting period under the Underlying Insurance, then the Insured(s) shall have the same ability to elect a discovery period or extended reporting period under this policy by: (i) satisfying the conditions as set forth in the Underlying Insurance; and (ii) paying the additional premium set forth in Item G(1) of the Declarations. If elected, the discovery period or extended reporting period shall be for the period of time set forth in Item G(2) of the Declarations.

C.  Cancellation Clause

The Underwriter may cancel this policy for non-payment of premium by sending not less than ten (10) days notice to the Insured(s) at their last known address. The Underwriter may not otherwise cancel this policy. This policy may be cancelled by the Insured(s) in accordance with the conditions of the Underlying Insurance. If the policy shall be cancelled by the Insured(s), the Underwriters shall retain the customary short rate proportion of the premium hereon.

D.  Termination of Prior Policy(ies)

The taking effect of this policy shall terminate, if not already terminated, the policy(ies) specified in Item F of the Declarations.

E.   Notice

The Underwriters shall be given notice in writing as soon as practicable: (a) in the event of the cancellation or non-renewal of any Underlying Insurance; and (b) of any additional or return premiums charged or paid in connection with any Underlying Insurance.

Any changes in coverage in the Underlying Insurance or any changes in the insured(s) that would require notice under the Underlying Insurance shall be reported to the Underwriters as soon as practicable and the insured(s) shall, upon request, furnish the Underwriters with copies of such changes. The Underwriters shall not be subject to such changes without the Underwriter's consent, such consent not to be unreasonably withheld.

In the event any claim is made against any insured, written notice shall be given to the Underwriters in the same manner as given to the Primary Policy at 2 Park Ave, 5th Floor, New York, NY 10016, ATTN:  Hartford Financial Products Claims Division [Fax # (917) 464-5972], and otherwise pursuant to all appropriate notice provisions contained in the Underlying Insurance.



**THE HARTFORD**

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

TWIN CITY FIRE INSURANCE COMPANY
HOME OFFICE - INDIANAPOLIS, INDIANA
ADMINISTRATIVE OFFICES - HARTFORD, CONNECTICUT
(A STOCK INSURANCE COMPANY MEMBER OF THE HARTFORD)

Brian S. Becker, Secretary                    David Zwiener, President

RN 00 N026 00 0593
ILBP 83 01 05 89 RN
    00 FA 0245357-07    8/15/07

ENDORSEMENT NO:     1

This endorsement, effective 12:01 am, August 15, 2007                    forms part
of policy number 57 FA 0245357 07

Issued to: Namco Financial Exchange Corporation

by: Twin City Fire Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

EXCESS FIDELITY AMEND DECLARATIONS ENDORSEMENT

This endorsement modifies insurance provided under the following:

UNIVERSAL EXCESS POLICY

It is agreed that the DECLARATIONS is amended as follows:

NOTICE is deleted and replaced with the following:

NOTICE:     THE COMPANY AGREES WITH THE INSURED NAMED BELOW THAT THE
COVERAGE AFFORDED BY THIS POLICY SHALL FOLLOW ALL OF THE TERMS
AND CONDITIONS OF THE PRIMARY COVERAGE LISTED IN THE SCHEDULE OF
UNDERLYING INSURANCE SET FORTH IN ITEM D. BELOW SUBJECT, HOWEVER,
TO THE SPECIAL CONDITIONS APPLICABLE TO THIS POLICY AND ANY
ENDORSEMENTS ATTACHED HERETO.

ITEM C. LIMIT OF LIABILITY is deleted and replaced with the following:

ITEM C.   LIMIT OF LIABILITY:

| Coverage | Description | Limit of Liability |
|---|---|---|
| Insuring Agreement 1 | Employee Theft | $5,000,000 Excess of $15,000,000 |

The Company's Limit of Liability for each Coverage for which an amount is inserted above shall be in
excess of all Underlying Insurance shown in the Schedule of Underlying Insurance below plus any
Deductible Amount shown as applicable to the Primary Coverage.

ITEM D. SCHEDULE OF UNDERLYING INSURANCE is deleted and replaced with the following:

ITEM D. SCHEDULE OF UNDERLYING INSURANCE

**Primary Coverage**  Carrier: Liberty Mutual Insurance Company
Policy No.: FI4N587509001

| Coverage | Description | Limit of Liability | Deductible |
|---|---|---|---|
| Insuring Agreement 1 | Employee Theft | $5,000,000 | $ 25,000 |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

**Other Underlying Coverage**  ☐ None     ☒ See Schedule Below

**Excess Layer**  Carrier:  Zurich American Insurance Company
Policy No.: FID 9158508 00

| Coverage | Description | Limit of Liability |
|---|---|---|
| Insuring Agreement 1 | Employee Theft | $5,000,000 Excess of $5,000,000 |

**Excess Layer**  Carrier: Axis Insurance Company
Policy No.: MNN 734622/01/2007

| Coverage | Description | Limit of Liability |
|---|---|---|
| Insuring Agreement 1 | Employee Theft | $5,000,000 Excess of $10,000,000 |

**Excess Layer**  Carrier:
Policy No.:

| Coverage | Description | Limit of Liability |
|---|---|---|
| | | $  Excess of $ |
| | | $  Excess of $ |
| | | $  Excess of $ |
| | | $  Excess of $ |
| | | $  Excess of $ |

**Excess Layer**  Carrier:
Policy No.:

| Coverage | Description | Limit of Liability |
|---|---|---|
| | | $  Excess of $ |
| | | $  Excess of $ |
| | | $  Excess of $ |
| | | $  Excess of $ |
| | | $  Excess of $ |

UE 00 H075 00 1205          © 2005, The Hartford          Page 2 of 3

| Excess Layer | Carrier: |
| | Policy No.: |

| **Coverage** | **Description** | | **Limit of Liability** |
| | | $ | Excess of $ |
| | | $ | Excess of $ |
| | | $ | Excess of $ |
| | | $ | Excess of $ |
| | | $ | Excess of $ |

| Excess Layer | Carrier: |
| | Policy No.: |

| **Coverage** | **Description** | | **Limit of Liability** |
| | | $ | Excess of $ |
| | | $ | Excess of $ |
| | | $ | Excess of $ |
| | | $ | Excess of $ |
| | | $ | Excess of $ |

**ITEM F.   TERMINATION OF PRIOR POLICY(IES):**

The insured by the acceptance of the Policy gives notice to the Company terminating or canceling prior bond(s) or policy(ies) No.(s)          such termination or cancellation to be effective as of the time this Policy becomes effective.

**ITEM G.  DISCOVERY CLAUSE is deleted in its entirety.**

All other terms and conditions remain unchanged.

**David Zwiener, President**

__9/4/2007_____
Date

UE 00 H075 00 1205                © 2005, The Hartford                Page 3 of 3

ENDORSEMENT NO:     2

This endorsement, effective 12:01 am,      8/15/07                                              forms part
policy number     00 FA 0245357-07

Issued to:          NAMCO FINANCIAL EXCHANGE  CORPORATION

by:                 TWIN CITY FIRE INSURANCE CO.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCESS FIDELITY ENDORSEMENT WHEN PRIMARY POLICY IS PER LOSS POLICY

This endorsement modifies insurance provided under the following:

**UNIVERSAL EXCESS POLICY**

It is agreed that II. LIMIT OF LIABILITY is deleted in its entirety and replaced with the following:

A.   It is expressly agreed that liability for any loss shall attach to the Underwriters only after the Primary and Underlying Excess insurers shall have paid the full amount of their respective liability (hereinafter referred to as the "Underlying Insurance") or the insured(s) shall have paid the full amount of such liability due to the financial insolvency of an insurer of the Underlying Insurance. The Underwriters shall then be liable to pay only such additional amounts up to the Limit of Liability set forth in Item C of the Declarations, which shall be the maximum liability of the Underwriters per loss for any one occurrence.

B.   If the Primary Policy contains a specific grant of coverage that is subject to a sub-limit of liability, then coverage under this policy shall not apply to any claim which is subject to such sub-limit of liability. Excess coverage shall only apply to those Insuring Clauses noted on the Declarations.

It is agreed that III. PRIMARY AND UNDERLYING INSURANCE B. & C. are deleted and replaced with the following:

B.   It is a condition precedent to this policy that the policy(ies) of the Primary and Underlying Excess Insurers shall be maintained in full effect while this policy is in force.

C.   Failure of the insured to comply with the foregoing shall not invalidate this policy, but in the event of such failure, the Underwriters shall be liable only to the extent that it would have been liable had the insured complied therewith. To the extent that any Underlying Insurance is not maintained in full effect while this policy is in force, the insured(s) shall be deemed to be self-insured for the amount of the limit of liability of the Underlying Insurance which is not maintained as set forth above.

It is agreed that IV. COSTS, CHARGES, EXPENSES AND COOPERATION is deleted in its entirety:

It is agreed that V. GENERAL CONDITIONS B. is deleted.

It is agreed that V. GENERAL CONDITIONS C. is deleted and replaced with the following:

C.   The Underwriter may cancel this policy for non-payment of premium by sending not less than ten (10) days notice to the insured(s) at their last known address. In the event of cancellation, termination or non-renewal of the Primary Policy, this Policy shall be deemed to be canceled as of the effective date of cancellation, termination or non-renewal of such Primary Policy.

; agreed that the last paragraph of V. GENERAL CONDITIONS E. is deleted and replaced with the following:

UE 00 H077 01 0606                      © 2008, The Hartford                           Page 1 of 2

ENDORSEMENT NO:    2

In the event any claim is made against any Insured, written notice shall be given to the Underwriters in the same manner as given to the Primary Policy at: Hartford Financial Products Bond Claims Division, T-4, 690 Asylum Avenue, Hartford, CT 06115 [Fax # (860) 757-5835 or (860) 547-8265], and otherwise pursuant to all appropriate notice provisions contained in the Underlying Insurance.

All other terms and conditions remain unchanged.

David Zwiener, President

UE 00 H077 01 0606                  © 2006, The Hartford                  Page 2 of 2

ENDORSEMENT NO:        3

This endorsement, effective 12:01 am,      8/15/07
  policy number    00 FA 0245357-07

forms part

issued to:        NAMCO FINANCIAL EXCHANGE   CORPORATION

by:               TWIN CITY FIRE INSURANCE CO.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## UNIVERSAL EXCESS OVER CRIME COVERAGE ONLY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**UNIVERSAL EXCESS POLICY**

It is agreed that wherever the term Limits of Liability appears in this policy, it shall have the same meaning as Limits of Insurance.

All other terms and conditions remain unchanged.

*[signature]*

David Zwiener, President

© 2006, The Hartford                          Page 1 of 1

ENDORSEMENT NO:     4

This endorsement, effective 12:01 am,     8/15/07
policy number     00 FA 0245357-07

forms part

issued to:     NAMCO FINANCIAL EXCHANGE   CORPORATION

by:     TWIN CITY FIRE INSURANCE CO.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### CALIFORNIA NONRENEWAL ENDORSEMENT

Wherever used in this endorsement: 1) "Insurer" means the insurance company which issued this policy; and 2) "Insured" means the Name of Insured, Name of Company, Name of Partnership, Parent Company, Name of Insured Plan or Trust, Name of Insured Entity, Named Entity, Named Real Estate Investment Trust(s), Name of Sponsor Company or Insured stated in ITEM A or ITEM 1 of the Declarations Page.

The Cancellation provision of the Policy is amended to include the following:

NOTICE OF NONRENEWAL

A.      If the Insurer decides not to renew the Policy, the Insurer shall mail or deliver to the producer of record and the Insured Notice of Nonrenewal at least sixty (60) days but no more than one hundred twenty (120) days prior to the end of the expiration date or anniversary date of the Policy. The Notice of Nonrenewal shall contain the reason for nonrenewal of the Policy.

The Insurer is not required to send Notice of Nonrenewal in the following situations:

1.     If the transfer or renewal of a policy, without any changes in terms, conditions or rates, is between the Insurer and a member of the Insurer's insurance group.

2.     If the Policy has been extended for ninety (90) days or less, provided that notice has been given in accordance with the nonrenewal notice requirements cited in paragraph A above in the Nonrenewal Section.

3.     If the Insured has obtained replacement coverage, or has agreed, in writing, within sixty (60) days of the termination of the Policy, to obtain that coverage.

4.     If the Policy is for a period of no more than sixty (60) days and the Insured is notified at the time of issuance that it will not be renewed.

5.     If the Insured requests a change in the terms or conditions or risks covered by the Policy within sixty (60) days prior to the end of the Policy Period.

6.     If the Insurer has made a written offer to the Insured, in accordance with the time frames shown in the non-renewal notice requirements cited in paragraph A above in the Nonrenewal Section, to renew the Policy under changed terms or conditions or at an increased premium rate.

All other terms and conditions remain unchanged.

David Zwiener, President

UE 04 H016 00 1204                    © 2004, The Hartford                    Page 1 of 1

## IMPORTANT INFORMATION TO POLICYHOLDERS

the event you need to contact someone about this policy/bond for any reason, please contact your producer. If you ve additional questions, you may contact the insurance company issuing this policy/bond at the following address and .ephone number:

THE HARTFORD
COMPLIANCE DEPARTMENT
HARTFORD FINANCIAL PRODUCTS
2 PARK AVENUE
5TH FLOOR
NEW YORK, NEW YORK 10016
1-212-277-0400

If you have a problem with your insurance company, its producer or representative that has not been resolved to your satisfaction, please call or write to the Department of Insurance.

Consumer Services Division
California Department of Insurance
300 South Spring Street
14th Floor
Los Angeles, CA 90013
1-800-927-4357 or -1-213-897-8921

Written correspondence is preferable so that a record of your inquiry can be maintained. When contacting your producer, company or the Bureau of Insurance have your policy/bond number available.

ILNP 85 14 03 89 CA
EL 04 R111 01 0505

00 FA 0245357-07    8/15/07

**Producer Compensation Notice**



You can review and obtain information on The Hartford's
producer compensation practices at www.thehartford.com
or at 1-800-592-5717.

# EXHIBIT 5

# WEISS & SPEES

Attorneys at Law
1925 Century Park East, Suite 650
Los Angeles, California 90067
Telephone (424) 245-3100
Facsimile (424) 245-3199

*Jonathan C. Balfus*
*jb@weissandspees.com*

July 2, 2009

Liberty Mutual Insurance Company
175 Berkeley Street
Boston, MA 02116

      Re:    ***In Re Namco Financial Exchange Corp.***
            USBC Case No.     2:09-BK-17727
            Your Policy No.     FI4N587509001

Dear Sir or Madam:

      We represent Heide Kurtz, Chapter 7 Trustee ("Trustee") in the above-referenced action. Having reviewed the Debtor Namco Capital Group, Inc.'s ("Debtor") financial information we have determined there are a substantial number of claims against the Debtor that are covered under the insurance policy shown above issued by you to the Debtor. These claims are believed to total in excess of $35,000,000 and include, without limitation, the misappropriation or inappropriate transfer of funds received from participants in 1031 exchange transactions. On behalf of the Trustee, we hereby submit a claim for payment pursuant to the terms of the identified policy. The Trustee reserves the right to make additional claims as appropriate as more information regarding the insured's activities is discovered.

      This letter is not meant and should not be construed as a waiver, limitation, modification or compromise of any of our client's rights and remedies, all of which are hereby expressly reserved. Should you require any further information, please do not hesitate to contact the undersigned.

Very truly yours,

WEISS & SPEES

JONATHAN C. BALFUS

cc:    Heide Kurtz
       Michael H. Weiss
       Claudia Porras/San Francisco Series of Lockton Companies, LLC

# WEISS & SPEES

Attorneys at Law
1925 Century Park East, Suite 650
Los Angeles, California 90067
Telephone (424) 245-3100
Facsimile (424) 245-3199

Jonathan C. Balfus
jb@weissandspees.com

July 2, 2009

Axis Financial Insurance Solutions Claims
Connell Corporate Park
300 Connell Drive
P.O. Box 357
Berkeley Heights, NJ 07922-0357

Re:   *In Re Namco Financial Exchange Corp.*
USBC Case No.      2:09-BK-17727
Your Policy No.    MNN 734622/01/2007

Dear Sir or Madam:

We represent Heide Kurtz, Chapter 7 Trustee ("Trustee") in the above-referenced action. Having reviewed the Debtor Namco Capital Group, Inc.'s ("Debtor") financial information we have determined there are a substantial number of claims against the Debtor that are covered under insurance policy no. MNN 734622/01/2007 issued by you to the Debtor. These claims are believed to total in excess of $35,000,000 and include, without limitation, the misappropriation or inappropriate transfer of funds received from participants in 1031 exchange transactions. On behalf of the Trustee, we hereby submit a claim for payment pursuant to the terms of the identified policy. The Trustee reserves the right to make additional claims as appropriate as more information regarding the insured's activities is discovered.

This letter is not meant and should not be construed as a waiver, limitation, modification or compromise of any of our client's rights and remedies, all of which are hereby expressly reserved. Should you require any further information, please do not hesitate to contact the undersigned.

Very truly yours,

WEISS & SPEES

JONATHAN C. BALFUS

cc:   Heide Kurtz
      Michael H. Weiss
      Claudia Porras/San Francisco Series of Lockton Companies, LLC

# WEISS & SPEES

Attorneys at Law
1925 Century Park East, Suite 650
Los Angeles, California 90067
Telephone (424) 245-3100
Facsimile (424) 245-3199

*Jonathan C. Balfus*
jb@weissandspees.com

July 2, 2009

Zurich Insurance Company
One Liberty Plaza, 53rd Floor
New York, New York 10006
Attention: Executive Assurance Department

Re:     ***In Re Namco Financial Exchange Corp.***
        USBC Case No.        2:09-BK-17727
        Your Policy No.      Pol. No. FID9158508

Dear Sir or Madam:

We represent Heide Kurtz, Chapter 7 Trustee ("Trustee") in the above-referenced action. Having reviewed the Debtor Namco Capital Group, Inc.'s ("Debtor") financial information we have determined there are a substantial number of claims against the Debtor that are covered under the insurance policy shown above issued by you to the Debtor. These claims are believed to total in excess of $35,000,000 and include, without limitation, the misappropriation or inappropriate transfer of funds received from participants in 1031 exchange transactions. On behalf of the Trustee, we hereby submit a claim for payment pursuant to the terms of the identified policy. The Trustee reserves the right to make additional claims as appropriate as more information regarding the Insured's activities is discovered.

This letter is not meant and should not be construed as a waiver, limitation, modification or compromise of any of our client's rights and remedies, all of which are hereby expressly reserved. Should you require any further information, please do not hesitate to contact the undersigned.

Very truly yours,

WEISS & SPEES

JONATHAN C. BALFUS

cc:     Heide Kurtz
        Michael H. Weiss
        Claudia Porras/San Francisco Series of Lockton Companies, LLC

# WEISS & SPEES

Attorneys at Law
1925 Century Park East, Suite 650
Los Angeles, California 90067
Telephone (424) 245-3100
Facsimile (424) 245-3199

*Jonathan C. Balfus*
*jb@weissandspees.com*

July 2, 2009

Hartford
2 Park Avenue, 5th Floor
New York, NY 10016

Re:   *In Re Namco Financial Exchange Corp.*
USBC Case No.          2:09-BK-17727
Your Policy No.        00 FA 0245357-07

Dear Sir or Madam:

We represent Heide Kurtz, Chapter 7 Trustee ("Trustee") in the above-referenced action. Having reviewed the Debtor Namco Capital Group, Inc.'s ("Debtor") financial information we have determined there are a substantial number of claims against the Debtor that are covered under the insurance policy shown above issued by you to the Debtor. These claims are believed to total in excess of $35,000,000 and include, without limitation, the misappropriation or inappropriate transfer of funds received from participants in 1031 exchange transactions. On behalf of the Trustee, we hereby submit a claim for payment pursuant to the terms of the identified policy. The Trustee reserves the right to make additional claims as appropriate as more information regarding the insured's activities is discovered.

This letter is not meant and should not be construed as a waiver, limitation, modification or compromise of any of our client's rights and remedies, all of which are hereby expressly reserved. Should you require any further information, please do not hesitate to contact the undersigned.

Very truly yours,

WEISS & SPEES

JONATHAN C. BALFUS

cc:   Heide Kurtz
Michael H. Weiss
Claudia Porras/San Francisco Series of Lockton Companies, LLC

# EXHIBIT 6

# Studler, Doyle & Company, LLC
## Global Investigation & Forensic Accounting Services

September 11, 2009

<u>Via Electronic Mail (jb@weissandspees.com)</u>

Mr. Jonathan C. Balfus
Attorney
Weiss & Spees
1925 Century Park East
Suite 650
Los Angeles, CA 90067

> Re:  Namco Financial Exchange
> Loss Location:  Los Angeles, California
> Policy No.:  F14N587509001
> Claim No.:  4NSPC000133147
> Our File No.:  A2598

Dear Mr. Balfus:

The purpose of this letter is to confirm the documentation and information discussed and requested during our conversation on September 10, 2009. According to our conversation:

1) We understand there are three bankruptcies of interest:
   a) Namco Financial Exchange
   b) Ezri Namvar
   c) Namco Capital Group, Inc.

2) We understand Weiss & Spees are the attorneys representing the Trustee, Ms. Kurtz.

3) We understand Ms. Heide Kurtz was appointed as trustee on Namco Finance Exchange.

4) We understand you are in the process of compiling and completing the Proof of Loss.

5) We understand there are approximately 17 debtors and approximately $35,000,000.00 in unpaid exchanger contracts.

6) We understand that Namco Capital Group, Inc. is a bank. Based on our review, the bank is known as Security Pacific Bank, and the holding company is Security Pacific Bancorp. The bank was taken over by the FDIC on November 7, 2008.

Mr. Jonathan C. Balfus
Re: Namco Financial Exchange
Claim No.: Unknown
September 11, 2009

It was mentioned that the exchanger monies may have been used to fund bank activities, and the bank's notes were due in May 2008.

If any of our understandings are incorrect, please correct them in writing.

Please send the original Proof of Loss to Ms. Carla Caliendo of Liberty International Underwriters, and a copy to Studler, Doyle & Company.

Also, please provide the following documentation and information to Studler, Doyle & Company:

1) Please provide a copy of the Namco Financial Exchange bankruptcy filing appointing the Trustee.

2) Please provide a copy of the debtor listing and amounts.

3) For those debtors who have filed lawsuits, please provide a copy of the complaints filed.

4) Please provide a hierarchy or organizational chart of Namco Financial Exchange for the personnel, duties and responsibilities during its existence during 2008 to bankruptcy.

5) Please provide copies of all exchanger agreements for 2008 and 2009.

6) Please provide a list of bank accounts in existence in 2008 and 2009 for Namco Financial Exchange. The list should also detail the purpose of the bank account, i.e., operating, exchangers, etc.

7) Please provide a copy of the signature card and corporate resolution for each of the bank accounts detailed above.

8) Please provide documentation available which details and supports the monies moved from the exchangers' accounts to the "bank operating" accounts.

9) Please explain and detail how each exchanger's monies were recorded and accounted.

10) Based upon our conversation on September 10, 2009, we understand the exchanger monies had not been deposited in a bank account separate from Namco Financial Exchange's operating bank account or Pacific Securities Bank's operating account. Please confirm this information.

2

Mr. Jonathan C. Balfus
Re: Namco Financial Exchange
Claim No.: Unknown
September 11, 2009

11)  Please provide an explanation of how the exchangers' account balances, incoming monies and outgoing monies were recorded and tracked on the general ledgers of Namco Financial Exchange.

12)  Please describe and provide documentation supporting how exchangers' transactions and books were reconciled to the bank account statement.

13)  Please describe who at Namco Financial Exchange did the bank reconciliation for the exchangers'/clients' bank accounts, and how often the accounts were reconciled.

14)  Please provide an explanation of who at Namco Financial Exchange could withdraw and deposit in the exchangers'/clients' bank accounts.

15)  Did Namco Financial Exchange employ an outside bookkeeper, accountant, or CPA to do any work relative to the exchangers'/clients' accounts?

16)  Based on Studler, Doyle & Company's research, Security Pacific Bancorp owns 10% of Pacific Premier Bancorp, Inc. Please explain Security Pacific Bancorp's and/or Mr. Ezri Namvar's relationship to Pacific Premier Bancorp, Inc.

17)  Please provide information on whether Namco Financial Exchange clients'/exchangers' monies were invested in Pacific Premier Bancorp, Inc. trading and stock options.


We look forward to receiving the above requested documentation and information. Please be aware, as our review continues, additional documentation and information may be deemed necessary.

Please be aware, this letter and any investigation of this claim by Studler, Doyle & Company, CPAs or Liberty International Underwriters shall not be construed as an admission of liability or as a waiver of any policy provisions, defenses or limitations that are available to Liberty International Underwriters by operation of law. In addition to the policy defenses discussed in this correspondence, there may be other defenses available to Liberty International Underwriters under additional policy provisions and/or by operation of law. On behalf of Liberty International Underwriters, we respectfully reserve all of its rights and defenses and no waiver of any of the provisions of the policy and/or any rights and defenses to this claim under the policy and/or applicable law should be inferred from this letter or any action taken by or on behalf of Liberty International Underwriters. Liberty International Underwriters reserves the right to modify its coverage position at any time upon receipt of any additional information regarding this policy or claim.

1444 N. Farnsworth Avenue, Suite 500, Aurora, IL 60505-1644
Tel: 630.820.5770 ● Fax: 630.820.5765 ● Website: www.sdccpa.com

Mr. Jonathan C. Balfus
Re: Namco Financial Exchange
Claim No.: Unknown
September 11, 2009

In the meantime, if you have questions, comments or concerns, please do not hesitate to contact D. M. Studler or Marta Drost, of our firm.

Sincerely,

***Studler, Doyle & Company***

STUDLER, DOYLE & COMPANY, LLC

cc: C. Caliendo – Liberty International Underwriters (via email: Carla.Caliendo@libertyiu.com)

328

4

EXHIBIT 7



**weiss&spees**LLP

1925 Century Park East, Suite 650
Los Angeles, CA 90067
T: 424.245.3100
F: 424.245.3199

November 4, 2009

*Jonathan C. Balfus*
*jb@weissandspees.com*

## PRIVILEGED & CONFIDENTIAL

**VIA FEDEX**
Dee Studler
STUDLER, DOYLE & COMPANY, CPAs, LLC
1444 N. Farnsworth Ave.
Suite 500
Aurora, IL 60505

> Re:   Namco Financial Exchange Corporation
>        Liberty Mutual Policy No.: FI4N587509001
>        Bankruptcy Case No.: 2:09-17727-BR

Dear Dee:

As promised, enclosed please find four flash drives containing all records we have received to date from Namco Financial Exchange Corporation ("NFEC").   ALL DOCUMENTS CONTAINED IN THE FLASH DRIVES ARE HEREBY DESIGNATED <u>CONFIDENTIAL</u> IN ACCORDANCE WITH THE CONFIDENTIALITY AGREEMENT EXECUTED BETWEEN THIS OFFICE AND LIBERTY MUTUAL INSURANCE COMPANY.

In an effort to provide as comprehensive a disclosure as possible, we have included in the enclosed drives numerous records that may pertain only indirectly to the loss submitted by NFEC for coverage.   However, records pertaining to the 1031 transactions on which NFEC's claim is based may be found in Flash Drive No. 1 in the folder labeled "Debtor Documents."

Very truly yours,

JONATHAN C. BALFUS
OF WEISS & SPEES

(ENCLOSURES)

EXHIBIT 8

# Studler, Doyle & Company, LLC

## Global Investigation & Forensic Accounting Services

December 17, 2009

Via Electronic Mail (jb@weissandspees.com)

Mr. Jonathan C. Balfus
Attorney
Weiss & Spees
1925 Century Park East
Suite 650
Los Angeles, CA 90067

Re: Namco Financial Exchange
Loss Location: Los Angeles, California
Policy No.: F14N587509001
Claim No.: 4NSPC000133147
Our File No.: A2598

Dear Mr. Balfus:

This is to acknowledge receipt of the September 3, 2009 letter from Ms. Betsy Carpenter of Lockton, and discussed with Ms. Caliendo in October 2009, in which you request an extension of time for filing your Proof of Loss. The conditions of the policy provide in part as follows:

    E.   Conditions

        1.   Conditions Applicable To All Insuring Agreements

            g.   Duties In The Event Of Loss

                After you "discovery" a loss or a situation that may result in loss of or damage to "money", "securities" or "other property" you must:

                (1)  Notify us as soon as possible. If you have reason to believe that any loss (except for loss covered under Insuring Agreements A.1. or A.2.) involves a violation of law, you must also notify the local law enforcement authorities.

                (2)  Submit to examination under oath at our request and give us a signed statement of your answers.

                (3)  Produce for our examination all pertinent records.

                (4)  Give us a detailed, sworn proof of loss within 120 days.

                (5)  Cooperate with us in the investigation and settlement of any claim.

Mr. Jonathan C. Balfus
Re: Namco Financial Exchange
Claim No.: 4NSPC000133147
December 17, 2009

This extension of time is subject to the following terms:

1) A Proof of Loss, duly sworn to, with full particulars furnished to Liberty International Underwriters on or before March 3, 2010, shall be deemed to have been furnished on September 3, 2009.

2) If a Proof of Loss, duly sworn to, with full particulars furnished to Liberty International Underwriters on September 3, 2009, would have been within the time period specified in the Policy, then a Proof of Loss, duly sworn to with full particulars furnished to Liberty International Underwriters on or before March 3, 2010, shall also be within the time period specified in the Policy.

3) The extension of time is not an admission of any coverage under the terms of the Policy including, but not limited to, an admission that the loss was discovered during the Policy Period.

4) The extension does not toll any other limitations period, under the Policy or applicable law, including, but not limited to, the time period in which to commence legal proceedings for recovery under the Policy.

5) The extension of time is subject to a full and complete reservation of all rights and defenses under the Policy and applicable law.

Please be aware, this letter and any investigation of this claim by Studler, Doyle & Company, CPAs, Liberty International Underwriters or Zurich North America shall not be construed as an admission of liability or as a waiver of any policy provisions, defenses or limitations that are available to Liberty International Underwriters and Zurich North America by operation of law. In addition to the policy defenses discussed in this correspondence, there may be other defenses available to Liberty International Underwriters or Zurich North America under additional policy provisions and/or by operation of law. On behalf of Liberty International Underwriters and Zurich North America, we respectfully reserve all of their rights and defenses and no waiver of any of the provisions of the policy and/or any rights and defenses to this claim under the policy and/or applicable law should be inferred from this letter or any action taken by or on behalf of Liberty International Underwriters or Zurich North America. Liberty International Underwriters and Zurich North America reserve the right to modify their coverage position at any time upon receipt of any additional information regarding this policy or claim.

2

Mr. Jonathan C. Balfus
Re: Namco Financial Exchange
Claim No.: 4NSPC000133147
December 17, 2009

In the meantime, if you have questions, comments or concerns, please do not hesitate to contact <u>D. M. Studler</u> or <u>Marta Drost,</u> of our firm.

Sincerely,

*Studler, Doyle & Company*

STUDLER, DOYLE & COMPANY, LLC

cc: C. Caliendo – Liberty International Underwriters (via email: <u>Carla.Caliendo@libertyiu.com</u>)
    P. Dougherty – Zurich North America (via email: <u>phil.dougherty@zurichna.com</u>)
    F. Zauderer – Axis U.S. Insurance (via email: <u>Fred.Zauderer@axiscapital.com</u>)
    D. Benfield – The Hartford Insurance Group (via email: <u>David.Benfield@thehartford.com</u>)
328

1444 N. Farnsworth Avenue, Suite 500, Aurora, IL 60505-1644
Tel: 630.820.5770 ● Fax: 630.820.5765 ● Website: www.sdccpa.com

# EXHIBIT 9



## LIBERTY INTERNATIONAL UNDERWRITERS

**55 Water Street - 18th Floor**
**New York, NY 10041**

### PROOF OF LOSS
### CLAIM # 4NSPC000133147

### INSTRUCTION FOR MAKING PROOF

Please provide a complete narrative statement of the circumstance of the loss claimed, including the individuals involved, the events giving rise to the loss and a description of the money or other property alleged to have been lost. (Attach additional sheets of paper as required.) The Statement of Loss should consist of an itemized accounting showing names, dates, amounts, and description of individual items of money, securities or property that were misappropriated, stolen or embezzled, as. nearly as can be ascertained, and if representing collections made, the dates, names and addresses of the persons, firms or corporations from which the collections were made. Credits should be similarly entered in detail, as to commissions or salary due and unpaid and any securities, notes, etc., should be stated individually with full description. Attach to this Proof all original vouchers, or otherwise verified copies of same any further evidence in explanation or support of the amount or amounts for which claim is made. If other security, indemnity or surety against loss is held, list the amounts, names and addresses of the indemnities or sureties with full descriptions of same.

The undersigned makes each statement herein under oath on behalf *of the Estate of* of NAMCO FINANCIAL *EXCHANGE CORP.* (Herein, the "Insured"):

I.    Claim is hereby made upon LIBERTY MUTUAL INSURANCE CO. pursuant to the terms of Bond/Policy Number F1N58750900] for a loss sustained in the amount of $35-45 million consisting of funds or other property described in the schedule submitted below, which loss was discovered by the Insured on the ——— day in and of July, 2009 (and continuing). after

Page 1 of 4

2.   The loss is a direct result of (check and complete one):

i.   __X__   EMPLOYEE DISHONESTY (GIVE NAME OF EMPLOYEE(S))
     EZRI NAMVAR

ii.   _____   LOSS ON THE PREMISES (GIVE LOCATION)
     _____

iii.   _____   LOSS AWAY FROM THE PREMISES (GIVE LOCATION)
     _____

iii.   _____   FORGERY OR ALTERATION OF A NEGOTIABLE INSTRUMENT
     (COPIES OF SUCH INSTRUMENT(S) AND AFFIDAVIT OF FORGERY
     ATTACHED)

3.   The loss occurred under the following circumstances:

THE INSURED WAS A 1031 EXCHANGE ACCOMMODATOR. MR. NAMVAR
ACCEPTED FUNDS FROM RELINQUISHED PROPERTIES ON BEHALF OF
THE INSURED, BUT MISAPPROPRIATED THOSE FUNDS.

4.   The loss consisted of property valued as itemized and described in the following schedule:

| Date of Loss | Owner | Quantity and Description | Approximate Date Purchased | Place Purchased | Actual Cost | Amount Claimed |
|---|---|---|---|---|---|---|

(See attached schedule)

                              Total:                              $_____
                              Less salary, commission, profit, etc.:  $_____
                              Net Loss:                          $_____

5.   The Insured has no other suretyship or insurance under which the above claim, or any part
     thereof, is claimable, except the following:

EXCESS POLICIES ISSUED BY HARTFORD, AXIS AND
ZURICH

6.   Has there been an investigation of the loss conducted by the Insured or any third party?

     Name of Investigator          Location                  Dates: 8/17/09, 11/20/09
     MICHAEL WEISS, ESQ.           OFFICE OF THE U.S.
                                   TRUSTEE, LOS ANGELES

                                                        Page 2 of 4

7.  Circumstances were reported to the Police Department as follows:

Name of Police Department                Location                           Date

_____

8.  The following property has been recovered:

Ø
_____
_____
_____

9.  It is understood and agreed that the furnishing of this form to the Insured, or its preparation by any representative of Liberty International, or the acceptance or retention of the proof thereafter by Liberty International shall not constitute a waiver of any of the conditions of the policy.  The undersigned, being duly sworn, hereby makes this affidavit in the presence of a Notary Public

_____
INSURED                                      0/L
HEIDE KURTZ, TRUSTEE

Dated: 12-16-09                    By: FOR NAMCO FIN. EXCHANGE
                                          NAME AND TITLE OF OFFICER

## AFFIDAVIT

Subscribed and sworn to before me, the undersigned, at _____

this _____, day of _____

_____                    *See attached document
NOTARY PUBLIC

## NOTICE TO NEW YORK APPLICANTS

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim, containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

Page 3 of 4

# CALIFORNIA JURAT WITH AFFIANT STATEMENT

☒ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–5 to be completed only by document signer[s], *not* Notary)

1 _____

2 _____

3 _____

4 _____

5 _____

6 _____

_____          _____
Signature of Document Signer No. 1          Signature of Document Signer No. 2 (if any)

State of California

County of  Los Angeles

Subscribed and sworn to (or affirmed) before me on this

__10th__ day of __December__, 20 _09_, by
   Date              Month                    Year

(1) _____Heide Kurtz_____
                          Name of Signer

proved to me on the basis of satisfactory evidence
to be the person who appeared before me (.) (,)

                                    (and

(2) _____
                          Name of Signer

proved to me on the basis of satisfactory evidence
to be the person who appeared before me.)

Signature _____Deena Rose Dort_____
                          Signature of Notary Public

DEENA ROSE DORT
NOTARY PUBLIC - CALIFORNIA
COMMISSION # 1766988
LOS ANGELES COUNTY
My Comm. Exp. July 14, 2011

Place Notary Seal Above

──────────── OPTIONAL ────────────

*Though the information below is not required by law, it may prove
valuable to persons relying on the document and could prevent
fraudulent removal and reattachment of this form to another document.*

**Further Description of Any Attached Document**

Title or Type of Document: Proof of Loss

Document Date: December 16, 2009  Number of Pages: 3

Signer(s) Other Than Named Above: _____

RIGHT THUMBPRINT
OF SIGNER #1
Top of thumb here

RIGHT THUMBPRINT
OF SIGNER #2
Top of thumb here

©2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org   Item #5910   Reorder: Call Toll-Free 1-800-876-6827

## Account Listing
November 13, 2008

| | | | | | |
|---|---|---|---|---|---|
| 384.38 | 300.00 - Accounts Payable:384.38 - Amel Invlestments, LLC | Siamak (Steve) Torkian | | 447,259.90 | 03/08/08 | 07/21/08 |
| 384.62 | 300.00 - Accounts Payable:384.62 - Brickwork, LLC | George Daneshgar & David Taban | 1,554,592.58 | | |
| 384.63 | 300.00 - Accounts Payable:384.63 - Rolling Hills Capital, LLC | George Daneshgar & David Taban | 1,558,751.03 | | |
| 384.67 | 300.00 - Accounts Payable:384.67 - JRMB Family, LLC | | 372,375.00 | | |
| 384.70 | 300.00 - Accounts Payable:384.70 - Aailzadeh Family, LLC | | 57,518.75 | | |
| 384.71 | 300.00 - Accounts Payable:384.71 - J. Golshan, LLC | Joseph Golshan | 575,618.75 | | |
| 384.72 | 300.00 - Accounts Payable:384.72- 87th Peoria, LLC | Khoshrow Zarabi | 575,812.50 | | |
| 384.758 | 300.00 - Accounts Payable:384.75 - Murphy 290 Land Company   .384.759 - Holly Gedin | Holly Getlin | 872,378.00 | 06/21/08 | 11/03/08 |
| 384.76 | 300.00 - Accounts Payable:384.76 - LA Crescenta Foothill Invst | Holly Getlin | 3,227,028.24 | 06/29/08 | 11/11/08 |
| 384.78 | 300.00 - Accounts Payable:384.78 - Boyle Avenue, LLC | Mehrdad Tahenpour | 2,110,316.18 | 07/08/08 | 11/18/08 |
| 384.87 | 300.00 - Accounts Payable:384.87 - Boyle Avenue, LLC | Parham Manoo, Manager | 7,090,598.26 | 09/28/08 | 02/10/09 |
| 384.91 | 300.00 - Accounts Payable:384.91 - Sunnylane Partners, LLC | Michael Schav, Manager | 1,971,973.24 | 10/04/08 | 02/16/09 |
| 384.92 | 300.00 - Accounts Payable:384.92 - Paul and Judith Laska Family Trust | Paul & Judith Laska, Tees | 728,248.75 | 10/02/08 | 03/24/09 |
| 384.93 | 300.00 - Accounts Payable:384.93 - Crawford Living Trust | Ralph W. Crawford & Orlyn Ann Crawford, Tress | 295,878.74 | 10/31/08 | 03/15/09 |
| 3001.01 | 300.00 - Accounts Payable:3001.01 Peta Properties LLC | | 109,397.57 | | |
| 500.10 | 500.00 - Accounts Payable:500.10- Sokha & Kulvinder Bhopal | Sokha & Kulvinder Bhopal | 653,110.55 | 10/22/08 | 01/04/09 |
| 500.11 | 500.00 - Accounts Payable:500.11 - Leo & Irene Karsin Trust No. 2 | Holly Getlin, Tee | 17,491,859.33 | 09/13/08 | 01/26/09 |
| 7001.88 | 7000.00 - Real Tax:7001.88 - Vasquez, Ernesto & Socorro | | 742,465.33 | 05/16/08 | 09/28/08 |

39,859,449.95



**LOCKTON**

September 3, 2009

Liberty International Underwriters
Commercial Crime Claims
ATTN: Carla Caliendo
55 Water Street, 18th Floor
New York, NY 10041
Phone: 212-208-9544

Via email

RE:    Request for extension to file POL
       Insured: NAMCO Fiancial Exchange Corp.
       Policies: Liberty Mutual F14N587509001
       LIU File 4NSPC000133147

Dear Carla,

On behalf of the trustee for the insured, we would like to request an extension to file the proof of loss under the policy referenced above. The attorney for the trustee, Mr. Jonathan C. Balfus of Weiss & Spees, is in the process of collecting relevant information but given that the insured is in bankruptcy, it may take some time.

Please contact Mr. Balfus with any questions regarding this request.

Yours truly,

Betsy Carpenter

Encl.

cc:    Mr. Jonathan C. Balfus, Weiss & Spees
       Ms. Dee Studler, Studler, Doyle & Co.

# EXHIBIT 10

# W&S

*veiss&spees*LLP

1925 Century Park East
Suite 650
Los Angeles, CA 90067-2701

Direct:  (424) 245-3104
Fax:      (424) 245-3199

www.weissandspees.com

Jonathan C. Balfus
Attorney at Law

jb@weissandspees.com

May 26, 2010

**VIA EMAIL**
Dee Studler
STUDLER, DOYLE & COMPANY, CPAs, LLC
1444 N. Farnsworth Ave., Suite 500
Aurora, IL 60505

  Re: Namco Financial Exchange Corporation
    Liberty Mutual Policy No.: FI4N587509001
    Bankruptcy Case No. 2:09-17727-BR

Dear Dee:

Kevin Mattessich, Esq. contacted me on May 10, 2010 and advised that he would now be handling the investigation into the misappropriation of funds at Namco Financial Exchange Corp. (NFE) on behalf of Liberty Mutual. I have yet to hear again from Mr. Mattessich and have not heard from you in a while. Please tell me whether I should communicate with you or Mr. Mattessich regarding the claims.

In any event, we have obtained little new information that might be relevant to your investigation of NFE's claims. Since we last spoke, we subpoenaed NFE's bank records, hoping they might shed further light on which transfers occurred during the policy period. The banks have produced some but not all of the documents responsive to the subpoenas. That process continues. Once completed, we will share the production with you.

Except for the 341(a) transcripts of Ezri Namvar's testimony which we already produced to you, we have yet to speak with NFE's former employees either informally or under oath. Without their input, our client is forced to reconstruct and assemble NFE's records from scratch. As we continue to investigate NFE's bank records, we have become less, not more, certain as to exactly how NFE handled exchange client funds.

As an example, in response to your inquiries regarding "the exchangers'/clients' bank accounts," I previously wrote: "we do not know — but are of the belief — that no accounts were established for any client." Subsequently, I reviewed application materials for commercial crime coverage submitted by NFE's former controller, Hamid Taba. In the application Mr. Taba indicates that proceeds from 1031 transactions were in fact held in accounts segregated from

WEISS & SPEES, LLP
Dee Studler
May 26, 2010
Page 2

NFE's operating funds. It appears that a formal, forensic accounting study by qualified experts of all the relevant materials is necessary to be able to determine how NFE client funds were handled.

Further, it must be remembered that our client has no direct personal knowledge regarding the operations of NFE – all of which had effectively ceased months before her appointment as its trustee. As such, and given the time frames in which to report claims under the policy, all our prior descriptions of how NFE treated client funds remain both tentative and speculative. Consequently, if not already clear from my January 8, 2010 letter and other correspondence, we reiterate that our client has previously reserved, and continues to reserve, her right to supplement, modify or change any previous responses to your inquiries if and when she acquires and develops new evidence.

Finally, we wish to reassure you, again, that we have given you all of the documents our client has regarding NFE's accounts and money handling methods, except the documents produced pursuant to the subpoenas. Should we acquire more relevant documents, we will share them with you.

If you, Mr. Mattessich, or any other representative of the insurers have questions, please contact me.

Very truly yours,

JONATHAN C. BALFUS
OF WEISS & SPEES, LLP

CC VIA EMAIL:

HEIDE KURTZ, CHAPTER 7 TRUSTEE
MICHAEL H. WEISS, ESQ.
CARLA CALIENDO, ESQ.
PHIL DOUGHERTY
FRED ZAUDERER
CHRIS BUTLER
MARTA DROST
REJINA GARCIA
KEVIN MATTESSICH, ESQ.